**JUST FOOD LAW**
Maia C. Kats (*pro hac vice*)
*maiakats@justfoodlaw.com*
5335 Wisconsin Avenue, NW, Ste. 440
Washington, DC 20015
Telephone: (202) 243-7910

**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **ERIC LI and ANITA MEDAL on behalf of themselves and all others similarly situated,**<br><br><br>**Plaintiffs,**<br>v.<br><br>**AMAZON.COM SERVICES LLC,**<br><br>**Defendant.** | **CASE NO.: 23-cv-441-JST**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DIMISS COMPLAINT**<br><br>Date:     July 20, 2023<br>Time:    2:00 p.m.<br>Courtroom: 6<br>Judge:   Hon. Jon S. Tigar<br><br>Case Filed:  January 31, 2023 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 4

III.  LEGAL STANDARDS ............................................................................................. 7

IV.  PLAINTIFFS' CLAIMS ARE ACTIONABLE ........................................................ 8

    A.    Plaintiffs Have Statutory and Article III Standing to Assert Claims. .......................... 8

          1.    Disclaimers Buried at Website Bottoms or Packaging Backsides Do Not Cure the Illegality or the Deception—Nor Do They Eviscerate Standing. ...................... 11

    B.    Plaintiffs Plausibly Allege That They Are Reasonable Consumers. ......................... 14

    C.    Plaintiffs' Allegations State Viable Consumer Claims. .............................................. 17

          1.    Plaintiffs Do Not Assert Vicarious Liability; They Allege Amazon Participates in, Amplifies, and Adopts the Challenged Actions .................... 17

          2.    Plaintiffs Plead Their Fraud Claims with Particularity. ................................ 21

    D.    Plaintiffs' Claims of Negligent and Strict Liability Are Not Barred ....................... 22

    E.    Plaintiffs State a Claim for Breach of Implied Warranty ........................................ 24

V.   CONCLUSION ......................................................................................................... 25

**Cases**

*Arora v. GNC Holdings, Inc.*,
  No. 19-cv-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) ........................... *passim*

*Arroyo v. Chattern, Inc.*,
  926 F. Supp. 2d 1070 (N.D. Cal. 2012) ................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................................... 7

*Augustine v. Talking Rain Beverage Co.*,
  386 F. Supp. 3d 1317 (S.D. Cal. 2019) ................................................................. 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................................... 7

*Bolger v. Amazon.com LLC*,
  53 Cal. App. 5th 431 (2020) ............................................................................... 19

*Branca v. Bai Brands LLC*,
  No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ............... 24

*Brickman v. Fitbit, Inc.*,
  No. 15-cv-02077-JD, 2016 WL 3844327 (N.D. Cal. July 15, 2016) .......................... 8

*Bruton v. Gerber Products Co.*,
  703 F. App'x. 468 (9th Cir. 2017) ........................................................................ 14

*Bruton v. Gerber Products Co.*,
  No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..................... 8, 11

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  No. CV 17-01875-MWF (MRWx), 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ........ 17

*Diew v. Amazon.com LLC*,
  No. 21-cv-01462-LB, 2021 WL 2435265 (N.D. Cal. June 15, 2021) ........................ 19

*Dorfman v. NutraMax*,
  No. 13-cv-0873 WQH (RBB), 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ........ 18, 20, 21

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................................... 17

*Fisher v. Monster Bev. Corp*,
  656 F. App'x. 819 (9th Cir. 2016). ....................................................................... 21

*Freedline v. O Organics, LLC.*,
  No. 19-cv-01945-JD, 2020 WL 1643697 (N.D. Cal. Mar. 31, 2020) ...................... 8, 21

*Green v. Canidae Corp.*,
  No. CV 09-00486 GAF (PLAx), 2010 WL 11507372 (C.D. Cal. Jan. 29, 2010) ......... 10

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1053 (N.D. Cal. 2017) ................................................................. 16

*Hall v. Sea World Entertainment,*
No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ........................ 10

*Hannibal Pictures, Inc. v. Sonja Prods. Ltd. Liab. Co.,*
432 F. App'x 700 (9th Cir. 2011) ........................................................................... 23

*Herron v. Best Buy Stores,*
No. 12-cv-02103-GEB-JFM, 2013 WL 4432019 (E.D. Cal. Aug. 16, 2013) ................. 18, 20

*Hydroxycut Marketing and Sales Practices Litig.,*
299 F.R.D. 648 (S.D. Cal. 2014) ......................................................................... 20, 21

*In re iPhone Application Litig.,*
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ......................................................................... 10

*In re Jamster Marketing Litig.,*
No. 05-cv-0819 JM, 2009 WL 1456632 (S.D. Cal. May 22, 2009) .................................. 20

*In re JUUL Labs, Inc.,*
497 F. Supp. 3d 552 (N.D. Cal. 2020) ........................................................................ 23

*In re: Gen. Motors LLC CP4 Fuel Pump Litig.,*
No. 18-cv-07054-JST, 2019 WL 3315286 (N.D. Cal. July 2, 2019) .................................. 21

*J'Aire Corp. v. Gregory,*
24 Cal. 3d 799 (1979) ............................................................................................ 23

*Joseph v. Kraft Heinz Foods Co., Inc.,*
691 F. App'x 850 (9th Cir. 2017) ............................................................................. 10

*Kane v. Chobani, Inc.,*
No. 12-V-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................ 10

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) ................................................................................... 7

*Krommenhock v. Post Foods, LLC,*
255 F. Supp. 3d 938 (N.D. Cal. 2017) ....................................................................... 16

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) ......................................................................................... 1, 10

*Lambert v. Nutraceutical Corp.,*
CV 13-05942-AB (EX), 2020 WL 12012559 (C.D. Cal. Jan. 8, 2020) ............................ 15

*Lee v. Amazon.com, Inc.,*
76 Cal. App. 5th 200 (2022) ..................................................................................... 19

*Loomis v. Amazon.com LLC,*
63 Cal. App. 5th 466  (2021) .................................................................................... 19

*Min Sook Shin v. Umeken, USA, Inc.,*
77 F. App'x 373 (9th Cir. 2019) ........................................................................... 12, 17

*Mirkin v. Wasserman,*
5 Cal. 4th 1082 (1993) ............................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

*Myers v. Malone and Hyde,*
    173 F.2d 291 (8th Cir. 1949) ................................................................24

*Noohi v. Kraft Heinz Co.,*
    CV 19-10658 DSF (SKx), 2020 WL 5554255 (C.D. Cal. July 20, 2020)..............................24

*Ogden v. Bumble Bee Foods,* LLC,
    No. 5:12-cv-02828-LHK, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014)....................................11

*Ortega v. Nat. Balance, Inc.,*
    300 F.R.D. 422 (C.D. Cal. 2014) ................................................................15

*Painter v. Blue Diamond Growers,*
    757 F. App'x 517 (9th Cir. 2018) ................................................................17

*Robinson Helicopter Co. v. Dana Corp.,*
    34 Cal. 4th 979 (2004)................................................................23

*Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (Cal. App. 2d Dist. 2010), *as modified on denial of reh'g*
    (Feb. 8, 2010)................................................................15, 16

*Tortilla Factory, LLC v. Health-Ade LLC,*
    No. 17-9090-MWF, 2018 WL 6174708 (C.D. Cal. July 13, 2018) ......................................20

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................22

*Victor v. R.C. Bigelow, Inc.,*
    No. 13-cv-02976-WHO, 2014 WL 1028881 (N.D. Cal. March 14, 2017) ..........................8

*Williams v. Gerber,*
    552 F.3d 934 (9th Cir. 2008) ................................................................3, 14, 16

*Wilson  v. Frito-Lay N. Am., Inc.,*
    260 F. Supp. 3d 1202 (N.D. Cal. 2017)................................................................10


**Statutes**

Cal. Health & Safety Code
        § 110100 ................................................................5
        § 110760 ................................................................15
        § 110765 ................................................................15


**Rules**

Federal Rules of Civil Procedure
        Rule 9(b)................................................................7, 21, 22
        Rule 12(b)(1) ................................................................1, 7, 25
        Rule 12(b)(6) ................................................................*passim*

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

A. Berzon, *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*,
Wall Street Journal, Aug. 23, 2019 ........................................................................2

Andrew I. Geller, M.D., Nadine Shehab, Pharm.D., M.P.H, *et al,* Emergency Department Visits for Adverse Events Related to Dietary Supplements,
New England Journal of Medicine, (October 15, 2015)............................................9

DHS, Combating Trafficking in Counterfeit and Pirated Goods (Jan. 24, 2020) ..................2

J. Greene, *How Amazon's quest for more, cheaper products has resulted in a flea markets of fakes*,
The Washington Post, Nov. 14, 2019 ........................................................................2

K. Safdar, *You Might Be Buying Trash on Amazon—Literally*,
Wall Street Journal,  Dec. 18, 2019.........................................................................2

Statement of Commissioner Rebecca Kelly Slaughter Joined by Chair Lina Khan and Commissioner Alvaro M. Bedoya Regarding the Issuance of a Notice of Penalty Offenses on Substantiation of Product Claims,
Federal Trade Commission, March 31, 2023 ............................................................2

Plaintiffs Anita Medal and Eric Li ("Plaintiffs") respectfully submit this Opposition to the Motion to Dismiss ("Motion") filed by Defendant Amazon Services LLC ("Amazon") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on April 10, 2023. Dkt. 18.

