# EXHIBIT A



Office of Commissioner
Rebecca Kelly Slaughter

UNITED STATES OF AMERICA
**Federal Trade Commission**
WASHINGTON, D.C. 20580

### STATEMENT OF COMMISSIONER REBECCA KELLY SLAUGHTER
### Joined by Chair Lina Khan and Commissioner Alvaro M. Bedoya

*Regarding the Issuance of a Notice of Penalty Offenses on Substantiation of Product Claims*

March 31, 2023

There is much the Commission agrees about underlying today's issuance of a Notice of Penalty Offenses on Substantiation of Product Claims. We appreciate the dedication of the FTC's staff to use every available tool to protect consumers from unlawful conduct and to obtain civil penalties—especially in the wake of the loss of our ability to seek equitable monetary relief under Section 13(b) of the FTC Act. This is the fourth time the Commission has issued an NPO since that decision, revitalizing a long-underused tool.[1] The legal framework and case law on substantiation underlying this NPO has been tested in court, and companies and marketers should take these prohibitions seriously. This unanimity is a testament to the staff's outstanding and rigorous work.

The principles behind our substantiation program are simple. If a company makes a claim about what its product can do, it must back that claim up with reliable evidence. If a company makes a claim about the health and safety benefits of a product, that claim must be based on scientific evidence. If a company claims that its product can cure, mitigate, or treat a serious disease such as cancer or heart disease, it must back up that claim through the accepted standards of scientific testing, including randomized control trials.

Everyone gets sick, and most of us will experience the infirmities that accompany aging. That shared vulnerability leaves us all susceptive to health-claim scams and to plausible-sounding treatments that promise to alleviate pain, to restore lost virility, or to help cure the most deadly and tragic of illnesses. Anyone who has ever walked into an American gas station, corner store, or pharmacy has seen aisles of products making these kinds of promises. At best, many of these product claims are unreliable and waste tens of billions of consumer dollars a year,[2] and, even worse, they can cause serious health problems requiring acute medical attention.[3]

---

[1] A Notice of Penalty Offenses puts firms on clear notice about deceptive or unfair acts or practices the FTC has fully litigated. The agency may then seek civil penalties from anyone who, having received the Notice, violates the prohibitions against those acts or practices.

[2] *See* Austin SB, Yu K, Liu SH, Dong F, Tefft N., Household expenditures on dietary supplements sold for weight loss, muscle building, and sexual function: Disproportionate burden by gender and income, NIH: National Library of Medicine, (March 24, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5377432/

[3] *See* Andrew I. Geller, M.D., Nadine Shehab, Pharm.D., M.P.H, *et al*, Emergency Department Visits for Adverse Events Related to Dietary Supplements, New England Journal of Medicine, (October 15, 2015), https://www.nejm.org/doi/full/10.1056/nejmsa1504267

Unreliable claims also distort the health-product market in ways that favor cavalier or unscrupulous companies. It is impossible to evaluate competing products in a market with no baseline level of accuracy or truthfulness about the effectiveness of those claims. Scrupulous companies with effective products can get crowded out of a market when compared to snake oil that promises the same benefits but better, faster, and cheaper. People suffer real physical, financial, and emotional harm when purported cures and treatments do not live up to their marketing promises. These harms may be different but are no less pernicious than those resulting from the types of fraud we have targeted with other NPOs.

Obtaining access to civil penalties for first-time offenders through this Notice is essential to changing the dynamics of the marketplace. Injunctive relief alone cannot, and will not, remediate the harm from these practices, but monetary penalties can send a strong message to potential violators.

Civil penalties large enough to change market behavior must be part of the equation when it comes to substantiation cases. Both the COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act (CCPA) and the Opioid Addiction Recovery Fraud Prevention Act of 2018 (OARFPA) authorize the FTC to obtain civil penalties for unsubstantiated claims about COVID-19 cures or addiction treatment, respectively.[4]

In addition, we would like to address any concerns regarding the question of the efficient allocation of our resources in pursuing an NPO on substantiation. First, providing firms with an explicit notice of their legal responsibilities facilitates their compliance. The notice is legally binding and enhances general deterrence in the market. Second, the notice no doubt enables staff to allocate more efficiently their investigatory resources. The staff time required to identify firms, transmit notices, and monitor firm conduct for the deceptive or unfair practices we've identified, although not negligible, is nevertheless more efficient than attempting to deter those abuses without making companies' legal responsibilities explicit and having the possibility of civil penalties for violations of the law.

