1  Charles C. Sipos, Bar No. 348801
   CSipos@perkinscoie.com
2  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
3  Seattle, Washington 98101-3099
   Telephone:  +1.206.359.8000
4  Facsimile:  +1.206.359.9000

5  Jasmine W. Wetherell, Bar No. 288835
   JWetherell@perkinscoie.com
6  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
7  Los Angeles, California 90067-1721
   Telephone:  +1.310.788.9900
8  Facsimile:  +1.310.788.3399

9  Julie Hussey, Bar No. 237711
   JHussey@perkinscoie.com
10 Ross E. Bautista, Bar No. 312319
   RBautista@perkinscoie.com
11 PERKINS COIE LLP
   11452 El Camino Real, Ste 300
12 San Diego, California 92130-2080
   Telephone:  +1.858.720.5700
13 Facsimile:  +1.858.720.5799

14 Attorneys for Defendant
   AMAZON.COM SERVICES LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ERIC LI, ANITA MEDAL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case No. 3:23-cv-00441-AMO<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT BY AMAZON.COM SERVICES LLC**<br><br>Date:        July 20, 2023<br>Time:        2:00 p.m.<br>Courtroom:   6<br>Judge:       Hon. Araceli Martinez-Olguin<br><br>Case Filed:  January 31, 2023 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiffs' Theory of Deception is Implausible ........................................ 2

        1. It is Implausible that Plaintiffs Did Not See the DSHEA Disclaimers ................................................................................... 2

        2. Reasonable Consumers Would Not Ignore an Asterisk Accompanying a Health Claim ................................................... 4

    B. Plaintiffs Do Not Plausibly Allege Actionable Conduct by Amazon .................... 5

        1. Amazon Cannot Be Held Vicariously Liable for Challenged Label Statements Created and Controlled by Third Parties ................. 6

        2. The DSHEA Disclaimers Displayed on Amazon.com Product Detail Pages are Compliant with FDA Regulations and Adequately Disclaim Any Product Health Claims ......................................... 9

    C. California's Sherman Law Expressly Exempts Sellers/Distributors from Liability Where They Are Not Engaged in Packaging or Labeling the Products ................................................................................................. 10

    D. Plaintiff's Remaining Cited Authority is Distinguishable. .................................. 11

        1. Product Liability Claims ........................................................... 11

        2. Implied Warranty ....................................................................... 13

III. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arora v. GNC Holdings, Inc.*,
   2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) .................................................................. 5, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 8

*Bolger v. Amazon.com, LLC*,
   53 Cal. App. 5th 431 (2020) .............................................................................................. 11, 12

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) ............................................................................................ 10

*Chase v. Hobby Lobby Stores, Inc.*,
   No. 17-cv-00881, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ................................................. 2

*Cheslow v. Ghirardelli Chocolate Co.*,
   472 F. Supp. 3d 686 (N.D. Cal. 2020) ...................................................................................... 5

*Diew v. Amazon.com LLC*,
   No. 21-cv-01462-LB, 2021 WL 2435265 (N.D. Cal. June 15, 2021) ............................... 11, 12

*Dinan v. SanDisk LLC*,
   2020 WL 364277 (N.D. Cal. Jan 22, 2020) .............................................................................. 5

*Dorfman v. NutraMax*,
   No. 13-cv-0873 WQH (RBB), 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ..................... 6, 7

*Gudgel v. Clorox Co.*,
   514 F. Supp. 3d 1177 (N.D. Cal. 2021) .................................................................................... 5

*Hannibal Pictures, Inc. v. Sonja Prods. Ltd. Liab. Co.*,
   432 F. App'x 700 (9th Cir. 2011) ............................................................................................ 12

*Herron v. Best Buy Stores*,
   No. 12-cv-02103-GEB-JFM, 2013 WL 4432019 (E.D. Cal. Aug. 16, 2013) ........................... 7

*Hilsley v. General Mills, Inc.*,
   376 F.Supp.3d 1043 (S.D. Cal. 2019) ....................................................................................... 8

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
   299 F.R.D. 648 (S.D. Cal. 2014) ........................................................................................... 7, 8

*In re Jamster Mktg. Litig.*,
   No. 05CV0819 JM (CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) .............................. 7

*In re JUUL Labs, Inc.*,
 497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................... 12

*Jimenez v. Superior Ct.*,
 29 Cal. 4th 473 (2002) ........................................................................................................ 12

*Kane v. Chobani*,
 2013 WL 3776172 (N.D. Cal. July 15, 2013) ..................................................................... 13

*Lee v. Amazon.com, Inc.*,
 76 Cal. App.5th 200 (2022) ................................................................................................ 11

*Loomis v. Amazon.com LLC*,
 63 Cal. App. 5th 466 (2021) ......................................................................................... 11, 12

*Moore v. Trader Joe's*,
 4 F.4th 874 (9th Cir. 2021) ................................................................................................... 4

*Morgan v. Wallaby Yogurt Co., Inc.*,
 No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ............................... 5

*Nelson v. MillerCoors, LLC*,
 246 F. Supp. 3d 666 (E.D.N.Y. 2017) .................................................................................. 4

*Parent v. MillerCoors, LLC*,
 2016 WL 3348818 (S.D. Cal. Jun. 16, 2016) ....................................................................... 8

*Perez v. Monster Inc.*,
 149 F. Supp. 3d 1176 (N.D. Cal. 2016) ................................................................................ 7

*Piescik v. CVS Pharmacy, Inc.*,
 576 F. Supp. 3d 1125 (S.D. Fla. 2021) ................................................................................. 5

*Pratt v. Whole Foods Market Ca., Inc.*,
 No. 5:12-cv-05652-EJD, 2014 WL 1324288 (N.D. Cal. Mar. 13, 2014) ............................ 10

*Pratt v. Whole Foods Market California, Inc.*,
 No. 5:12-cv-05652, 2015 WL 5770799 (N.D. Cal. Sep. 30, 2015) ..................................... 10

*Robinson Helicopter Co. v. Dana Corp.*,
 34 Cal. 4th 979 (2004) ........................................................................................................ 12

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ................................................................................................ 2

*Troncoso v. TGI Friday's Inc.*,
 2020 WL 3051020 (S.D.N.Y. Jun. 8, 2020) ......................................................................... 8

*Yordy v. Plimus, Inc.*,
 No. C12–0229 THE, 2012 WL 2196128 (N.D.Cal. June 14, 2012) ..................................... 7

**STATUTES**

Dietary Supplement Health and Education Act of 1994,
  Pub. L. No. 103–417, 108 Stat. 4325 ................................................................................ passim

Health and Safety Code § 25249.6 ........................................................................................ 11

Health and Safety Code § 110290 ......................................................................................... 11

Health and Safety Code § 110385 ......................................................................................... 11

Health and Safety Code § 110413 ......................................................................................... 11

Health and Safety Code § 110680 ......................................................................................... 11

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................... 2, 3

**REGULATIONS**

21 CFR 101.93(d) ............................................................................................................ 5, 9, 10

**OTHER AUTHORITIES**

U.S. Constitution, Art. III ....................................................................................................... 4, 9

## I. INTRODUCTION

Plaintiffs Eric Li and Anita Medal allege that various label statements on dietary supplements manufactured by third-parties and sold in Amazon's online store, in conjunction with the purported lack of redundant and repetitive Dietary Supplement Health and Education Act ("DSHEA") disclaimers, led them to believe that the Products were akin to prescription drugs. But judicially noticeable facts show that Plaintiffs' basic premise—in addition to being wholly implausible—is also provably wrong. *Every product purchased by Plaintiffs* was sold with the requisite DSHEA disclaimer. Plaintiffs' Opposition ("Opp.") does not and cannot refute the simple fact that the presence of the DSHEA disclaimer renders Plaintiffs' basic theory of deception, and their claims based on "inherent illegality," implausible and subject to dismissal.

First, the Opposition does not and cannot explain the Complaint's failure to address the presence of the DSHEA disclaimers. Plaintiffs ask this Court to accept that they reviewed certain unspecified aspects of the labeling; yet, inexplicably ignored asterisks directing them to the exact disclaimer they erroneously contend was not present. Given the prominent nature of the DSHEA disclaimers—which are linked to every health claim allegedly relied on by Plaintiffs—the allegations of deception are both implausible and unreasonable. Plaintiffs' allegations of reliance are similarly undercut, and the Opposition adds nothing to salvage their deficient pleadings.

Second, courts in California have firmly established that retailers cannot be liable under California consumer protection statutes for allegedly misleading label statements made by third parties, and dismissal of Amazon under that body of law is required here. Plaintiffs' conclusory say-so that Amazon played some role in the labeling and advertising of the Products are based on speculative allegations unentitled to the presumption of truth.

Third, Plaintiffs are incorrect in arguing that Amazon, by engaging in standard retailer conduct, has "participated in, amplified, and adopted" any misleading labeling statements as its own. Plaintiffs allege no facts to support an inference that Amazon had the required "unbridled control" over the challenged labeling.

Fourth, liability based on negligent or strict product liability theories are not applicable in mislabeling cases, and the limited authorities Plaintiffs cite do not support the unprecedented

application of products liability to those circumstances.

Fifth, Plaintiffs claim for breach of implied warranty fails because Plaintiffs have not and cannot plausibly allege that the Products lack a basic degree of fitness for ordinary use.

Amazon asks that the Court dismiss Plaintiffs' Complaint with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Theory of Deception is Implausible.

Putting aside Plaintiffs' inflammatory rhetoric and attempts to distract the Court, the Complaint remains subject to dismissal because, amongst other issues, Plaintiffs' theory of deception is fundamentally implausible. Plaintiffs' allegations that they were misled by non-disclaimed health claims on the Product labeling is contradicted by the judicially noticeable exhibits reflecting the presence of the DSHEA disclaimers on both the Amazon.com product detail pages *and* the labels of each Product purchased by Plaintiffs. Indeed, the Opposition admits that the DSHEA disclaimers are present. On this basis alone, each of Plaintiffs' claims based on alleged misrepresentation and/or "inherent illegality" of the Products must be dismissed. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (holding that district courts are not required to accept as true allegations that are "unwarranted deductions of fact" or "unreasonable inferences," or that "contradict matters properly subject to judicial notice or by exhibit").

#### 1. It is Implausible that Plaintiffs Did Not See the DSHEA Disclaimers.

Plaintiffs allege that they saw and believed certain representations "on product labels and otherwise," that the Products harbored therapeutic value and/or that the marketing claims were approved by the FDA. *See, e.g.,* Compl. ¶¶ 6-7, 13-14. The DSHEA disclaimer, however, unquestionably appears on both the Product labels themselves (RJN Ex. A - J), as well as in numerous locations throughout the Amazon.com Product detail pages (RJN Ex. M - AA). The Complaint fails to acknowledge this fact[1] but, notably, Plaintiffs concede that the DSHEA

---

[1] The Complaint's failure to address the presence of the DSHEA disclaimers is also an independent reason why the Plaintiffs fail to meet Rule 9(b)'s pleading standards. *See, e.g., Chase v. Hobby Lobby Stores, Inc.*, No. 17-cv-00881, 2017 WL 4358146 at *8-9 (S.D. Cal. Oct. 2, 2017) (granting motion to dismiss for insufficient pleading because plaintiff did not plead "whether she saw the 'asterisk,'" and plaintiff "did not plead how the disclaimers and other content on the ads may or may not have affected her purchasing decision"). *See also* Amazon's Motion to Dismiss ("Mot.") at p. 20-21 (Plaintiffs' failure to plead fraud with particularity).

-2-  Case No. 3:23-CV-00441-AMO
AMAZON'S REPLY ISO MOTION TO DISMISS

disclaimers were present on the Product display page, in the Product images, and on the Product label itself (Opp. 12, 13, 14). Plaintiffs nonetheless argue that the Products' health claims are misleading because Plaintiffs simply did not read the DSHEA disclaimers. Opp. at 15. If Plaintiffs reviewed and relied on the Product labeling as they claim, then it follows that they must have reviewed the accompanying DSHEA disclaimers that would have alerted them to the fact that the health claims on the Products had not been evaluated by the FDA and that the Products are not intended to diagnose, treat, cure, or prevent any disease—curing any alleged deception.

Though the Complaint provides scant detail as to how, when, or where Plaintiffs viewed the labeling statements, it is clear from the face of the Complaint—as well as the Product photographs and Amazon.com display page images included in Amazon's Request for Judicial Notice—that the health claims on the Products' labels were accompanied by asterisks or other symbols that directed the consumer to a DSHEA disclaimer. For example, as reflected in *Table 1* below, the health statements that Plaintiff Medal[2] claims to have read/relied on are qualified by an asterisk or other symbol that directs consumers to a DSHEA disclaimer.

*Table 1*

| "Structure/Function" Claim | Label Image |
|---|---|
| "Nature's Nutrition Turmeric Curcumin claim[s] to support … "joint and heart health," and "brain function." (Compl. ¶ 12) | ✓ BIOPERINE® for Better Absor<br>✓ Joint and Heart Health Support*<br>✓ Supports Brain Health*<br><br>*See* RJN Ex. F2, p. 027; *see also* Compl. p. 23. |
| Doctor's Best Vitamin D-3 claiming to be "for healthy bones, teeth, heart, and immune support." (*Id.*) | HELPS SUPPORT IMMUNE, HEART AND BONE HEALTH*<br><br>*See* RJN Ex. G, p. 031. |

---

[2] Plaintiff Eric Li does not identify the specific label statements that he relied upon—another reason why the Complaint fails to satisfy Rule 9(b). However, the front label health claims on each of the Products purchased by Plaintiff Li are qualified by asterisks or other symbols that direct the consumer to a DSHEA disclaimer. *See* Amazon's Request for Judicial Notice ("RJN") Exs. A - E.

| | |
|---|---|
| Puritan's Pride Co-Q10 claiming to "support[] heart health[.]" (*Id.*) | Supports Heart Health* |
| | *See* RJN Ex. H, p. 035; *see also* Compl. p. 23. |
| Safrel Vitamin B-12 claiming to "support[] nervous system function," "promote[] energy[.]" (*Id.*) | Promotes Energy* Supports Nervous System Function* |
| | *See* RJN Ex. I, p. 039. |
| NOW Supplements claiming to support a "healthy intestine." (*Id.*)[3] | • For Occasional Diarrhea* Supports a Healthy Balance of Intestinal Flora* |
| | *See* RJN Ex. J, p. 042. |

As the Opposition admits, the front panels of the Products (which bear the challenged health claims) are "prominently feature[ed]" on Amazon.com display pages. Opp. at 13. As such, it is not plausible that Plaintiffs viewed the health claims on the Product label yet failed to notice the asterisks directing them to a DSHEA disclaimer. For the same reasons, Plaintiffs' reliance allegations are also implausible and thus fail to establish Article III or statutory standing for Plaintiffs' UCL, FAL, and CLRA claims. *See also* Amazon Mot. pp. 12-17.

    **2. Reasonable Consumers Would Not Ignore an Asterisk Accompanying a Health Claim.**

Plaintiffs' apparent failure to read or rely on the DSHEA disclaimers is not just implausible, but also unreasonable. Both the Ninth and Second Circuits hold that courts must consider the entire context of a challenged label in assessing whether a reasonable consumer might be deceived. *Moore v. Trader Joe's,* 4 F.4th 874, 884-85 (9th Cir. 2021) (additional labeling claims related to the challenged labeling claim must be considered when evaluating deception as a whole); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) ("idea that consumers purchase

---
[3] The phrase "healthy intestine" does not appear on the Product label or Amazon.com display page for this Product. However, similar claims on the label and display page are accompanied by asterisks directing consumers to a DSHEA disclaimer.

products based on certain of a label's statements or images [] but are blind to others [] in close proximity on that label strains credibility"); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) (reasonable consumers not misled where a "truth[ful]" clarifying statement is directly adjacent to allegedly misleading statement).

Relying on the label as a whole, courts regularly dismiss claims where clarifying language elsewhere on the label discredits plaintiff's theory of deception. *See, e.g.*, *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186 (N.D. Cal. 2021) (bleach product's back label clarifying statement that the product was "not for sanitization or disinfection" discredited plaintiffs' theory of deception); *Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020) (dismissing on "reasonable consumer" grounds where label contradicted theory of deception). This is especially so where the challenged claim has an asterisk or similar symbol leading to clarifying information. Courts routinely find that such symbols are used to indicate to consumers that "there is more than meets the eye," so consumers are expected to follow the symbol to obtain further details about the product. *Dinan v. SanDisk LLC*, 2020 WL 364277, at *8 (N.D. Cal. Jan 22, 2020); *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133 (S.D. Fla. 2021) (A "reasonable consumer would not be expected to ignore the asterisk and the information it leads to.").[4]

Furthermore, FDA regulations explicitly permit dietary supplement manufacturers to use symbols such as asterisks to direct consumers to a DSHEA disclaimer on the product label. 21 CFR 101.93(d) states: "The disclaimer shall be placed adjacent to the statement with no intervening material ***or linked to the statement with a symbol (e.g., an asterisk)*** at the end of each such statement that refers to the same symbol placed adjacent to the disclaimer specified in paragraphs (c)(1) or (c)(2) of this section." As detailed above, each of the challenged health statements is accompanied by an asterisk that directs consumers to a compliant DSHEA disclaimer, so no reasonable consumer could be misled by the properly disclaimed health claims.

**B.      Plaintiffs Do Not Plausibly Allege Actionable Conduct by Amazon.**

The gravamen of the Complaint is that various health claims on the Products led Plaintiffs

---

[4] The Court in *Arora v. GNC Holdings, Inc.*, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) did not analyze the asterisk issue because the court only had "fuzzy" label images and could not discern whether the health claims at issue were accompanied by asterisks. *See id.* at * 13.

to believe that the Products "harbored therapeutic value" or that the "claims were reviewed by and approved by the FDA"—in other words, that dietary supplements available over the counter at grocery stores nationwide and in this instance purchased online, where akin to prescription drugs—a misconception that a DSHEA disclaimer could apparently have corrected. Compl. ¶¶ 6, 13. As Amazon explained in its Motion, the law does not permit plaintiffs to advance consumer protection claims against uninvolved sellers who take no part in the underlying alleged deceptive conduct. *See* Amazon Mot. at 18-20 (Dkt. No. _). And, as Amazon further explained, the Complaint does not plausibly allege any facts to show that Amazon had any involvement in the marketing, labeling, or advertising of the Products. *See id.* at 20-21. The Opposition confirms that the underlying deceptive conduct at issue here—i.e., the Product health claims together with the lack of (or alleged non-compliance of) the DSHEA disclaimers—is controlled solely by the Product manufacturers. Case law confirms that Amazon can not be held liable for such third-party conduct.

### 1. Amazon Cannot Be Held Vicariously Liable for Challenged Label Statements Created and Controlled by Third Parties.

Plaintiffs assert that Amazon can be held liable under California's consumer protection laws for third-party label statements because Amazon "participates in, amplifies, and adopts" the challenged labeling claims. Opp. at 17. But the activity alleged by Plaintiffs is benign conduct common to virtually all online sellers/retailers, e.g., warehousing stock, displaying manufacturer advertising language on web display pages or banner ads, controlling orders, payments, and refunds, and shipping the products to consumers. Opp. at 17-18. None of this behavior rises to the level of "unbridled control" necessary for a retailer/seller to be held vicariously liable for a third-party's labeling statements.

Plaintiffs' reliance on the unpublished case *Dorfman v. NutraMax*, No. 13-cv-0873 WQH (RBB), 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) is misplaced. In *Dorfman*, the court found that Wal–Mart and Rite–Aid "participat[ed] in the unlawful practices" with "unbridled control over the practices," such that they may be subjected to liability under the UCL and CLRA." *Id.* at *14. Notably, however, the Plaintiff in *Dorfman* alleged that the retailers had "independently" made untrue representations regarding the products. *Id.* The Complaint here does not and cannot

plausibly make any allegation that Amazon independently crafted non-disclaimed health claims about the Products. In any event, in a subsequent published decision, the Southern District of California definitively resolved any ambiguity in the *Dorfman* opinion, holding: "To the extent that *Dorfman* can be read as holding that a retailer defendant who disseminates or repeats deceptive statements can be held liable under the UCL and CLRA for statements on product packaging that the retailer did not control, the Court disagrees with *Dorfman*." *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014). Rather, retailers that simply disseminate or repeat a third-party's allegedly deceptive statements "should not be deemed to have adopted all representations made by the manufacturer about the product." *Id.*

*Herron v. Best Buy Stores*, No. 12-cv-02103-GEB-JFM, 2013 WL 4432019 (E.D. Cal. Aug. 16, 2013)[5], another unpublished case, is similarly distinguishable. In *Herron*, Plaintiff sued Best Buy for displaying a claim that a certain Toshiba laptop had a battery life of "up to 3.32 hours." *Id.* at *1. Toshiba provided detailed information about the laptop's battery life, including the benchmark testing and machine configurations used to obtain this battery life assessment, to Best Buy and other retailers. *Id*. Best Buy then provided a description of the laptop battery life on its own website but *without* any explanation of how the "up to 3.32 hours" was calculated. *Id.* at *2. Plaintiff alleged that Best Buy's omission of this explanatory detail was a material omission. In other words, Best Buy directly participated in, and had unbridled control over, the misleading advertising conduct—i.e., omitting the explanation of how the battery life was calculated. In contrast, here, there is no plausible allegation that Amazon directly participated in or controlled the health claims or how/whether the DSHEA disclaimer appeared on the Products' labeling.

Plaintiffs also argue that Amazon is liable under the principles set forth in *In re Hydroxycut*

---

[5] Plaintiffs also cite *Herron* for the proposition that the "personal participation and unbridled control" limitation cannot be applied to Plaintiffs' CLRA claims. But numerous other courts have already done so. *See, e.g.*, *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1187 (N.D. Cal. 2016) (plaintiff failed to adequately allege that retailer personally participated in manufacturer's unlawful practices or unlawful advertising scheme, as required to state claims against retailer under UCL and CLRA); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 656 (S.D.Cal.2011) (same); *Yordy v. Plimus, Inc.*, No. C12–0229 THE, 2012 WL 2196128, at *5 (N.D.Cal. June 14, 2012); *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009) (same).

because "Amazon both adopted deceptive images of and claims for products and itself promoted the deceptive and illegal products and claims on its product pages and through banner ads.[]" Opp. 21 (relying on *In re Hydroxycut*, 299 F.R.D. at 656-57). However, the Complaint does not, and cannot plausibly, allege sufficient facts to support such a theory. A consistent line of cases hold that conclusory and speculative allegations regarding a party's supposed involvement in alleged false labeling or advertising—for a product that is admittedly labeled, manufactured, and sold by a different manufacturer defendant—is insufficient under *Iqbal / Twombly* to support any claim for relief. *See Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020 at *11 (S.D.N.Y. Jun. 8, 2020) ("Plaintiff's allegation that TGIF had control over the marketing of the chips—and thus, presumably, the snack chips' misleading labeling—is wholly conclusory."); *Hilsley v. General Mills, Inc.*, 376 F.Supp.3d 1043, 1051 (S.D. Cal. 2019) (rejecting as implausible unsupported allegations that defendant licensors or advertisers participated in the labeling decisions for a product marketed by co-defendant) ("Regardless of the theory of liability for any of the Advertiser or Licensor Defendants, Plaintiff's allegations are too bare and conclusory to be 'entitled to the assumption of truth.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *Parent v. MillerCoors, LLC*, 2016 WL 3348818, at *7-8 (S.D. Cal. Jun. 16, 2016) (dismissing as implausible claims made "without any support" that defendant directed the alleged misleading advertising of a third-party).

Plaintiffs' vague and unspecific claim that Amazon "participates in, amplifies, and adopts" the manufacturers' labeling statements is exactly the type of unsupported assertion that fails *Iqbal / Twombly*'s plausibility standards. Indeed, the theory that Amazon "participates in, amplifies, and adopts" the allegedly deceptive health claims appears only in Plaintiffs' Opposition; the Complaint contains no such allegations. Rather, the Complaint alleges only that "Amazon and its partners systematically omit and/or promote and sell Products lacking the mandatory disclaimers from Product labels[.]" Compl. ¶ 66. But this is just a conclusory allegation—made as part of a strained effort to include Amazon within a sphere of liability concerning conduct over which it has no involvement—that is not entitled to the presumption of truth.

The Complaint otherwise alleges that Amazon controls the formatting of Amazon.com

product detail pages and certain banner ads. Compl. ¶ 27. These allegations do not demonstrate "unbridled control" sufficient to state a claim. Further, the Complaint contains no allegations that the Plaintiffs actually viewed or relied on the banner ads or any of the other images attached to the Complaint (e.g., Compl. *Image 1* (Caritone banner ad); *Images 2-3* (Ayush Herbs display page); *Images 4-7* (Himalaya Organic Arjuna display page and banner ads); *Images 8-16* (products allegedly carrying an "FDA certification" including Diabetes Doctor 24 Hour Daily Support, Glucocil, Prevagen, Clean & Ultra Pure Immunity Boost))—many of which relate to products that the Plaintiffs **did not purchase**. Without a specific allegation that Plaintiffs viewed and relied on these banner ads or other "deceptive images" that Amazon allegedly controlled, Plaintiffs lack standing to pursue their claims. *See also* Amazon Mot. at 12-13 (Plaintiffs fail to adequately plead reliance and thus lack Article III and statutory standing). The Court is thus well within its discretion to dismiss the Complaint.

### 2. The DSHEA Disclaimers Displayed on Amazon.com Product Detail Pages are Compliant with FDA Regulations and Adequately Disclaim Any Product Health Claims.

As detailed in Section II(A)(2), each of the challenged health claims is accompanied by an asterisk that directs the consumer to a complaint DSHEA disclaimer on the Products' label. Because the Products' health claims are properly disclaimed per 21 CFR 101.93(d), there is no basis for Plaintiffs' argument that the Products are "inherently illegal." Opp. at 24. Furthermore, to the extent that Plaintiffs allege that Amazon had an independent duty to include a DSHEA disclaimer on the Products' detail pages, Amazon has done so. Plaintiffs' implication that the product detail page disclaimers are non-compliant, due to their placement or otherwise, is incorrect. 21 CFR 101.93(d) states that: "[I]n labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel *or page* where there such is a statement. The disclaimer shall be set off in a box where it is not adjacent to the statement in question." (emphasis added). The Amazon.com product detail pages are analogous to a catalog or pamphlet. Each Products' individual detail page is just that—a page. Plaintiffs' claim that each "scroll" of the mouse constitutes a separate "page" is not supported by law, and further fails to account for the fact that device type, monitor size, browser type, and screen display settings will result in wide variation in "scrolls" per page. *See*

Opp. 12 (asserting that six "scrolls" is equivalent to six pages). By including the DSHEA disclaimer on the product detail page, prominently labeling the disclaimer with the heading "**Important information**" in bold orange font and "**Legal Disclaimer**" in bold black font, and setting the disclaimer off in a box, Amazon has complied with the FDA's disclaimer regulations and cured any potential consumer confusion. S*ee also* Amazon Mot. at p. 15.

Even if the Products' labeling was not compliant with 21 CFR 101.93(d), that would not make the Products "inherently illegal" or "unlawful" under the UCL. *See, e.g., Pratt v. Whole Foods Market California, Inc.*, No. 5:12-cv-05652, 2015 WL 5770799 at *4 (N.D. Cal. Sep. 30, 2015) ("The court previously rejected the theory that a defendant's liability attaches under the UCL merely because its product label allegedly violates a law."). Indeed, if the Product labels carried a *defective* DSHEA disclaimer—as the Opposition appears to assert (e.g., Opp. at 11-14)—Plaintiffs must plausibly allege reliance on the defective disclaimer to sustain an unlawful UCL claim. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (rejecting the theory of "sale of 'illegal products'" when no reliance was shown); *Pratt v. Whole Foods Market Ca., Inc.*, No. 5:12-cv-05652-EJD, 2014 WL 1324288, at *8 (N.D. Cal. Mar. 13, 2014) (plaintiff must plead reliance and cannot assert an unlawful UCL claim merely because the product's label violates a law). Plaintiffs fail to adequately allege reliance here; the Complaint only alleges that the Product labels are unlawful because they omit the DSHEA disclaimers. As such, Plaintiff's unlawful UCL claim must fail. *See Arora v. GNC Holdings, Inc.*, 2019 WL 6050750 at *10 (N.D. Cal. Nov. 15, 2019) (alleging that a label is unlawful "merely because it omits the required FDA disclaimer" would be insufficient to plead reliance).

### C. California's Sherman Law Expressly Exempts Sellers/Distributors from Liability Where They Are Not Engaged in Packaging or Labeling the Products.

Plaintiffs assert that their UCL Unlawful Prong claim is predicated on Amazon's alleged violation of California's Sherman Law. Opp. at 15, *see also* Compl. at ¶¶ 140-141. As detailed above and in Amazon's Motion, however, the Products are not misleadingly labeled, misbranded, or falsely advertised. Even if the Products were misbranded, however, the Sherman Law contains an exemption for certain wholesale and retail distributors. The Sherman Act defines "misbranded"

foods at Health and Safety Code ("HSC") § 110680: "Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 [of the Sherman Act] (commencing with Section 110290)." In turn, HSC § 110385 makes it unlawful for any person to distribute any food that violates the packaging, labeling, and advertising rules and regulations. HSC § 110385 also ***expressly exempts***: "persons engaged in business as wholesale or retail distributors of foods, drugs, devices, or cosmetics, except to the extent that they are engaged in the packaging or labeling of the commodities or they prescribe or specify the manner in which the commodities are packaged or labeled."[6] As detailed in Amazon's Motion and above, the Complaint contains no allegations—beyond mere conclusions—that Amazon participated in, much less exercised "unbridled control," over the labeling, branding, advertising, or packaging of the Products. As such, Amazon is exactly the type of entity that is exempt from liability.

### D. Plaintiff's Remaining Cited Authority is Distinguishable.

#### 1. Product Liability Claims

Plaintiffs cite four cases in support of their common law negligent and strict product liability theories: *Lee v. Amazon.com, Inc.*, 76 Cal. App.5th 200, 254 (2022), *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020), *Loomis v. Amazon.com LLC*, 63 Cal. App. 5th 466 (2021), and *Diew v. Amazon.com LLC*, No. 21-cv-01462-LB, 2021 WL 2435265, at *5 (N.D. Cal. June 15, 2021). Each of these cases are distinguishable.

First, *Lee* involved an analysis of whether Amazon can be said to "expose" consumers to certain chemicals on California's Proposition 65 list when products containing those chemicals are sold in the Amazon online store. 76 Cal. App. 5th at 245-46. The court found that Amazon met the definition of "expose" under HSC § 25249.6 because Amazon was "pivotal in bringing the product to consumers." *Id.* at 254. The analysis in *Lee* was specific to the definition of "expose" under California's Proposition 65, however, and has no applicability to Plaintiffs' allegations here, nor to product liability claims generally.

---

[6] HSC § 110413 contains a similar exemption for publishers/broadcasters that disseminate false advertising created by other parties. While § 110413 does not exempt distributors/sellers as a general category (given that they may sometimes be involved in or control the false advertising), the intent is clearly to exempt those entities that merely publish content created by others—e.g., Amazon displaying representations that the manufacturers made about their own products.

Second, Plaintiffs argue, quoting *Bolger*, that anyone identifiable as "an integral part of the overall producing and marketing enterprise" is subject to strict liability for the "cost of injuries resulting from defective products," and Amazon is so strictly liable here for the allegedly misleading Product labels. Opp. at 19. *Bolger, Loomis,* and *Diew,* however, all involved plaintiffs that asserted product liability claims after suffering burns related to products purchased in the Amazon online store. 53 Cal. App. 5th at 437; 63 Cal. App. 5th at 471; 2021 WL 2435265 at *1. The courts in *Bolger, Loomis,* and *Diew* each held that Amazon's place within the chain of distribution of a product can render it strictly liable when product liability claims involving physical injuries are asserted. There are no such physical injury allegations here. What's more, Plaintiffs' allegations that the Products are "defective" are based entirely on the alleged lack of a DSHEA disclaimer. Given that the Products carry compliant disclaimers, there is no plausible basis for alleging that the Products are "defective."

Not only are the underlying claims in *Bolger, Loomis,* and *Diew* completely different from the mislabeling-based claims brought by Plaintiffs here, but the public policy considerations underlying strict products liability are inapplicable to "no injury" mislabeling claims. Courts extended strict liability for defective products to retailers to maximize protections for *physically injured* plaintiffs and to ensure that entities involved in the distribution of allegedly defective goods have an incentive to ensure that such products were not seriously dangerous. *Id*. at 447-48. Indeed, damages under strict products liability do not include damages for economic loss if there is no claim of personal injury. *See Jimenez v. Superior Ct*., 29 Cal. 4th 473, 482 (2002).[7]

These considerations are simply not relevant in product mislabeling cases, especially where the "harm" is only economic and/or entirely speculative. The policies underlying halting the distribution of defective products that can cause personal injuries are not implicated in labeling cases like the present lawsuit involving what is, at most, an alleged hyper-technical violation of

---

[7] Plaintiffs misunderstand Amazon's argument regarding the economic loss doctrine. Amazon cited *Jimenez* in its Motion and here for the proposition that Plaintiffs' **product liability claims** (Counts 1 - 3) must fail because Plaintiffs do not allege any personal injury or property damage. None of the cases cited by Plaintiffs on Opp. p. 23 are relevant to this argument. *Hannibal Pictures, Inc. v. Sonja Prods. Ltd. Liab. Co*., 432 F. App'x 700, 701 (9th Cir. 2011), *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979 (2004), and *In re JUUL Labs, Inc*., 497 F. Supp. 3d 552 (N.D. Cal. 2020) all involve tort claims—not product liability claims—and are thus inapplicable.

FDA labeling regulations. Indeed, Courts have discredited the notion that food labeling matters pose any public health concerns that could be analogized to the public policy concerns informing strict liability for defective products. *See Kane v. Chobani*, 2013 WL 3776172, at **9-10 (N.D. Cal. July 15, 2013) (denying preliminary injunction in food labeling case because of lack of proof of harm to consumers) ("[T]he Court is not persuaded that Defendant's [alleged misleading labeling] is likely to cause consumers to unintentionally consume excess sugar and to suffer irreparable health effects from the over-consumption of sugar."). Accepting Plaintiffs' arguments would open an immense floodgate of liability, permitting lawsuits against grocery stores for the packaging and labeling of the hundreds of thousands of products on their shelves, over which grocery stores generally have no control whatsoever. There is no legal authority to support such a dramatic expansion of liability, and no public benefit to be gained from doing so.

### 2. Implied Warranty

Plaintiffs have failed to adequately allege that the Products are misbranded or labeled deceptively. Accordingly, Plaintiffs have also failed to allege that the Products are "inherently illegal." Plaintiffs attempt to draw a distinction between their allegations of deceptive marketing versus "inherent illegality," but the Complaint makes clear that the Products' supposed "illegality" is premised entirely on their alleged lack of a DSHEA disclaimer. Because the DSHEA disclaimers are present and compliant, and because Plaintiffs' implied warranty claim does not allege any separate facts establishing that the Products are not merchantable, the implied warranty claim must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Amazon respectfully requests this Court dismiss Plaintiffs' Complaint with prejudice.

DATED: May 22, 2023

**PERKINS COIE LLP**

By: /s/ Jasmine W. Wetherell
    Charles C. Sipos
    Julie Hussey
    Jasmine W. Wetherell
    Ross E. Bautista

Attorneys for Defendant
AMAZON.COM SERVICES LLC