## I.    INTRODUCTION

"Labels matter." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011). So does honest advertising, and compliance with California laws defining and prohibiting illegal commerce.

The legal framework for dietary supplements set forth by Congress and adopted by the California Legislature requires that supplement labels and marketing carry "prominent" disclaimers alerting consumers that they have not been reviewed by the Food & Drug Administration ("FDA") for safety or efficacy, and that the "product is not intended to diagnose, treat, cure, or prevent any disease." ¶¶ 38-53.[1] In other words, labels must state prominently that supplements are not intended for therapeutic purposes, despite marketing to the contrary. The authorities are clear as to why such disclaimers, including their placement requirements, are non-negotiable; because without them, consumers believe supplements have established therapeutic properties when they do not. ¶¶ 54-59. Products lacking mandated disclaimers remain classified as drugs, and are barred from interstate commerce absent FDA pre-market review and approval. ¶ 50.

With its reported $30 billion in annual sales of purported dietary supplements, ¶ 36, Amazon is well-versed in this legal framework. Yet despite its savvy and power, Amazon chooses to trade in illegal drugs and to capitalize on deception. ¶¶ 24-29. Amazon advertises, sells, and delivers into interstate commerce products that are labeled dietary supplements and bear a multitude of therapeutic claims but which are devoid of required disclaimers—that is, prominent disclaimers that are, as legally required, bold and unobstructed by voluntary label statements, and which appear on *every* panel or page bearing a therapeutic claim. Indeed Amazon's products systematically omit requisite disclaimers, while also lacking pre-market review and approval by the FDA. ¶ 53.

Amazon attempts to dismiss its violations of law as a mere "technicality." Mot. at 8. This is not so; nor is Amazon uniquely entitled to elect which laws to abide by, and which to flaunt. Indeed,

---

[1] "¶" or ¶¶" refer to the Class Action Complaint (Dkt. 1).

shortly after the filing of this litigation, the Federal Trade Commission ("FTC") underscored the gravity and extent of fraud in the supplement industry. It issued a report on supplement trade accompanied by a Notice of Penalty Offenses to Amazon stating in part that—

> Everyone gets sick, and most of us will experience the infirmities that accompany aging. That shared vulnerability leaves us all susceptive to health-claim scams and to plausible sounding treatments that promise to alleviate pain, to restore lost virility, or to help cure the most deadly and tragic of illnesses. . . . At best, many of these product claims are unreliable and waste tens of billions of consumer dollars a year, and, even worse, they can cause serious health problems requiring acute medical attention. . . . People suffer real physical, financial, and emotional harm when purported cures and treatments do not live up to their marketing promises. These harms may be different but are no less pernicious than those resulting from the types of fraud we have targeted with NOPs.[2]

Indeed, a former Amazon executive told the <u>Wall Street Journal</u> ("WSJ"), "We had an internal saying: Unless the product's on fire when we receive it, we would accept anything. . . . consumers are the police of the platform."[3] A report applying the framework promulgated by the Consortium for Health and Military Performance and Operation Supplement Safety found as much:

> quality control measures have not been sufficient for most immune health dietary supplement products advertised and sold on the Amazon website. Moreover, some claims made on most of these immune support products do not appear consistent with any of the categories of claims defined by FDA regulations. Most products tested had inaccurate labels, and the claims made on those labels may mislead consumers into purchasing products when information on whether they are actually beneficial is limited.

---

[2] Statement of Commissioner Rebecca Kelly Slaughter Joined by Chair Lina Khan and Commissioner Alvaro M. Bedoya Regarding the Issuance of a Notice of Penalty Offenses on Substantiation of Product Claims, Federal Trade Commission, March 31, 2023. Declaration of Maia Kats In Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint and Motion for Judicial Notice at Exhibits A and B (hereafter, "Kats Decl. Ex. __").

[3] K. Safdar, *You Might Be Buying Trash on Amazon—Literally*, <u>Wall Street Journal</u>, Dec. 18, 2019. Available at https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910 (quoting J. Thomson) (Kats Decl. Ex. C); A. Berzon, *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*, <u>Wall Street Journal</u>, Aug. 23, 2019. Available at https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990 (Kats Decl. Ex. D); DHS, Combating Trafficking in Counterfeit and Pirated Goods (Jan. 24, 2020) at 7 (singling out Amazon) (Kats Decl. Ex. E); J. Greene, *How Amazon's quest for more, cheaper products has resulted in a flea markets of fakes*, <u>The Washington Post</u>, Nov. 14, 2019. Available at https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-cheaper-products-has-resulted-flea-market-fakes/?arc404=true (increased scrutiny hindered growth) (Kats Decl. Ex. F).

¶ 64.[4] Amazon's conduct is not only illegal, but forms a dangerous and systemic pattern.

Beyond its statutory and regulatory violations, which are also violations of California's Sherman Law, Amazon's impermissible omissions and/or burying of noncompliant disclaimers on peripheral product pages and labels violates longstanding Ninth Circuit doctrine concerning consumer fraud. The law is clear in California that Plaintiffs are entitled to rely on front labels, which are featured on Amazon product pages, and/or prominent Amazon marketing statements on landing pages, without needing to locate disclaimers buried in a haystack of voluntary marketing—that is, by clicking on additional links so as to see side and back labels or by scrolling through pages upon pages of voluntary health claims before finding the needle, that is, a non-compliant disclaimer. As the Ninth Circuit made clear in the seminal case of *Williams v. Gerber*, "We disagree . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.,* 552 F.3d 934, 939 (9th Cir. 2008).

As detailed below, Plaintiffs' allegations are more than sufficient to withstand the Motion to Dismiss. First, Plaintiffs have standing because they plausibly allege reliance and causation (*e.g.,* both Plaintiffs "saw and believed the representations, on product labels and otherwise, that the Products harbored therapeutic value, and/or that they and the marketing claims were reviewed by and approved by the FDA," ¶¶ 6, 13; both Plaintiffs "relied on Amazon's stature, representations, and reputation, as well as its marketing and Product labels and its omissions from the same, and w[ere] misled thereby," ¶¶ 7, 14). Second, Plaintiffs were not only reasonably deceived, but according to legal authority with respect to their principal claim on illegality, they were *per se* deceived. Regardless, it is long-settled that the reasonable consumer determination is for the trier of fact and not, absent rare circumstances, the Court on a motion to dismiss. ¶¶ 76-81. Third, there is no vicarious liability claim here; Amazon is alleged as integral to the challenged practices because Amazon itself placed the illegal drugs into interstate commerce, and far more—including that it adopted and otherwise actively promoted false

---

[4] Citing Crawford C, Avula B, Lindsey AT, Walter A, Katragunta K, Khan IA, Deuster PA. Analysis of Select Dietary Supplement Products Marketed to Support or Boost the Immune System. JAMA Netw Open. 2022 Aug 1;5(8):e2226040. doi: 10.1001/jamanetworkopen.2022.26040. PMID: 35947382; PMCID: PMC9366544 (Kats Decl. Ex. G) .

and misleading advertising claims and sold illegal drugs. Fourth, because Plaintiffs' claims involve fraud, important public policy considerations concerning consumer protection, and exposure to physical harm, the economic loss rule does not apply to bar their strict and negligent liability claims. And fifth, by selling illegal products barred from interstate commerce, Amazon has breached an implied warranty of merchantability.

## II.     FACTUAL BACKGROUND

From their respective places in California, Plaintiffs each purchased products[5]—labeled as dietary supplements—on Amazon.com, including on June 9 and November 20, 2020 for Mr. Li, and June 14, 2019, December 2, 2021, April 6 and 15, May 22, and June 15-16, 2022 for Ms. Medal. ¶¶ 2, 3, 4, 5, 11, 12, 18, 74 & Images 8-26. Plaintiffs made their purchases in reliance on featured product labeling (front of pack) depicted on Amazon.com, and prominent Amazon.com product page advertising, which they read and led them to believe that the products were legal supplements with established therapeutic value and safety. *E.g.*, ¶ 5 (Plaintiffs purchased "illegal drugs masquerading as therapeutic dietary supplements," including Natures' Bounty Omega-3 Fish Oil, 5-HTP Capsules with extra-strength Serotonin, Nature's Made Magnesium Oxide Tablets, Doctor's Best Alpha-Lipopic Acid Caps, and Nutricost Acetyl L-Carnitine Capsules); ¶¶ 6, 13 (Plaintiffs "saw and believed the representations"); ¶¶ 7, 14 (Plaintiffs "relied on Amazon's stature, representations, and reputation, as well as its marketing and Product labels and its omissions"); ¶ 37 (consumers rely on Amazon branding); ¶ 76 ("Plaintiffs relied on Amazon and trusted that it would sell only products that are legal. . . and not deceptive concerning their therapeutic qualities"); ¶ 106 (alleging reliance); ¶ 115 (alleging foreseeability of Plaintiffs' reliance); ¶ 74 & Images 18-22 (presenting non-disclosed therapeutic claims read by Plaintiffs); ¶ 12 (same—"tested and proven" to support "joint and heart health" and "brain function," "Doctor's Best" for "healthy bones, teeth, heart, and immune support," "support[] heart health," "replenish what is lost with age or what statin medications deplete," "support[] nervous system function," "promote[] energy," support "healthy intestine"). But Plaintiffs received products

---

[5] "Products" or "challenged products" refers to products labeled dietary supplements that bear structure function (therapeutic/ health) claims while omitting the required disclaimers.

from Amazon that are illegal and lack established therapeutic purpose, value and safety, and suffered economic injury and exposure to serious personal injury as a result. ¶¶ 8-10, 15-17, 62-65, 76-85.

The products purchased by Plaintiffs bear labels, and are accompanied by product pages, which tout therapeutic functions but omit required disclaimers that 1) counter therapeutic and implicit safety claims, and 2) notify consumers that the products have not gone through FDA pre-market review for either efficacy or safety. *E.g.*, ¶¶ 7, 14 (omitted disclaimers), ¶ 24 & Images 18-22 (no disclaimers), ¶ 53 ("the Products . . . are unapproved and, as explained below, do not bear requisite disclaimers"). Specifically, the omitted disclaimers are required to state prominently: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." ¶ 43.

Disclaimers appearing on back and side labels, or which are obscured on product pages by voluntary health claims, fail legal requirements on placement and prominence. Amazon product landing pages feature images of front product labels omitting disclaimers, alongside extensive verbiage with amplified therapeutic claims. To find buried (and non-compliant) disclaimers, consumers must click on additional links to see side or back panels, and/or search through a mass of distracting health claims to unearth them, which approach does not suffice.[6] *E.g.*, ¶¶ 6, 13 (Plaintiffs "saw and believed the [unqualified] representations"); ¶¶ 43-49 (citing 21 C.F.R. § 101.93(d), 21 U.S.C. § 343(r)(6) (disclaimer requirements)); ¶ 47 (voluntary claims disrupting prominence must be omitted); ¶¶ 68-69, 74 & Images 1-3, 8-26; ¶ 45 ("placement of a single disclaimer on a product label . . . would not provide an acceptable alternative") (citing FDA). In contrast to Amazon, Safeway Signature and Target dietary supplement product labels comply with disclaimer requirements. ¶ 75 & Images 27-28. As Amazon products did not go through FDA pre-market review and lack mandatory disclaimers, they are barred from interstate commerce as unapproved and illegal drugs. ¶¶ 49-52 (citing 21 U.S.C. §§ 321(g), 331(d), 343(r)(6), 355(a)), Cal. Health & Safety Code § 110100.

---

[6] Use of the terms "structure/function," "therapeutic," and "health" to describe product claims are interchangeable as "[t]he distinction between implied [structure/function] and express disease claims is [] a semantic one that has little, if any, practical meaning to consumers." ¶ 60 (citing Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 100, 105-07, 2000 WL 4559 (Jan. 6, 2000)).

Beyond omitting disclaimers, and reiterating, adopting, and amplifying deceptive health claims for illegal products, Amazon also incorporates text and images on product pages that compound its fraud. These include logos denoting purported "FDA certifications," medical symbols, and physician images, and claims of medical endorsements, clinical research, scientific proof, and pharmacist choice. ¶ 74 & Images 8-26 ("Fraudulent impressions of [] therapeutic value are further enhanced by Amazon's publication of medical and clinical claims and symbols . . . and 'FDA certification'").

According to the FDA, "few dietary supplements have been the subjects of adequately designed clinical trials" and "many marketed supplements have not been the subjects of adequate studies to establish whether or not they are safe or effective, or the nature of the benefits they may provide." ¶¶ 55-56, 61, 71-72 (citing 65 Fed. Reg. at 103, CRS R43062). As such, in addition to economic injury, Amazon exposed Plaintiffs to bodily injury because of the unqualified efficacy claims (which lead to self-diagnosis and treatment) and false impressions of safety. ¶¶ 62-65 (alleging danger of bodily injury; citing FDA warning about hidden ingredients that trigger heart attack and stroke; Uniformed Services' Report); ¶ 81 ("Plaintiffs were foreseeably and directly harmed by Amazon's conduct because they received defective, dangerous and economically valueless [products]").

In all this, Amazon played an integral role. At the very least, Amazon: reiterated, adopted, and amplified product health claims, causing Plaintiffs' deception (*e.g.*, ¶¶ 2, 3, 4, 5, 11, 12, 18, 23-27, 74 & Images 8-26); enabled and facilitated all financial transactions and communications with Plaintiffs relating to the products (*e.g.*, ¶¶ 26-27); and placed illegal drugs into interstate commerce, ultimately delivering them to Plaintiffs. *E.g.*, ¶¶ 4-5, 11-12, 18, 26-27. In addition, upon information and belief, Amazon controlled the product listings on Amazon.com (and banner ads), which listings aggressively reiterated product claims that were unqualified by prominent disclaimers. *E.g., id* and Images 8-26. In this way, Amazon: created consumer demand for the products; stocked and maintained the products at its fulfillment centers; used its personnel to move the products through distribution channels and interstate commerce; and delivered the deceptive and illegal products to Plaintiffs' doorsteps in California via its delivery vehicles, in Amazon branded packaging. Amazon received direct financial benefit from its activities and sales. ¶¶ 27-28.

Further, to bolster consumer trust and encourage purchases, Amazon touts its "Industry-Leading Safety and Compliance Program" and "Fair Pricing Policy," wherein it pledges to protect consumers from untrustworthy merchants and dangerous products. ¶¶ 28-29 (touting "widest possible selection of safe and authentic goods"). Lesser commercial activities than these formed the bases of FDA warning letters to Amazon about its sales of illegal drugs, including on August 4, 2022. *E.g.*, ¶ 38 (Amazon "is responsible for the introduction or delivery into interstate commerce of products that are unapproved new drugs"). In each of the sales to Plaintiffs, Amazon knew or should have known that its products were deceptive and illegal drugs on whose marketing and omissions Plaintiffs would rely. It had the power to cure the same, readily, given its control of listings, marketing, and sales, and its failure to do so is a direct cause of Plaintiffs' injuries. *E.g.*, ¶¶ 101-02, 115-17, 127.

On or about August 24, 2022, Plaintiffs notified Amazon of its commerce in illegal and deceptive drugs. ¶ 163. Amazon declined to address the issues raised. *Id.* On January 31, 2023, after providing Amazon with a grace period to respond (in the hopes of bringing relief to California consumers promptly), and after receiving its response, Plaintiffs filed their Complaint. *Id.*

According to the press, Amazon's commerce in the products is stratospherically lucrative. Its sales of purported supplements were estimated to equal over $30 billion in 2020 alone. ¶ 36.

## III. LEGAL STANDARDS

To survive a Rule 12(b)(6) under the Federal Rules of Civil Procedure, plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This allows "the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The court "must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (citation omitted). Rule 12(b)(1) requirements are similar; requiring a short and plain statement of grounds for standing (jurisdiction), which must be accepted as true and construed favorably to Plaintiffs. *E.g.*, *Arora v. GNC Holdings, Inc.*, No. 19-cv-02414-LB, 2019 WL 6050750, at *7 (N.D. Cal. Nov. 15, 2019).

Under Rule 9(b), fraud allegations must "be specific enough to give defendants notice of the

particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." *Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016) (citation omitted). Whereas conclusory allegations of the who, what, where, when, and how of the misconduct will not suffice, "Rule 9(b) does not require absolute particularity or a recital of the evidence." *Freedline v. O Organics, LLC.*, No. 19-cv-01945-JD, 2020 WL 1643697, at *2 (N.D. Cal. Mar. 31, 2020) (citation omitted). A complaint need not "describe in detail a single specific transaction or identify the precise method used to carry out the fraud." *Id.* at *2-3; *see also Arora v. GNC Holdings, Inc.*, 2019 WL 6050750, at *7.

## IV. PLAINTIFFS' CLAIMS ARE ACTIONABLE

### A. Plaintiffs Have Statutory and Article III Standing to Assert Claims.

To plead standing, a plaintiff is required to allege reliance and causation. Mot. at 13. Amazon spills much ink about Plaintiffs' purported failure to plead reliance, contending that "Plaintiffs reliance allegations fail as a matter of law." *Id*. Amazon is wrong: the Complaint repeatedly alleges that Plaintiffs relied on Amazon's deceptive label imaging, advertising, omissions, and reputation, in purchasing the illegal products, that they would not have purchased such products had they known the truth, and/or would have paid less for them, and suffered economic injury as a consequence. Plaintiffs also allege they would purchase the products in the future if they could rely on Amazon's marketing. These allegations establish standing. *E.g*, ¶¶ 2-18, 37, 53, 62-65, 74-85, 106, 115.

"Simply pleading that the defendant failed to disclose some material fact and that the plaintiff would have acted differently with regard to the purchase had he known the truth is sufficient to establish statutory standing." *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *5-*6 (N.D. Cal. March 14, 2017). Hence, plaintiff's (1) allegation that "he spent money purchasing products that he would not have purchased were it not for [the defendant's] purported mislabeling"; and (2) claims that "he read [the defendant's] misstatement on its product labels and relied on them in making his purchases" suffice. *Id. See also Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *9-10 (N.D. Cal. Jan. 15, 2014) (standing where plaintiff alleged reading unlawful label statements, relying on them when purchasing, and suffering economic injury).

Here, review of the Complaint in its entirety reveals an over-abundance of plausible reliance

and causation allegations. *See also supra* at 4-7. These allegations include, but are not limited to:

- "Mr. Li saw and believed the representations, on product labels and otherwise, that the products harbored therapeutic value and were safe. He also believed that the Products were lawful and legally inserted into interstate commerce. Mr. Li relied on Amazon's stature, representations, and reputation, as well as its marketing and Product labels and its omissions from the same, and was misled thereby." ¶¶ 6-7;
- "Mr. Li purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products." ¶ *Id*.;
- "Mr. Li was injured in fact and lost money as a result of Amazon's improper conduct. In addition, he was exposed to risk of serious bodily injury." ¶¶ 8-9;[7]
- Ms. Medal similarly relied and purchased products with non-disclaimed representations, including "tested and proven," to support "joint and heart health" and "brain function," "for health bones, teeth, heart, and immune support," to "replenish what is lost with age or what statin medications deplete," to "support[] nervous system function" and "healthy intestine," and otherwise, and that she saw and relied on the claims and omissions, was misled by the claims and omissions, which resulted in her injury. ¶¶ 12-16; ¶ 74 & Images 18-22 (showing relied on health claims);
- "Defendant knew, or should have known that Plaintiffs and consumers would rely on [its] marketing and labeling claims, and policies and promises of consumer protection, including as to proffering Products that were suitable for sale and purchase by them." ¶ 102; and
- "Plaintiffs . . . had no knowledge of the defective condition of the Products. . . and their reliance on Defendant's representations was justified." ¶ 106; ¶ 115 (same); ¶ 116 (same); ¶¶ 143-44 (same).

Additionally, Plaintiffs detail how omissions of FDA-mandated disclaimers on product labels, which front labels are featured on product pages along with abundant health claims,[8] led to their purchases. By omitting the required disclaimers, Amazon caused Plaintiffs to read the health claims and thereafter purchase products believing that they 1) have established therapeutic purpose, value, and/or safety that they do not possess, and/or 2) were legal when they are illegal drugs. ¶¶ 38-75. *See also id*. at ¶ 76 ("Plaintiffs' relied on Amazon and trusted that [it] would sell only products that are

---

[7] *See also* Andrew I. Geller, M.D., Nadine Shehab, Pharm.D., M.P.H, *et al,* Emergency Department Visits for Adverse Events Related to Dietary Supplements, <u>New England Journal of Medicine</u>, (October 15, 2015) (cited in FTC Statement at 1 & n.3) (Kats Decl. Ex H).

[8] *See, e.g.*, Image 18 (Nature's Turmeric Curcumin for "Joint and Heart Health Support," "Supports Brain Health") (no disclaimer); Image 19 (Puritan's Pride Co Q-10 "Supports Heart Health," with image of a heart) (no disclaimer); Image 20 (Doctor's BEST Science-Based Nutrition "HELPS SUPPORT GLUCOSE METABOLISM AND ENERGY PRODUCTION") (no disclaimer); Image 22 (Nature's Bounty Fish Oil for "HEART HEALTH") (no disclaimer); Image 21 (Nature Made Magnesium "Supports nerve, heart & bone health," #1 PHARMACIST RECOMMENDED") (no disclaimer).

legal—that is, compliant with the law, safe, and that are not deceptive concerning their therapeutic qualities"); ¶ 59 (disclaimers "make sure that consumers understand . . . dietary supplements bearing claims are not for therapeutic uses") (quoting 65 Fed. Reg. 1007).

Not one of the cases Amazon cites alters the adequacy of Plaintiffs' standing allegations. Indeed, in *Kwikset*, on which Amazon principally relies, the California Supreme Court emphatically declared that "Labels matter," and then proceeded to opine that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property'. . . and have standing to sue." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 317, 328 (2011). Consistently, *Kwikset* also stands for the proposition that there is no standing for individuals who had no business dealings with the defendant. *Id.* at 317. That is a million lightyears away from this litigation wherein Plaintiffs allege that they read and "relied on Amazon's stature, representations, and reputation, as well as the marketing and Product labels and its omissions from the same, and [were] misled thereby." ¶¶ 7-8, 10, 13-14, 17, 76-78.[9]

Finally, Amazon fails to discuss the one decision on standing that is on all fours with this case: *Arora v. GNC Holdings, Inc.*, 2019 WL 6050750. In *Arora*, the court addressed identical arguments on virtually identical claims concerning omission of mandated disclaimers on purported dietary supplements bearing health claims. There too the defendant argued that plaintiffs lacked standing. The

---

[9] The other cases on which Amazon relies are equally inapposite, each finding that the plaintiff failed to allege that they read, saw or relied on particular misrepresentations or omissions. *See, e.g., Wilson v. Frito-Lay N. Am., Inc.,* 260 F. Supp. 3d 1202 (N.D. Cal. 2017) (Summary judgment where Plaintiff admitted in deposition "he 'didn't notice' any label statements"); *Arroyo v. Chattern, Inc.*, 926 F. Supp. 2d 1070, 1076 (N.D. Cal. 2012) ("Plaintiff alleges that she would not have purchased Dexatrim had she known that hexavalent [] was present in the product… Plaintiff's allegations are sufficient to establish standing"); *Id.*, 926 F. Supp. 2d at 1080 (No standing where plaintiff never alleged that she read product marketing prior to purchase); *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ("Plaintiffs did not plead that they had heard or read the representations"); *Joseph v. Kraft Heinz Foods Co., Inc.*, 691 F. App'x 850 (9th Cir. 2017) (plaintiff failed to allege economic injury or reliance on the omitted claim); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013) (summary judgment where none of the Plaintiffs presents evidence that he or she even saw, let alone read and relied upon, the alleged misrepresentations); *Kane v. Chobani, Inc.*, No. 12-V-02425-LHK, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) ("Plaintiffs have not alleged that they were exposed to this campaign"; noting presumption of reliance where misrepresentation is material); *Hall v. Sea World Entertainment*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *4 (S.D. Cal. Dec. 23, 2015) ("the complaint does not allege that the named plaintiffs actually saw or read any advertising or statements [] prior to purchasing"); *Green v. Canidae Corp.*, No. CV 09-00486 GAF (PLAx), 2010 WL 11507372 (C.D. Cal. Jan. 29, 2010) (plaintiffs "do not indicate that they read or relied on the [] products' packaging").

court did not agree: "Plaintiffs' allegations about reliance are that they read the labels, believed the claims (about the therapeutic value for the prevention and treatment of the specific diseases, such as prostate disease and diabetes) for the specific products that they bought, paid more for the supplements than they would have (had they known the "truth about the products"), and lost money by paying more. . . . Key to their theory is that the lack of a [proper] disclaimer mattered, given the claims of therapeutic value." *Id*., at *8. Given this, "the plaintiffs' allegations plausibly establish [] standing." *Id*., at *10. The same result should follow here. *See also Ogden v. Bumble Bee Foods,* LLC, No. 5:12-cv-02828-LHK, 2014 WL 27527, at *2, *9-10 (N.D. Cal. Jan. 2, 2014) (finding standing and noting significance of omitted disclaimer, "the FDA clearly views front-of-package statements as critical in informing consumers")*; Bruton*, 2014 WL 172111, at *9-10 (plaintiff established standing by alleging that she read the unlawful label statements, relied on them in choosing to buy products, and suffered economic injury).

### 1. Disclaimers Buried at Website Bottoms or Packaging Backsides Do Not Cure the Illegality or the Deception—Nor Do They Eviscerate Standing.

Next, Amazon argues that the presence of disclaimers elsewhere on Amazon's website, or on package sides, cures the illegality and deception, and thereby eviscerates standing. Motion at 14-17 ("Any reliance allegations are implausible because the product detail pages bear clear and prominent disclaimers."). Amazon is wrong—about prominence, illegality, and the plausibility of deception.

First, as alleged in detail in the Complaint, the failure to carry prominent disclaimers on every product label panel carrying health claims renders the products ineligible for exemption from treatment as a drug, as well as unapproved and illegal drugs that are barred from sale in interstate commerce. Disclaimers appearing elsewhere on products do not suffice to cure such omission. *E.g., Arora*, 2019 WL at *2-*3 (setting forth regulatory structure and citing 21 U.S.C. § 343(r)(6); 21 C.F.R. § § 321(g); 355(a); 331(d); 333; 21 C.F.R. § 101.93 ("On products labels and in labeling (e.g., pamphlets, catalogs) the disclaimer ***shall appear on each panel or page*** where there is a structure/function claim") (emphasis supplied)); 65 Fed. Reg. 1000, 1007 (Jan. 6, 2000) ("The point of the disclaimers are to 'make sure that consumers understand that the structure/function claims are not reviewed by the FDA prior to marketing, and to caution consumers that dietary supplements bearing such claims *are not for*

*therapeutic uses* ")); *Arora* at *5, *12 (noting non-compliant placement/ lack of statutory prominence of GNC disclaimers, and distinguishing *Min Sook Shin v. Umeken*, *USA, Inc.*, 77 F. App'x 373 (9th Cir. 2019)). *See also* ¶¶ 38-65 (same); ¶ 45 (citing 62 Fed. Reg. 49,859, 864-65 (rejecting industry suggestion for single disclaimer and alternate placement as insufficiently prominent under statute); ¶ 47 (citing 62 Fed. Reg. at 49-865-66 ("There will instances in which voluntary statements [] should not be used on a label [] because it is not feasible to accommodate . . . the statutory requirement for prominence for the disclaimer")). Given that the products here omit disclaimers on their front panels— primary display panels that carry health claims—and have not gone through any FDA pre-market review (which Amazon does not dispute), Plaintiffs plausibly allege that Amazon deceptively sold illegal drugs to Plaintiffs. ¶¶ 38-53. Absolutely nothing about a disclaimer appearing on some other panel or product page alters this result. As a matter of law, these are illegal products barred from interstate commerce.

Amazon's second standing contention—that "Plaintiffs cannot plausibly allege that Amazon misled or deceived them because every Product was sold with a DSHEA disclaimer on the product detail page, " Mot. at 14—also fails for the same reasons and under the same authorities cited above. Burying a disclaimer *multiple* scrolls down on Amazon's product page, and/or amongst a multitude of voluntary claims and images (which dominate through placement, size, color, contrast), cannot as a matter of law redress illegality, nor can it redress the deception and fraud. The entire point of the requirement for proximity and prominence of disclaimers is to ensure that consumers actually see and read them in order to be alerted that the products are not therapeutic and thereby avoid deception. *E.g.,* ¶ 65. The exhibits attendant to Amazon's own Motion for Judicial Notice illustrate just how unhinged from reality its argument that product pages carry "Clear and Prominent Disclaimers," so as to preclude deception as a matter of law, is.

One of the product pages that Amazon asserts contains a "clear and prominent" disclaimer is for Puritan's Pride Co-Q10, which Plaintiff Li purchased. Mot. at 15 & Image 1. But the Puritan's Pride disclaimer is not, in proper context, clear or prominent at all: it appears six pages (or scrolls) of text and imagery below the product landing page (on page 7 of a printout), in far smaller and less prominent print than a plethora of comparatively bold, colorful, and large voluntary claims—all of

which swamp it. *See* Images 1-7 below of pages 1-7 of landing page; Declaration of Jasmine W. Wetherell in Support of Amazon.com Services, LLC's Request for Judicial Notice at Exh. R ("Wetherell Decl."), Dkt. No. 19-1 (larger image of pages 1-7 of 12). Defendant's exhibit is in fact a representative example of just how Amazon's bold and voluntary health claims systemically appear on pages without any disclaimer, and how voluntary claims unlawfully eclipse the comparatively miniscule non-compliant disclaimer appearing pages upon pages after Amazon's voluntary health claims first appear. These include the great big colorful claims and diagrams stating that: "Co Q-10 contributes to your heart and cardiovascular wellness," "Clinically studied to promote heart health," "Helps support healthy blood pressure," "Supports healthy aging." Critically too, the exhibit shows how Amazon prominently features the front panel of the product, with non-disclaimed health claims, as opposed to the side or back panels that Defendant highlights in exhibits A-J. Dkt. No. 19-1. This unlawful omission and obfuscation is uniform across *each and every* set of product pages included in Amazon's exhibits. *See., e.g.*, Dkt. No. 19-1, Exh. K-AA.

Images 1 – 7 (Amazon.com pages 1-7 (of 12) for Co Q-10)



In other words, Amazon deceptively places disclaimers where consumers do not, and are not required to, read them—buried way in the hinterland of excess voluntary verbiage or links—much like the defendant in the seminal Ninth Circuit of *Williams v. Gerber* placed corrective information on the side, instead of the primary display label, or in *Arora* where GNC unlawfully placed mandatory disclaimers on side panels. *See Williams v. Gerber,* 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception); *Arora v. GNC,* 2019 WL 6050750, at *13 (stating claim where GNC omits the disclaimer from the front panel and puts a non-compliant disclaimer on the back panel "where it is rendered non-prominent by a variety of voluntary claims"). Inasmuch as well-established authority in this Circuit holds that you do not need to turn a bottle over to read information, clearly consumers are not required to read through pages upon pages of misleading health claims, or research all the product page links, to find the buried truth in not only distant but comparatively small, feint, and non-prominent font. At the very least, to the extent there is a factual dispute as to whether a reasonable consumer would be required to do so, that is no basis for granting a motion to dismiss.

In short, nothing about the buried disclaimers alerted Plaintiffs to the illegality of the drugs Amazon induced them to purchase, nor did they alert that the challenged products are not reliably for therapeutic purposes, and/or might be unsafe. Plaintiffs' reliability claims are plainly plausible.

## B. Plaintiffs Plausibly Allege That They Are Reasonable Consumers.

Amazon next asserts that no reasonable consumer would conclude that the challenged products are legal and/or intended for therapeutic purposes and safe—a contention similar to its erroneous argument that Plaintiffs failed to plausibly allege reliance. Mot. at 17-18. For all the same reasons, allegations, and more, Amazon again misses the mark.

First, it is well-established that the reasonable consumer test is applicable to a UCL unlawful prong claim only if it is an element of the predicate violation. *Bruton v. Gerber Products Co.*, 703 F. App'x. 468, 472 (9th Cir. 2017). That is not the case here where the predicate violation is of

California's Sherman Law, *see* Cal. Health & Safety Code §§ 110760, 110765, which incorporates standards set under the Federal Food, Drug, and Cosmetic Act ("FFDCA") and FDA regulations. Neither the disclaimer provisions of the FFDCA nor the FDA regulation incorporates the reasonable consumer standard, nor does the prohibition against introducing unapproved drugs into interstate commerce or selling them. *E.g., Arora*, 2019 WL 6050750, at *2-*3. Inasmuch as the reasonable consumer test is not an element of the predicate violations, it is inapposite to Plaintiffs' unlawful prong claims concerning omitted disclaimers and Amazon's trade in illegal drugs. Indeed, the "UCL claim presents two predominate issues," "1) whether the sale of products was unlawful; and if so, 2) the amount of money Amazon 'may have . . . acquired by means of' those sales and that must be restored to the class." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (Cal. App. 2d Dist. 2010), *as modified on denial of reh'g* (Feb. 8, 2010).[10] So, Amazon's argument fails here because there is no reasonable consumer element to begin with.[11]

And second, with respect to their claims under the UCL's fraudulent and unfair conduct prongs, and the unlawful prong claim for deceptive labeling, Plaintiffs allege that the product labels and advertising featured on Amazon omitted mandatory disclaimers, and in consequence, they did not read disclaimers in conjunction with reading the effusive health claims, which led to their belief in the products' therapeutic value and safety, as well as their legality, and thereafter reliance and injuries. Plaintiffs never allege that they read buried disclaimers when purchasing products. *But compare* Mot. at 17 ("no reasonable consumer could *read* the display page disclaimer yet conclude. . . . ") (emphasis

---

[10] *See also Steroid Cases*, 181 Cal. App. 4th at 157 (approving full refund damages model because product was advertised as legal but contained illegal ingredients); *Ortega v. Nat. Balance, Inc.*, 300 F.R.D. 422, 430 (C.D. Cal. 2014), *order reinstated sub nom. Lambert v. Nutraceutical Corp.*, CV 13-05942-AB (EX), 2020 WL 12012559 (C.D. Cal. Jan. 8, 2020) (approving full refund model where Plaintiffs alleged that aphrodisiac was illegal and thus valueless), as cited in *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022).

[11] As next addressed, the test is apposite to the unlawful prong claim for violation of FDA's more general prohibition against deceptive labeling—and readily met. To be clear, under the UCL, Plaintiffs bring unlawful prong claims for: 1) Amazon's unlawful omissions and sale of illegal and unapproved drugs (¶¶ 136-47); and 2) unlawful deception that violates the misbranding provisions of FFDCA and FDA labeling regulations, and the Sherman law (*id.*). Plaintiffs also bring unfair and fraudulent prong claims for deceiving them as to: 1) the nature of the products as legal dietary supplements when they are illegal drugs (¶¶ 148-57); and 2) the products' therapeutic purpose and safety. (*Id.*)

supplied). But more to the point, it is well-established that the question here—regarding the reasonableness of consumer perceptions—is ill-suited for determination on a motion to dismiss. *E.g.*, *Williams v. Gerber Prods. Co*., 552 F.3d at 939 (Ultimately, the determination of "whether a business practice is deceptive will usually be a question of fact not appropriate for determination on a motion to dismiss. Indeed, it is a 'rare situation' where granting a motion to dismiss is appropriate"); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1053, 1083-84 (N.D. Cal. 2017) (Koh, J.) ("the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements.… these statements involve questions of fact ill-suited for resolution on a motion to dismiss"); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 963 (N.D. Cal. 2017) (same); *Arora*, 2019 WL at *10 ("the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion to dismiss"). *Cf. Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157 (as to deception about illegal products, "[i]t requires no stretch to conclude that the proper answer is 'yes'—we assume that a reasonable person would not knowingly commit a criminal act" by purchasing illegal products).

Indeed, the court in *Arora* dealt precisely with the reasonable consumer question in a virtually identical context: GNC allegedly omitted mandatory disclaimers and sold illegal drugs to plaintiffs. *Id.*, 2019 WL 6050750, at *10-11. In a passage (and decision) that is directly on point, the court rejected GNC's argument that plaintiffs' consumer deception claims were not reasonable:

> plaintiffs have pleaded adequately that they were deceived and that reasonable consumers would be misled by therapeutic claims that would be evaluated differently if the label had the required disclaimer. [] That approach is consistent with the FDA's recognition that dietary supplements generally are not the subject of adequately designed clinical trials and its exempting supplements affection 'the structure or function of the body' only if the disclaimer appears on each panel of a label that has a health-related claim.

*Id.*, at *11 (also rejecting GNC's contentions that plaintiffs' pleadings were too general).

The Complaint contains numerous allegations as to how Amazon deceived Plaintiffs about the illegality of the products and their non-therapeutic nature and safety issues. *Supra* at 4-7, 9, 12-14. Plaintiffs' allegations of deception, moreover, dovetail precisely with the stated concerns of the FDA and others about the deception risk if health claims are unaccompanied by the prescribed disclaimers, as well as the safety risks. ¶¶ 54-65 (setting forth the consumer protection rationale underlying the

disclaimer requirement). Given all this, Amazon's argument that Plaintiffs' claims of deception are unreasonable as a matter of law fails.[12]

### C. Plaintiffs' Allegations State Viable Consumer Claims.

#### 1. Plaintiffs Do Not Assert Vicarious Liability; They Allege Amazon Participates in, Amplifies, and Adopts the Challenged Actions.

Amazon next asserts that Plaintiffs seek to hold it vicariously liable for supplement manufacturers' conduct. Mot. at 18. This contention misses the mark because it ignores the allegations, which must be accepted as true and construed in Plaintiffs' favor, concerning Amazon's integral involvement in the unlawful and deceptive marketing, promotion, sales, delivery into interstate commerce, and delivery to Plaintiffs, of illegal products. *See, e.g., supra* at 6-7, ¶¶ 2, 23-53 (detailing "Defendant Amazon's Business Practices" and "Amazon's Sale of Illegal and Dangerous Drugs," as well as FDA's finding that Amazon is "responsible for introducing, delivering, or causing the introduction or delivery into interstate commerce of products that are unapproved drugs").

Additionally, Plaintiffs allege that Amazon actively participates in: warehousing and monitoring stock (*e.g.*, ¶ 26); promotion and control on Amazon.com of product health claims absent required disclaimers, including but not limited to its on-line "Amazon's Choice" notations, and abundant other marketing claims (¶¶ 73 & 74 and Images therein); promotion across the internet through banner ads (*e.g.*, ¶¶ 27, 38, 66, 68-75); pledges to consumers of safety protocols and controls over unsafe and illegal products (*e.g.*, ¶¶ 28-29); control over orders and sales of the products (*e.g.*,

---

[12] Amazon's cited authorities here are also inapposite—not the least because not a single one of the products at issue in the cases on which Amazon relies constituted illegal drugs that are *barred* from interstate commerce. *See Ebner v. Fresh, Inc*., 838 F.3d 958, 965, 967 (9th Cir. 2016) (claim that 100% of product should be squeezable from container not reasonable for product fully compliant with labeling requirements); *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) (claim that product label fully compliant with labeling requirements misled that almond milk was nutritionally equivalent to cow's milk not reasonable); *Chuang v. Dr. Pepper Snapple Grp., Inc.,* No. CV 17-01875-MWF (MRWx), 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) (claim that product label fully compliant with labeling requirements misled consumers when product contained the fruits and vegetables depicted on the labels not reasonable); *Min Sook Shin*, 77 F. App'x 373 (upholding dismissal of entirely conclusory claims by *pro se* plaintiff for "failure to describe how any defect in Umeken's disclaimers made its other advertising claims misleading") (as cited in *Arora*, 2019 WL 6050750 at *12).

¶¶ 26-27); control of payments and refunds (*e.g.*, ¶¶ 26-27); delivery into interstate commerce (*e.g.*, ¶¶ 26, 5, 12); and delivery to Plaintiffs in California (*e.g.*, ¶¶ 5, 12).

Where a defendant is involved in challenged conduct to the extent Plaintiffs allege, courts routinely find that claims are actionable under California's consumer protection laws, and are not impermissible attempts to assert vicarious liability. For example in *Dorfman v. NutraMax*, the court squarely rejected Amazon's restrictive reading of the law, holding instead that the "allegations, if true, sufficiently demonstrate that Wal-Mart and Rite-Aid 'participated in the unlawful practices' . . . such that they may be be may be subjected to liability under the UCL and CLRA. *Id*., No. 13-cv-0873 WQH (RBB), 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013) (internal citations omitted). In that case, plaintiffs alleged that Walmart and Rite Aid, among other allegations, "market and sell the Cosamin products at issue, and participated in the dissemination of the representations concerning the efficacy of the Cosamin products and adopted the representations as their own." *Id*. Thus, plaintiffs "plausibly allege that the distributors/retailers independently participated in or exercised control over the manufacturer's allegedly false representations." *Id*. at *11 (quoting *In re Hydroxycut Mktg. & Sales Practices Litig*., 801 F. Supp. 2d 993 (S.D. Cal. 2011)) (emphasis added). This is precisely as Plaintiffs allege here. *See also* ¶ 38 (FDA letter to Amazon, "This letter concerns your firm's distribution of products that violate the [FFDCA]. As explained below, . . .your firm is responsible for introducing, delivering, or causing the introduction or delivery into interstate commerce of products that are unapproved new drugs").

Also on point is *Herron v. Best Buy Stores*, No. 12-cv-02103-GEB-JFM, 2013 WL 4432019, *4 (E.D. Cal. Aug. 16, 2013). In *Herron,* plaintiffs sued Best Buy alleging a deceptive website representation about battery life. Explaining that the CLRA "prohibits unfair or deceptive practices arising from 'a transaction *intended to result or which results in* the sale or lease of goods or services to any consumer,'" *id*. at *4 (citing Cal. Civ. Code § 1760) (emphasis in original), the court rejected Best Buy's defense that it lacked "personal participation" in the deception. Indeed, with respect to the CLRA claims, the court explained that in the first instance, "California state courts have not extended the personal participation and unbridled control limitation on liability to the CLRA, which must be liberally construed and applied." *Id.* (citations omitted). Plaintiffs plead CLRA claims. ¶¶ 158-64.

Independent of the statutory consumer protection claims, courts throughout California have examined Amazon's involvement in the commerce of unlawful and/or dangerous goods more generally, and found that its level of participation is material and sufficient to warrant imposition of non-vicarious liability under common law negligent and strict liability theories too. For example, in *Bolger v. Amazon.com LLC*, which involved Amazon's sale of an exploding laptop, the California Court of Appeal reversed a grant of summary judgment, roundly rejecting Amazon's contention that "it was merely a provider of services, namely an online marketplace and logistics operation." *Id.*, 53 Cal. App. 5th 431, 445 (2020). In *Bolger*, plaintiffs established, *following discovery and two years of litigation*, that even for so-called third party sellers, Amazon charges customers, exclusively collects payments, accepts the risk of fraudulent or non-payments, deducts substantial referral fees for such sales, aggregates remaining proceeds and remits payments, enables companies to reach customer on a global basis, can refuse listings, warehouses and packages products for shipment and delivery with Amazon branding and messaging, exclusively handles returns, "owns" the customer relationships, prohibits companies from directly communicating with costumers including "for any marketing or promotional purposes whatsoever," and provides customers with A-Z Guarantees and other pledges of safety, legality, and authenticity. *Id.*, at 440-45. Ultimately, not only did the Court of Appeal find that the activities by Amazon were extensive, it found that "***Amazon is an integral part of the overall producing and marketing enterprise*** that should bear the cost of injuries resulting from defective products." *Id.* at 453 (emphasis supplied). Plaintiffs allege precisely this.

The analyses in *Bolger* has been followed by other California courts. *See also, e.g., Lee v. Amazon.com, Inc.*, 76 Cal. App. 5th 200, 254 (2022) (reversing grant of summary judgment where Amazon had "*pivotal role in bringing the product here to the consumer*" and where consumer alleged that "Amazon should have added its own Proposition 65 warning . . . based on its conduct in providing a mercury-containing product [face cream] to consumers") (emphasis supplied); *Loomis v. Amazon.com LLC*, 63 Cal. App. 5th 466, 482 and *passim* (2021) ("facts undermine Amazon's characterization of its marketplace as an online mall providing online storefronts for sellers," finding triable issues of material fact as to whether Amazon had "integral role" in bringing exploding hoverboard to consumer and/or ability to influence production and sale); *Diew v. Amazon.com LLC*,

No. 21-cv-01462-LB, 2021 WL 2435265, at *5 (N.D. Cal. June 15, 2021) (denying motion to dismiss in light of allegations of Amazon's involvement in the challenged commerce). Given all of the allegations set forth above and in the Complaint about Amazon's integral activities, Defendant's argument that Plaintiffs are impermissibly seeking to hold it vicariously liable for the conduct of third parties fails.

Importantly, Amazon appears to contend that the applicable standard is whether it exercises "unbridled control" over challenged practices—this is erroneous. *See, e.g.*, Motion at 19 ("The Complaint contains no allegations . . . [of] 'unbridled control'"). Not only does such contention ignore the myriad allegations of Amazon's participation, and the CLRA claim, it overstates the degree of control necessary to establish actionable liability, let alone to adequately state a claim under Rule 12(b)(6). As courts have made clear, the applicable "made, adopted, or controlled" standard is *disjunctive* as opposed to conjunctive. To be clear, *not one* of the courts cited above found or required "unbridled control" in the sense of exclusive or complete control. *E.g, Dorfman*, 2013 WL 535043, at *11 (disjunctive test met); *Tortilla Factory, LLC v. Health-Ade LLC*, No. 17-9090-MWF, 2018 WL 6174708, at *11 (C.D. Cal. July 13, 2018) ("Plaintiffs must allege that [] Defendant 'made, adopted, *or* controlled' the alleged misrepresentations") (quoting *In re Hydroxycut*, 299 F.R.D. at 656) (emphasis added); *In re Jamster Marketing Litig.*, No. 05-cv-0819 JM, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009 (must demonstrate defendant "participated [in] *or* exercised unbridled control") (brackets in original, emphasis added). *Cf., Herron*, 2013 WL 4432019, at *4 (CLRA test is whether deceptive practices "intended to result or which results in the sale. . . to an consumer").

Finally, the two cases on which Amazon relies are once again unavailing. Mot. at 19-20. In *Hydroxycut*, plaintiffs sued numerous unrelated car dealerships still without alleging in the second amended complaint *what* advertisements *if any*—or omissions—they saw and relied on. *Id*., 299 F.R.D. 648, 656 (S.D. Cal. 2014). This understandably doomed their claims. More apposite here, however, is language Amazon does not cite. Specifically, that "[t]o the extent the Retailer Defendants issued their own advertisements, they could be held liable for misrepresentations therein. Further "to the extent Retailer Defendants displayed Hydroxycut signage or other promotional materials, other than the product and product packaging itself, the Retailer Defendants arguably controlled the

advertising and adopted the statements made therein." *Id*. This is precisely what Plaintiffs have alleged, among other allegations—that is, that Amazon both adopted deceptive images of and claims for products *and* itself promoted the deceptive and illegal products and claims on its product pages and through banner ads on other websites. Equally, Amazon placed illegal drugs into interstate commerce—indeed it did so and continues to do so knowingly and intentionally. *E.g.*, ¶¶ 4-17, 23-85; *supra* at 5-7. *See also Hydroxycut* at 657 (distinguishing *Dorfman* from case before it because in *Dorfman* the "statements on [defendant's] websites sufficiently demonstrated that they participated in the unlawful practices such that they may be subjected to liability under the UCL and CLRA").[13]

### 2. Plaintiffs Plead Their Fraud Claims with Particularity.

With respect to Amazon's Rule 9(b) contention, and as set forth above, whereas conclusory allegations of the who, what, where, when, and how of the misconduct will not suffice, "Rule 9(b) does not require absolute particularity or a recital of the evidence." *Freedline,* 2020 WL 1643697, at \*2. Under this standard, the *Arora* court found virtually identical claims of deception and illegality were sufficient. *Id.*, 2019 WL 6050750, at \*7. The same result is appropriate here.

A complaint successfully states a claim for unfair and deceptive and misleading business practices and/or advertising when it alleges that (i) a representation was made, (ii) it was false or likely to mislead a reasonable consumer, (iii) the plaintiff saw and relied on the representations for their truth in purchasing the item, and (iv) the plaintiff would not have bought the item otherwise. *Fisher v. Monster Bev. Corp*, 656 F. App'x. 819, 822 (9th Cir. 2016). However, "[w]here a fraudulent act is pleaded as an omission, a lower level of specificity is required." *In re: Gen. Motors LLC CP4 Fuel Pump Litig.*, No. 18-cv-07054-JST, 2019 WL 3315286, at \*4 (N.D. Cal. July 2, 2019) (quoting *Allen v. Verizon Cal., Inc.*, No. SA CV 08-0774 DOC (ANx), 2009 WL 10697990, at \*8 (C.D. Cal. June 8, 2009). Just as in *Arora*, Plaintiffs readily satisfy these pleading requirements.

---

[13] *In re Jamster Marketing Litig.,* 2009 WL 1456632, is also factually inapposite to the claims and allegations here. In *Jamster*, an MDL involving seven complaints and multiple defendants, the court found plaintiffs' "conclusory allegations" which "lump[ed] together" all the defendants deficient because "absent allegations of participation or control in the alleged unlawful advertising scheme, these [Wireless Carrier] Defendants cannot be vicariously liable." *Id.*, at \*8-\*9. Amazon is not lumped together with anyone in this instance, and Plaintiffs' allegations as to its involvement—in a variety of forms—are plentiful.

Contrary to Amazon's contentions, and as set forth twice above in greater detail (*supra* at 4-7), Plaintiffs identify: When and how they purchased the products (¶¶ 5, 12); what statements they read and relied on, as well as how the disclaimer omissions impacted them (*supra* at 8-11 (citing ¶¶ 6-9, 12-16, 38-76, 106, 115-16, 143-44)); how Amazon is involved in the marketing, omissions and other deceptions, including by adopting and amplifying deceptive claims, in addition to the sale and delivery of deceptive and illegal products (¶¶ 6-7, 13-14, 23-53); that they would not have purchased the products, or would have paid less for them, had Plaintiffs known the truth (¶¶ 8-9, 15-16); that Plaintiffs were injured thereby (¶¶ 9, 16); and that Plaintiffs would purchase the products again if they could rely on Amazon's marketing and practices so as to be assured that the products were legal and/or safe and therapeutic (¶¶ 10, 17).

Plaintiffs' allegations of who, what, where, why, and when are sufficient to satisfy Rule 9(b); Amazon cannot credibly complain that it does not understand what it is alleged to have done wrong so as to mount a defense. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement is designed to ensure defendants have sufficient information to "defend against the charge"). Exactly as in *Arora*, the plaintiffs in this case "have pleaded adequately that they were deceived and that reasonable consumers would be misled by therapeutic claims that would be evaluated differently if the label [and product page] had the required disclaimer." *Arora*, 2019 WL 6050750, *10-*13. *See also id*. ("By contrast [to *Umeken*], here, the plaintiffs alleged that the packaging is confusing because there is no accompanying disclaimer on the same panel, and that if there were a disclaimer, it would give a different context to the therapeutic claims such as 'Diabetic Support.'").

### D. Plaintiffs' Claims of Negligent and Strict Liability Are Not Barred

Next, Amazon asserts the economic loss doctrine as defenses to the negligent and strict product liability claims but fails to mention its key exceptions, which control here: namely, that in cases of fraud, where significant public policies are violated, and/or where there is exposure to serious bodily injury, the doctrine does not apply. These exceptions, independently and collectively, render Amazon's argument inapposite—especially at the Rule 12(b)(6) stage.

First with respect to fraud, the Ninth Circuit has made clear that "[u]nder California law, tort damages may accompany contract claims when the duty that gives rise to tort liability . . . *arises from conduct which is both intentional and intended to harm.*" *Hannibal Pictures, Inc. v. Sonja Prods. Ltd. Liab. Co.*, 432 F. App'x 700, 701 (9th Cir. 2011) (denying motion to dismiss claim where plaintiff alleged dealership's deception in inducing commercial transaction, notwithstanding lack of physical injury) (emphasis supplied). *See also Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979 (2004) (permitting tort claim "where the contract was fraudulently induced"); *In re JUUL Labs, Inc.*, 497 F. Supp. 3d 552, 660 (N.D. Cal. 2020) (where plaintiffs targeted by deceptive marketing scheme, doctrine did not apply).[14] Unsurprisingly, the California Supreme Court has similarly found that allegations amounting to fraud also satisfy the public policy exception: "California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Id.* at 992 (internal citations omitted). With respect to the third exception, Plaintiffs have expressly alleged that they were exposed to a serious personal injury, which suffices. *E.g.*, *Robinson Helicopter Co..,* 34 Cal. 4th at 991 (risk of crash from deceptively marketed parts). Plaintiffs' allegations with respect to each of the exceptions here are ample and more than sufficient. *E.g.*, *supra* at 4-7, 22-23, ¶¶ 54-65 ("Consumer Protection Rationale Underlying the Disclaimer Requirement"); *supra* at 2 ("At best, many of these product claims are unreliable and waste tens of billions of consumer dollars a year, and, even worse, they can cause serious health problems requiring acute medical attention.") (citing FTC).

Additionally, the California Supreme Court also made clear in *J'Aire Corp. v. Gregory*, that where a "special relationship" between the parties exists, the economic loss rule is inapplicable. *Id.*, 24 Cal.3d 799, 62–63 (1979). As in *J'Aire,* Plaintiffs' allegations satisfy all of the requirements of the "special relationship" test here too because: 1) the transaction was intended to affect the Plaintiffs— by way of inducing reliance and their purchases; 2) the harm to Plaintiffs—purchasing and receiving illegal and/or deceptive drugs—was foreseeable; 3) there was certainty that Plaintiffs would be harmed—because they foreseeably received illegal, and deceptive, drugs; 4) the connection between

___

[14] While a few courts have declined to apply the exception where claims sounded more in negligence than deceit/fraud, *e.g.*, *McKinney v. Corsair Gaming Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022), Plaintiffs' claims in the instant case clearly assert fraud.

Amazon's conduct and Plaintiffs' injury is direct—Amazon was directly and materially participated in the marketing, sales, and delivery to Plaintiffs of the products; 5) there is moral blame attached to Amazon's actions of engaging in the commerce of illegal and deceptive drugs; and 6) the claims are consistent with the prevention of future harm. *Id.*, ¶¶ 76-84. Moreover, beyond its duty to Plaintiffs, *id.*, Amazon has the power and easy means to cure the deception alleged—for example, by placing a contextually prominent, uncluttered, bolded, and boxed, disclaimer atop its product marketing, or omitting its voluntary and non-disclaimed health claims from its product pages. To cure illegality, Amazon has the power to require, as a prerequisite for its engagement and listing, required disclaimers on products. Amazon chooses not to do this and instead to reap colossal profits from selling illegal drugs and touting, to quote the FTC, "pernicious" "health-claim scams" that do real harm. *Supra* at 2.

### E.    Plaintiffs State a Claim for Breach of Implied Warranty

Lastly, Amazon contends that Plaintiffs fail to state a claim for breach of implied warranty because they allegedly fail to plead that the challenged products "are not merchantable." Mot. at 22. But Amazon disregards allegations that Amazon sold Plaintiffs illegal drugs that were prohibited from being placed into interstate commerce and sold, and therefore that Amazon breached an implied warranty of merchantability. *E.g.*, ¶¶ 131 and *passim* (Amazon breached 'implied warranties that those goods were merchantable"). An illegal and prohibited product is inherently not merchantable. While apposite decisions are rare, for good reason, in *Myers v. Malone and Hyde*, the Eight Circuit found that while the challenged tomato products may be "good food," defendant implicitly warranted that the tomatoes "complied fully with the standards set by the [FFDCA] and the regulations promulgated thereunder, and [] that such tomatoes might lawfully be moved in interstate commerce," but such was not the case. Therefore, "as a matter of law there was the same actionable breach of implied warranty." *Id.,* 173 F.2d 291, 294-95 (8th Cir. 1949).

To be clear, Plaintiffs' allegations here are not merely that the products are unlawful because the marketing is deceptive. Plaintiffs allege that the products are inherently illegal and are barred from interstate commerce. *Supra* at 4; ¶¶ 49-52 (citing 21 U.S.C. §§ 321 (g), 331(d), 343(r)(6), 355(a)), Cal. Health & Safety Code § 110100). This suffices to state a breach of implied warranty of merchantability claim. Indeed, courts in this Circuit have required far less. *E.g., Branca v. Bai Brands LLC*, No. 3:18-

cv-00757-BEN-KSC, 2019 WL 1082562, at *11 (S.D. Cal. Mar. 7, 2019) (stating claim for breach of implied warranty where drinks misbranded); *Noohi v. Kraft Heinz Co.*, CV 19-10658 DSF (SKx), 2020 WL 5554255, *6 & n.1 (C.D. Cal. July 20, 2020) (breach of warranty claims concerning Crystal Light "rise or fall with the statutory consumer fraud claims"); *Augustine v. Talking Rain Beverage Co.*, 386 F. Supp. 3d 1317, 1332 (S.D. Cal. 2019) ("for goods to be merchantable, at a minimum, they must be adequately contained, labeled and packaged with the contents conforming "to the promises, or affirmations of fact made on the container or label.").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Amazon's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, as this is the Court's first consideration of Plaintiffs' pleading, to the extent that the Complaint is deficient in any respect, Plaintiffs request leave to amend.

DATED: May 7, 2023                                    Respectfully submitted,


                                                       /s/ *Maia C. Kats*
                                                       Maia C. Kats (*pro hac vice*)

                                                       **JUST FOOD LAW**
                                                       5335 Wisconsin Avenue, NW, Ste. 440
                                                       Washington, DC 20015
                                                       Telephone: (202) 243-7910
                                                       maiakats@justfoodlaw.com

                                                       Michael D. Braun
                                                       **KUZYK LAW, LLP**
                                                       1999 Avenue of the Stars, Ste. 1100
                                                       Los Angeles, California 90067
                                                       Telephone:    (213) 401-4100
                                                       mdb@kuzykclassactions.com

                                                       *Counsel for Plaintiffs and the Proposed Class*