Some also have argued that, despite longstanding precedent, the FTC should have limited its application of our Section 13(b) authority lest we draw the ire of those who have sought to challenge this agency's fundamental ability to function.[5]

Limiting the application of Section 13(b), or any forthcoming legislative fix, to some narrow category of "super frauds" would not only fundamentally undermine our mission, leaving millions of consumers vulnerable to scams and unfair or deceptive practices, but also flies in the face of over 40 years of prudent application of this authority. It also lacks any statutory basis.

---

[4] *See*, FTC, In First Action Under COVID-19 Consumer Protection Act, FTC Seeks Monetary Penalties for Deceptive Marketing of Purported Coronavirus Treatments, (April 15, 2021), https://www.ftc.gov/news-events/news/press-releases/2021/04/first-action-under-covid-19-consumer-protection-act-ftc-seeks-monetary-penalties-deceptive-marketing The FTC sought monetary penalties for a failure to substantiate health-claims in its first case under the COVID-19 Consumer Protection Act (CCPA).

[5] *See* J. Howard Beales and Timothy J. Muris, Section 13(b) of the FTC Act at the Supreme Court: The Middle Ground, George Mason University Law & Economics Research Paper Series, 20-34 (Dec. 2020), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3750787.

As Chair Khan and Commissioner Slaughter wrote in a letter to Congress regarding the restoration of Section 13(b), in the years prior to the *AMG*[6] case the FTC: returned $50 million to consumers settling charges that Reckitt Benckiser maintained an illegal monopoly over the opioid treatment Suboxone; returned $49 million to consumers resolving allegations that the University of Phoenix's job placement claims were deceptive; returned $61.7 million in tips to Amazon Flex drivers that were allegedly illegally withheld; returned $198 million to consumers in resolving allegedly unfair compensation practice claims from Herbalife; and returned $9.5 billion to consumers resolving Volkswagen's allegedly deceptive "Clean Diesel" marketing claims.[7]

We do not believe staying the hand of the FTC in any of these matters would have spared the agency from lawsuits by those seeking to undermine this agency's mission. *AMG* involved a clear-cut case of fraud. AMG and its CEO, Scott Tucker, ran a massive payday lending scheme, taking far more from borrowers than they had agreed to pay. Scott Tucker was prosecuted and sentenced to almost 17 years in prison for running the $3.5 billion payday lending scheme.[8]

We do not need to relitigate these cases, but we cannot accept the argument that the FTC should ignore or accept these kinds of unlawful schemes to protect an ever-narrowing scope of our authority by deploying it only against "hardcore criminals." Severely curtailing the application of our authority in this way lacks a statutory basis. Doing so anyway would risk flouting our statutory obligation and contravene the mandate that Congress has given us, raising rule-of-law concerns. Moreover, FTC staff have proven time and time again to be thoughtful and careful stewards of this institution and judicious in the exercise of its authorities. They have done great work leveraging our authority under other laws to fill the gap left by the loss of our equitable monetary relief authority. But, until Congress acts, we have no ability to return ill-gotten gains from most frauds or competition violations back to consumers. In addition to leaving wronged consumers out in the cold, in many cases this also means the FTC cannot effectively deter false claims, letting companies profit by deceiving their customers.

For all these reasons, we support this Notice of Penalty Offenses.

---

[6] *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021).
[7] Statement of Commissioner Rebecca Kelly Slaughter joined by Chair Lina M. Khan Regarding Section 13(b) of the FTC Act, FTC Open Meeting, (April 28, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/Statement%20of%20Comm%27r%20Slaughter%20Joined%20by%20Chair%20Khan%20Regarding%20Section%2013%28b%29%20of%20the%20FTC%20Act_April%202022.pdf.
[8] Department of Justice, Scott Tucker Sentenced to More than 16 Year in Prison for Running $3.5 Billion Unlawful Internet Payday Lending Enterprise, (January 5, 2018), https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday.