UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC LI, ANITA MEDAL, individually, and on behalf of all others similarly situated, | CASE NO. 2:23-cv-01975-JHC |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. | |
| AMAZON.COM SERVICES, LLC, | |
| Defendant. | |

# I

## INTRODUCTION

This matter comes before the Court on Defendant Amazon.com Services, LLC's Motion to Dismiss Plaintiffs' Complaint.  Dkt. # 18.

Plaintiffs Eric Li and Anita Medal bring this action individually and on behalf of a putative class of similarly situated individuals.  Dkt. # 1 at 2.  They allege that Amazon promoted, sold, and delivered dietary supplements that lacked mandatory Food and Drug Administration (FDA) disclaimers in violation of California law, resulting in the deceptive and unlawful sale of goods to consumers.  *Id.* at 2 ¶¶ 1–3.  Plaintiffs bring eight causes of action under California law.  *Id.* at 30–41 ¶¶ 98–171.  Amazon seeks dismissal, contending that

Plaintiffs lack standing and that the Complaint fails to state a claim upon which relief can be granted.[1]  For the reasons below, the Court GRANTS in part and DENIES in part the motion. And the Court GRANTS Plaintiffs leave to file an amended complaint.

II

**BACKGROUND**

The factual background in this section derives from Plaintiffs' allegations in the Complaint, *see* Dkt. # 1, which the Court accepts as true for a Rule 12(b)(6) motion to dismiss.[2]

Amazon operates an e-commerce marketplace and lists various products online for consumers to purchase, including dietary supplements.  Dkt. # 1 at 5 ¶ 23.  In 2020, Li bought on Amazon various "illegal drugs masquerading as therapeutic dietary supplements[,]" including Nature's Bounty Omega-3 Fish Oil, 5-HTP Capsules – Extra Strength Serotonin Support, Nature Made Magnesium Oxide Tablets, Doctor's Best Alpha-Lipoic [*sic*] Acid Caps, and Nutricost Acetyl L-Carnitine 180 Capsules.  Dkt. #1 at 2 ¶ 5.  Between 2019 and 2022, Medal purchased dietary supplements on Amazon, including Nature's Nutrition Turmeric Curcumin, Doctor's Best Vitamin D-3, Puritan's Pride Co-Q10, Safrel Vitamin B-12, and NOW Supplements.  *Id.* at 3 ¶ 12.  Plaintiffs saw the representations on the "product labels and otherwise" on Amazon's site and believed "that the [p]roducts harbored therapeutic value, and/or they and the marketing claims were reviewed and approved by the FDA."  Dkt. # 1 at 3–4 ¶¶ 6, 13.  Plaintiffs relied on "Amazon's stature, representations, and reputation," its marketing of the dietary supplements, and the "[p]roduct labels and its omissions from the same" when choosing to buy the dietary

---

[1] Amazon also seeks judicial notice and incorporation by reference regarding Exhibits A–AA, *see* Dkt. ## 19–19-4, Dkt. # 19 at 2–5, and Plaintiffs seek judicial notice of Exhibits A–J, *see* Dkt. ## 26, 25-1–25-11.  Neither side opposes the requests for judicial notice and incorporation by reference.  *See generally* Docket.  And the Court grants the requests, which appear sound.

[2] But the Court does not accept Plaintiffs' allegations as true for a factual attack under Rule 12(b)(1), which Amazon also brings in its Motion.

supplements. *Id*. at 3–4 ¶¶ 7, 14. They also "purchased more of, and/or paid more for, the [p]roducts" than they would have "had [they] known the truth about the [p]roducts." *Id*. at 3–4 ¶¶ 8, 15. As a result, Plaintiffs "lost money" because of Amazon's conduct and were "exposed to risk of serious bodily injury." *Id*. at 3–4 ¶¶ 9, 16.

In its online marketplace, Amazon "systematically . . .promote[s] and sell[s]" dietary supplements that "lack[] . . .mandatory disclaimers from [p]roduct labels." Dkt. # 1 at 14 ¶ 66. Many dietary supplements in Amazon's marketplace claim to "treat, cure, or prevent various diseases and viruses including . . . diabetes, high blood pressure, Alzheimer, arthritis, depression, prostate cancer, and others," when these products have not been "scientifically established as safe or efficacious under the established protocol for drugs, nor are they subject to FDA review and approval." *Id*. at 14–15 ¶ 67. For example, below is an image of the product page on Amazon's site for Doctor's Best Vitamin D3:



Dkt. # 19-3, Ex. Q at 28. Plaintiffs cite—as an example of a company that "lawfully label[s] their supplement by . . . not making structure function claims about efficacy or for any health or

1    bodily function"—Safeway's product page for the "Signature Care" melatonin dietary

2    supplement, an image of which is below:



10   Dkt # 1 at 26 ¶ 75 (Image 27).  Plaintiffs also identify Target's product page for "Up & Up"

11   coenzyme Q10 dietary supplements as "properly providing the required disclaimer below each

12   structure function representation."  *Id.* at 26–27 ¶ 75 (Image 28).  Below is an image of the page:



20          Amazon enters into agreements with partner merchants that allow these merchants to

21   participate in and place products on Amazon's marketplace.  Dkt. # 1 at 5 ¶ 24–25.  Merchants

22   can participate in Amazon's "Fulfilled by Amazon" (FBA) program, in which Amazon provides

23   services including stocking, maintaining, and storing products at Amazon fulfillment centers;

24   sorting and shipping; and 24/7 customer support for consumers of the products.  *Id.* at 5–6 ¶ 26.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 4

Most of Amazon's sales go through the FBA program. *Id.* at 5 ¶ 25.  Amazon and its partner merchants also enter into a "Business Solutions Agreement," which gives Amazon control over product listings in its online marketplace, communications with consumers about the product, and processing of payments and fees for sale of the product, including Amazon's service fee. *Id.* at 6 ¶ 27.  Amazon also operates an "Industry-Leading Safety and Compliance Program," which allows Amazon to "ban or delist products" in the marketplace that are "unlawful and/or dangerous." *Id.* at 6–7 ¶ 29.

On January 31, 2023, Plaintiffs filed this action, individually and on behalf of a putative class of similarly situated individuals, in the United States District Court for the Northern District of California.  Dkt. # 1.  Plaintiffs bring eight causes of action: (1) "negligent product liability"; (2) strict product liability – design and manufacturing defect; (3) strict product liability – failure to warn of defective condition; (4) breach of implied warranty under California Commercial Code § 2314; (5) unlawful conduct in violation of California's Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq*.; (6) unfair and fraudulent conduct in violation of  the UCL, California Business and Professions Code § 17200, *et seq*.; (7) violation of California's Consumer Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.; and (8) violation of California's False Advertising Law (FAL), California Business and Professions Code § 17500, *et seq*. *Id.*

On April 10, 2023, Amazon moved to transfer venue.  Dkt. # 17.  The Northern District of California granted the motion on December 18, 2023, and transferred the case to this District. Dkt. # 43.  Amazon moves to dismiss, contending that Plaintiffs lack standing and that the Complaint fails to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6); Dkt. ## 18, 31.

1

2

### III

#### DISCUSSION

A.    Whether Plaintiffs Establish Standing

Amazon says that Plaintiffs lack Article III and statutory standing for two reasons: (1) Plaintiffs' "[r]eliance [a]llegations are . . . [i]mplausible" because the product details pages and labels "demonstrate that all of the [p]roducts purchased by Plaintiffs were sold with at least one clear and prominent DSHEA disclaimer[,]" and (2) "Plaintiffs [f]ail to [a]dequately [p]lead [r]eliance on an [a]lleged [m]isrepresentation." Dkt. # 18 at 13–15. For the reasons below, the Court rejects these arguments and concludes that Plaintiffs have established Article III and statutory standing.

1.    Article III Standing

Article III standing requires that a plaintiff (1) "suffered an injury in fact[,]" (2) that there was a "causal connection between the injury and the conduct complained of[,]" and (3) the injury is likely "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). At the pleading stage, a plaintiff shows Article III standing when they allege "specific facts plausibly explaining" the establishment of the standing requirements. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011); *see also Mansor v. U.S. Citizenship & Immigr. Servs.*, 685 F. Supp. 3d 1000, 1008 (W.D. Wash. 2023).

"A quintessential injury-in-fact" occurs when "plaintiffs spen[d] money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (reasoning that plaintiffs showed an injury-in-fact when they claimed that defendants' actions caused them to pay more for their homes than what their homes were worth at the time of sale). When a plaintiff states that they "would not have purchased the product at the price [they] paid" if not for the inaccurate labeling of the product, this is enough to allege

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 6

price injury.  *Mack v. Amazon.com, Inc.*, No. C22-1310-JCC, 2023 WL 2538706, at *2 (W.D. Wash. Mar. 16, 2023) (alteration in original); *see also Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1277 (W.D. Wash. 2020) (highlighting that "[e]conomic injury under the 'benefit of the bargain' theory is widely recognized to confer standing when adequately alleged") (citations omitted).

2.      Statutory Standing

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice" and the FAL prohibits "unfair, deceptive, untrue or misleading advertising[.]"  Cal. Bus. & Prof. Code § 17200; *see also* Cal. Bus. & Prof. Code § 17500.  The CLRA prohibits "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770 (listing various acts or practices prohibited under the statute).

When a plaintiff brings claims under the UCL, CLRA, or FAL, they must show standing under each statute.  *See Veera v. Banana Republic, LLC*, 211 Cal. Rptr. 3d 769, 775-76 (Cal. Ct. App. 2016).  To establish statutory standing under the UCL and FAL a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Veera*, 211 Cal. Rptr. 3d at 776 (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 884-85 (Cal. 2011) (emphasis in original); *see also Hansen v. Newegg.com Ams., Inc.*, 236 Cal. Rptr. 3d 61, 74-75 (Cal. Ct. App. 2018) ("The [California] Supreme Court has concluded that to establish standing under California's UCL and FAL, a consumer need only allege that [they] relied on a misrepresentation when purchasing the product, and that [they] would not have purchased the

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 7

product but for the representation."); *see also In re Tobacco Cases II*, 207 P.3d 20, 29 n.8 (Cal. 2009) ("A violation of the UCL's fraud prong is also a violation of the [FAL].").

The UCL requires plaintiffs to show actual reliance when their claims are based on alleged misrepresentations.  *See Moran v. Prime Healthcare Mgmt.*, 208 Cal. Rptr. 3d 303, 312 ("To satisfy the causation element under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, a plaintiff must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury.") (internal quotations and citations omitted); *see also In re Tobacco Cases II*, 207 P.3d at 38–39 (reasoning that the phrase "as a result of" in the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong") (internal quotation omitted).  Likewise, the FAL requires actual reliance.  *See Kane v. Chobani*, No. 12-CV-024250LHK, 2013 WL 5289253, at *5 (N.D. Cal. Sept. 19, 2013).

The standing requirements of the CLRA are "essentially identical" to the requirements under the UCL and FAL.  *Veera*, 211 Cal. Rptr. 3d at 776; *see also Kane*, 2013 WL 5289253, at *5 (stating that to have standing under the CLRA "a plaintiff must allege that [they] relied on the defendant's alleged misrepresentation and that [they] suffered economic injury as a result") (citing *Durell v. Sharp Healthcare*, 108 Cal.Rptr.3d 682, 697 (Cal. Ct. App. 2010)).  But under the CLRA, "[a]ny consumer who suffers *any damage* as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person."  Cal. Civ. Code § 1780 (emphasis added); *see also Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299 (Cal. 2009) ("The statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result.").  Thus, under the CLRA, a plaintiff need not show "injury or property [loss]" specifically but must show some type of "damage and causation."  *Veera*, 211 Cal. Rptr.

3d at 776 n.3; *see also Moran*, 208 Cal. Rptr. 3d at 319 ("[P]laintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.") (second alteration in original).

Plaintiffs allege that Amazon violated (1) the "unlawful" conduct prong of California's UCL, (2) the "unfair" and "fraudulent" conduct prong of California's UCL, (3) California's CLRA, and (4) California's FAL.  Dkt. # 1 at 36–41 ¶¶ 136–171 (Causes of Action 5–8). Because Plaintiffs' "unlawful" and "unfair" conduct prong claims under the UCL are based on alleged omissions and misrepresentations, Dkt. # 1 at 36–39 ¶¶ 136–157, the actual reliance requirement applies to those claims.  *See Moran*, 208 Cal. Rptr. 3d at 312.  Thus, for the UCL, FAL, and CLRA claims, Plaintiffs must establish that they (1) relied on the defendant's alleged misrepresentation or omission and (2) consequently suffered an economic injury.  *Veera*, 211 Cal. Rptr. 3d 769 at 775-76; *see also Kane* 2013 WL 5289253, at *5; *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012).

   3. Standing Analysis

     a. Dietary Supplement Health and Education Act (DSHEA) Disclaimer

As mentioned above, Amazon asserts that Plaintiffs cannot "*plausibly* allege that Amazon misled or deceived them because every [p]roduct was sold with a DSHEA disclaimer on the product detail page."  Dkt. # 18 at 14 (emphasis in original).  Amazon contends that Plaintiffs' reliance allegations are "[i]mplausible" because Amazon sold Plaintiffs products with "at least one clear and prominent DSHEA disclaimer."  *Id.* at 15.  As discussed below, the Court disagrees.

California's Sherman Food, Drug, and Cosmetic Law (Sherman Law), California Health & Safety Code § 109875 *et seq.*, expressly adopts federal labeling requirements.  *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those

regulations adopted pursuant to the federal act, […] shall be the food labeling regulations of this state"); *see also* Dkt. # 1 at 11 ¶ 52.  Plaintiffs' claim for "unlawful" conduct under the UCL is based on Amazon's purported violations of the Sherman Law.  *See* Dkt. # 1 at 36–38, ¶¶ 136–147.  Plaintiffs contend that the dietary supplements sold on Defendant's marketplace contained "structure function claims" (Dkt. # 1 at 26 ¶ 75)—i.e., claims that the product is "intended to affect the structure or function" of the body.  *See* 21 U.S.C. § 343(r)(6).  Under federal law, if a dietary supplement includes a statement that "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient," it must also include a DSHEA disclaimer.  21 U.S.C. § 343 (r)(6)(A)–(C); *see also* Dkt. # 1 at 9 ¶¶ 40–42.  The disclaimer must be "prominently displayed and in boldface type" and include the following text: "'This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.'"  21 U.S.C. § 343 (r)(6)(C); *see also* 21 C.F.R. § 101.93 (c), Dkt.  # 1 at 9 ¶ 43.  The disclaimer must also "be placed adjacent to the statement with no intervening material or linked to the statement with a symbol (e.g., an asterisk) at the end of each such statement that refers to the same symbol placed adjacent to the disclaimer[.]"  21 C.F.R. § 101.93(d); Dkt. # 1 at 10 ¶¶ 44–46.  Also, "[o]n product labels . . . the disclaimer shall appear on each panel or page where there such is a statement.  The disclaimer shall be set off in a box where it is not adjacent to the statement in question."  21 C.F.R. § 101.93(d); Dkt. # 1 at 10 ¶ 44–45.  Plaintiffs assert that "to be legally compliant, the disclaimer must: (1) appear 'on *each* panel or page' of a supplement *label or package* that bears a health-related claim; and (2) be 'prominent.'"  Dkt. # 1 at 10 ¶ 44 (citing 21 C.F.R. § 101.93(d)) (emphasis in original).

1

2   Amazon contends that the product labels and product details pages, including the product

images on those details pages,[3] include the DSHEA disclaimer in a box titled, "Important

3   information" in "bold orange font."  Dkt. # 18 at 15–16.  It also says that "the product detail[s]

4   pages for multiple [p]roducts include images showing an actual product label with the prominent

5   DSHEA disclaimer."  *Id*.  For those products, the structure function claim on the front label of

6   the product is followed by an asterisk that directs a consumer to a DSHEA disclaimer on the

7   back label.  *Id.* at 16.  Thus, Amazon contends, Plaintiffs lack standing because each product

8   includes the DSHEA disclaimer on either the product details page or, in addition, on the product

9   itself.  *Id.* at 15–16.

10      Plaintiffs counter that, apart from Amazon's violation of federal labelling requirements,

11  "Given that the products . . . omit disclaimers on their *front panels*—primary display panels that

12  carry health claims—and have not gone through any FDA pre-market review . . ., Plaintiffs

13  plausibly allege that Amazon deceptively sold illegal drugs to plaintiffs."  Dkt. # 25 at 18 (citing

14  Dkt. # 1 at 8–11 ¶¶ 38–53) (emphasis added).  They contend that "[b]urying a disclaimer

15  multiple scrolls down on Amazon's product page, and/or amongst a multitude of voluntary

16  claims and images (which dominate through placement, size, color, contrast), cannot as a matter

17  of law redress illegality, nor can it redress the deception and fraud."  *Id.*  Plaintiffs say that the

18  "point of the requirement for proximity and prominence of disclaimers is to ensure that

19  consumers actually see and read them in order to be alerted that the products are not therapeutic

20

21

22
_____
[3] While the product labels (Exhibits A–J) and product details pages (Exhibits K–T) introduced by
23  Amazon include all products named by Plaintiffs in the Complaint, the exhibits that include pictures of
the products from the details pages (Exhibits U–AA), do not include images of (1) Nature's Bounty
24  Omega-3 Fish Oil; (2) 5-HTP Capsules – Extra Strength Serotonin Support; (3) Nature's Nutrition
Turmeric Curcumin 1950 and 2600.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 11

and thereby avoid deception." *Id.* And they allege that they were misled because the disclaimers were not prominent. *See* Dkt. # 1 at 9, 28 ¶¶ 42, 83.

None of the materials introduced by Amazon refute Plaintiffs' contention that the products omit disclaimers on the primary panels that carry the structure function claim. For example, no image submitted shows a product that includes the required disclaimer on the same panels that carry the structure function claims. For instance, as listed on the Safrel Vitamin B-12 product page on Amazon, the supplement purportedly "Provides Energy, Metabolism and Nervous System Health Support." Dkt. # 19-3, Ex. S at 51. There is no corresponding DSHEA disclaimer. Below is an image of the Amazon display page for Safrel Vitamin B-12:



Dkt. # 19-3, Ex. S at 51.

The Court agrees with Plaintiffs on this issue. Plaintiffs plausibly allege that they were misled when purchasing the dietary supplements on Amazon.

   b.  Reliance on an Alleged Misrepresentation

Amazon contends that the Complaint contains only "conclusory statements" that Plaintiffs "relied on any representations made by Amazon" when purchasing the dietary supplements. Dkt. # 18 at 14. Amazon says that Plaintiffs do not plausibly allege that "Amazon made or had control over" the product's health-related claims. *Id.* at 13–14.

Plaintiffs allege that they viewed the product labels and believed that the products "harbored therapeutic value." Dkt. # 1 at 3–4 ¶¶ 6, 13.[4] Plaintiffs contend that they believed that "the Products were lawful and legally inserted into interstate commerce" and they "relied on Amazon's stature, representations, and reputation, as well as the marketing and Product labels and its omissions from the same, and [were] misled thereby." *Id.* at 2–4 ¶¶ 2, 6, 13 ("Directly, under the [FBA] program, and otherwise, Amazon promoted, placed into the stream of commerce, sold and delivered to Plaintiffs, products purporting to be legal, safe, and therapeutic dietary supplements when the opposite was true: the products were defective drugs—illegal and unapproved by the FDA—that injured Plaintiffs monetarily[.]"). Plaintiffs also allege that they "purchased more of, and/or paid more for, the Products" than they would have had they known "the truth about the Products." *Id.* at 3–4; 28 ¶¶ 8, 15, 83 ("If Plaintiffs had known that the [p]roducts were illegal drugs . . . and/or that the FDA had not conducted a review . . .but instead mandated that a disclaimer as to lack of therapeutic efficacy appear prominently on the label, they would not have purchased [p]roducts and been injured thereby economically[.]").

Plaintiffs' pleaded reliance resembles allegations the court found sufficient in *Arora v. GNC Holdings*, No. 19-cv-02414-LB, 2019 WL 6050750, at *1 (N.D. Cal. Nov. 15, 2019), although the defendant there did not operate an online marketplace. There, the plaintiffs bought

---

[4] The allegations include the following: "Mr. Li purchased a multitude of illegal drugs masquerading as therapeutic dietary supplements from Amazon.com—directly, pursuant to its FBA program, or otherwise—including but not limited to: Nature's Bounty Omega-3 fish Oil; 5-HTP Capsules – Extra Strength Serotonin Support; Nature Made Magnesium Oxide Tablets; Doctor's Best Alpha-Lipoic [*sic*] Acid Caps, and Nutricost Acetyl L-Carnitine 180 Capsules." Dkt # 1 at 2, 24 (images 21-22). "Ms. Medal purchased a multitude of illegal drugs masquerading as therapeutic dietary supplements from Amazon.com—directly, pursuant to its FBA program, or otherwise—including but not limited to: Nature's Nutrition Turmeric Curcumin claiming to be 'tested and proven,' to support 'joint and heart health,' and 'brain function'; Doctor's Best Vitamin D-3 claiming to be 'for healthy bones, teeth, heart, and immune support'; Puritan's Pride Co-Q10 claiming to 'support[] heart health,' 'replenish what is lost with age or what statin medications deplete'; Safrel Vitamin B-12 claiming to 'support[] nervous system function,' 'promote[] energy'; and NOW Supplements claiming to support a 'healthy intestine.'" Dkt. # 1 at 3–4.

GNC dietary supplements and then individually, and on behalf of a putative class of similarly situated individuals, including a class of California consumers, "sued GNC Holdings, claiming that labels describing the supplements' functions . . .. were unlawful because they did not include a disclaimer that is required under the Federal Food, Drug, and Cosmetics Act ("FFDCA" or "Act), 21 U.S.C. § 301 *et seq.*, and the regulations implementing the Act." *Id*. at *1.  The plaintiffs brought several state-law claims, including (1) unlawful conduct under the CLRA and FAL in violation of the UCL, (2) unfair and fraudulent conduct under the UCL, (3) false advertising in violation of the FAL, and (4) deceptive practices in violation of the CLRA.  *Id*.  In ruling on the defendant's motion to dismiss, the court addressed whether the plaintiffs had adequately pleaded reliance for standing purposes.  *Id.* at *8–10.  The court determined the allegations to suffice because they said that "[the plaintiffs] read the labels, believed the claims (about the therapeutic value for the prevention and treatment of the specific diseases. . .) . . ., paid more for the supplements than they would have (had they known the "truth about the products"), and lost money by paying more." *Id.* at *8.  The court also reasoned, "Key to [plaintiffs'] theory of prosecution is that the lack of the required disclaimer mattered, given the claims of therapeutic value. . . . In cases involving allegedly unlawful labels, courts hold that similar allegations sufficiently allege reliance that conveys UCL standing." *Id.* at *8–9 (citing *Ogden v. Bumble Bee Foods LLC*, No. 5:12-cv-02828-LHKm, 2014 WL 27527, at *2, (N.D. Cal. Jan. 2, 2014)); *see, e.g.*, *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *4 (N.D. Cal. Mar. 14, 2017) (holding that because the plaintiff "allege[d] that he purchased . . . products that he would not have otherwise purchased had they not been mislabeled" and because he "attributes the mislabeling to [the defendant]" he adequately pled injury-in-fact and causation for Article III standing).

1    The cases cited by Amazon are distinguishable.  For example, in *Wilson v. Frito-Lay N.*

2    *Am., Inc.*, 260 F. Supp. 3d 1202 (N.D. Cal. 2017), the court granted summary judgment for the

3    defendant because it determined that the plaintiff "admitted at his deposition that he 'didn't

4    notice' any label statements" on the product labels and thus his purchase of the products was not

5    in reliance on any alleged misrepresentative label statement.  *Id.* at 1209.  Similarly, in *In re*

6    *iPhone Litigation*, 6 F. Supp. 3d 1004 (N.D. Cal. 2013), the court also granted summary

7    judgment for the defendant because it reasoned that the plaintiffs did not have Article III or

8    statutory standing because they did not "present[] evidence that [they] even saw, let alone read

9    and relied upon, the alleged misrepresentations contained in the [challenged policies], either

10   prior to purchasing [their] [product], or at any time thereafter."  *Id.* at 1018.  In *Hall v. Sea World*

11   *Entertainment*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23,

12   2015), the court granted defendant's motion to dismiss for lack of standing because "the

13   complaint d[id] not allege that the named plaintiffs actually saw or read any advertising or

14   statements" by defendant nor that "any of the named plaintiffs saw and relied" on challenged

15   statements.  *Id.* at *5.

16       Plaintiffs allege that (1) they viewed the product labels and believed that they "harbored

17   therapeutic value[,]" (Dkt. # 1 at 3–4 ¶¶ 6, 13); (2) that they believed "the [p]roducts were lawful

18   and legally inserted into interstate commerce" (*id.*); (3) they "relied on Amazon's stature,

19   representations, and reputation, as well as the marketing and [p]roduct labels and its omissions

20   from the same, and [were] misled thereby[,]" (*id.* at 3–4 ¶¶ 7, 14); (4) and that they "purchased

21   more of, and/or paid more for, the [p]roducts" than they would have had they known "the truth

22   about the [p]roducts[,]"  (*id.* at 3–4 ¶¶ 8, 15; 28 ¶ 83).  Amazon's product pages for the dietary

23   supplements state, in bold black text, structure function claims about the products.  *See e.g.*, Dkt.

24   # 19-3, Ex. P1 at 2 (saying Nature's Turmeric Curcumin provides "Natural Joint Support"); Dkt

# 19-3, Ex. Q at 28 (saying Doctor's Best Vitamin D3 is "for Healthy Bones, Teeth, Heart and Immune Support"); Dkt # 19-3. Ex. R at 39 (saying Puritan's Pride CoQ10 "Supports Heart Health").  Plaintiffs claim that these statements on Amazon's product pages lacked prominent disclaimers and that they were thus misled.  *See* Dkt. # 1 at 3–4, 28 ¶¶ 6, 14, 83, Dkt. # 25 at 17–20; *see also* sections III.B.3.b and c (regarding Amazon's alleged involvement in and control over the allegedly unlawful conduct).  Thus, the Court concludes that Plaintiffs have adequately pleaded reliance on alleged misrepresentations.

For these reasons, the Court concludes that Plaintiffs have adequately established Article III and statutory standing.

B.      Whether the Complaint Fails to State Claims

1.      Rule 12(b)(6) Standards

A defendant may move to dismiss a claim under Rule 12(b)(6) when a pleading fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  This may occur when there is "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  When considering a motion to dismiss under Rule 12(b)(6), courts construe the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78.  But when reviewing a Rule 12(b)(6) motion, a court "need not accept as true . . . allegations that

contradict facts that may be judicially noticed by the court[.]"  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

2.      Particularity under Rule 9(b)

Amazon challenges Plaintiffs' claims on Rule 9(b) grounds.  When alleging "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  The allegations need to "'be specific enough to give defendants notice of the particular misconduct.'" *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1059 (W.D. Wash. 2020) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  Rule 9(b) applies in federal cases "'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'"  *Kearns*, 567 F.3d at 1125 (holding that Rule 9(b) applies to claims brought under California consumer protection statutes) (quoting *Vess*, 317 F.3d at 1102).

Amazon contends that Plaintiffs' fraud-based claims—i.e., their UCL, FAL, CLRA, and implied warranty claims—fail because they are not pleaded with particularity.  Dkt. # 18 at 20– 21.  Amazon argues that the Complaint does not include "***any*** of the 'who, what, when, where, and how' of fraud" and, because the statements Plaintiffs cite derive from third-party labels and manufacturing materials, Plaintiffs "cannot plausibly allege that any such statements are created or controlled by Amazon."  *Id*. at 21 (emphasis in original).  Amazon asserts that even though the Complaint "vaguely reference[s] certain statements made by Amazon[,]" Plaintiffs do not

"specifically allege that they read or relied on those statements in making their purchasing decisions." *Id.*

Plaintiffs counter that they have alleged (1) when and how they bought the dietary supplements, (2) the labels and statements they read and relied on, and how omissions from the labels affected them, (3) ways that Amazon participated in the "marketing, omissions [,] and other deceptions[,]" (4) that they would not have purchased the dietary supplements or would have paid less for them had they known the truth, and (5) they were thereby injured. Dkt. # 25 at 28 (internal citations omitted). Plaintiffs also say they have "pleaded adequately that they were deceived" and that they would have evaluated the product's therapeutic claims differently "if the label[s] and product page[s] had the required [DSHEA] disclaimer." *Id.* (internal citations and alterations omitted).

In the Complaint, Plaintiffs provide the names of the dietary supplements they bought, when they bought them on Amazon, and allege that they "believed the representations, on product labels and otherwise, that the products harbored therapeutic value, and/or that they and the marketing claims were reviewed by and approved by the FDA." Dkt. # 1 at 2–4, ¶¶ 5–6, 12–13. *See e.g.*, Dkt. # 1 at 3 ¶ 12 (stating that Plaintiff Medal believed representations for Nature's Nutrition Turmeric Curcumin that it was "tested and proven," to support "joint and heart health," and "brain function" and Doctor's Best Vitamin D-3 provided support "for healthy bones, teeth, heart, and immune support"). Plaintiffs allege that Amazon "systematically . . . promotes[s] and sell[s]" dietary supplements that lack "mandatory disclaimers" on their product labels. *Id.* at 14 ¶ 66. Similarly, Plaintiffs contend that Amazon's "labeling and advertising protocol" for dietary supplements sold in its Marketplace are deceptive because the products "systematically lack label and package requisite disclaimers despite lack of government review and approval with respect to their efficacy and safety." *Id.* at 17 ¶ 72.

1   Plaintiffs have provided enough detail about the allegedly unlawful or deceptive practices

2   to provide Amazon with notice about the conduct to enable Amazon to properly defend itself

3   against the allegations.  *See e.g.*, *Nemykina*, 461 F. Supp. 3d at 1060 (reasoning that the

4   plaintiff's allegations that the products were not worth the inflated price included in the

5   advertised "original list price" provided the defendant with enough detail "at th[e] early stage of

6   the proceedings" about the purportedly unfair or deceptive practice).  Thus, Plaintiffs have met

7   the particularity requirements under Rule 9(b).

8         3.     California Consumer Claims Under the UCL, FAL, and CLRA

9             a.     The "Reasonable Consumer" Standard

10   Amazon contends that Plaintiffs' claims fail to meet the "reasonable consumer" standard.

11   Claims under California's UCL, FAL, and CLRA are generally evaluated under this standard.[5]

12   *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (citing *Williams v.*

13   *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Lavie v. Procter & Gamble Co.*,

14   129 Cal. Rptr. 2d 486, 500 (Cal. Ct. App. 2003) ("The trial court did not err in assessing UCL

15   and unfair advertising claims using a reasonable consumer standard.").  The standard requires "a

16   plaintiff to 'show that members of the public are likely to be deceived' by the defendant's

17   marketing claims."  *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024)

18   (quoting *Williams*, 552 F.3d at 938).  It also requires more than the "mere possibility" that the

19   product label could "'conceivably be misunderstood by some few consumers viewing it in an

20   unreasonable manner.'"  *Whiteside*, 108 F.4th at 777 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958,

21   

22        [5] Claims brought under the UCL's unlawful conduct prong are treated as "independently actionable under the UCL."  *Bruton v. Gerber Prods. Co.*, 703 Fed.App'x. 468, 471 (9th Cir. 2017) (citing *Wang v. Massey Chevrolet*, 118 Cal. Rptr. 2d 770, 780 (Cal. Ct. App. 2002)).  Claims that are brought under this prong are subject to the "reasonable consumer" standard only when it is an "element of the predicate violation."  *Id.* at 472.  Thus, the Court agrees with Plaintiffs that the reasonable consumer standard does not apply to their UCL unlawful conduct claim, which is based on violations of the Sherman Law.  *See* Dkt. # 1 at 37–38 ¶¶ 140–41, Dkt. # 25 at 20–21.

965 (9th Cir. 2016) (citations omitted)).  Instead, the standard requires a showing that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 777–78 (quoting *Ebner*, 838 F.3d at 965).

California courts have observed that generally, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Whiteside*, 108 F.4th at 778 (quoting *Williams*, 552 F.3d at 938–39) (alteration in original). Granted, sometimes, "a court can properly make this determination and resolve claims based on its review of the product packaging." *Augustine v. Talking Rain Beverage Co.*, 386 F. Supp. 3d 1317, 1328 (S.D. Cal 2019) (quoting *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019)).  Dismissal at the pleading stage is appropriate only when "it [is] *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939 (emphasis added).

Amazon contends that Plaintiffs have failed to state claims under the UCL, FAL, and CLRA because they failed to "plausibly allege" that a reasonable consumer would believe that the dietary supplements had "therapeutic value" or had received FDA approval.  Dkt. # 18 at 17–18.  Amazon asserts that a DSHEA disclaimer appears on the "Display Page" for each dietary supplement under the "Important information" section.  *Id*. at 17.  It also argues that the "[p]roduct photographs" and "Amazon.com display page images" for some of the dietary supplements show that the health claims on the front label were "accompanied by asterisks or other symbols that directed the consumer to a DSHEA disclaimer."  Dkt. # 31 at 8.  Amazon contends that it is "implausible" and "unreasonable" for a consumer to ignore the asterisk.  *Id*. at 8–9.  Thus, to some extent, Amazon's argument overlaps with its argument on standing.

Plaintiffs say that they are alleging "Amazon omitted . . .disclaimers" from display panels that carry health-related claims and, as a result, Plaintiffs did not read "disclaimers in

conjunction with reading the effusive health claims, which led to their belief in the products' therapeutic value and safety." Dkt. # 25 at 21.  They say that the Complaint contains many allegations about the ways Amazon "deceived Plaintiffs" about the dietary supplements' "non-therapeutic nature and safety issues." *Id.* at 22.  And they note that the reasonableness of consumer behavior is "ill-suited for a determination on a motion to dismiss." *Id.*

Cases cited by Amazon to support its contention that Plaintiffs have not met the reasonable consumer standard are distinguishable.  For example, in *Painter v. Blue Diamond Growers*, 757 Fed. App'x 517 (9th Cir. 2018), the court reasoned that the plaintiff did not plausibly allege that a reasonable consumer would believe that the defendant's almond milk products were "nutritionally equivalent to dairy milk based on their package labels and advertising" because the plaintiff conceded that the defendant "accurately labels and advertises" its products.  *Id*. at 519.  Similarly, in *Chuang v. Dr. Pepper Snapple Group*, No. CV 17–01875–MWF (MRWx), 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017), the court ruled that the plaintiffs' claims under the California consumer statutes failed to meet the reasonable consumer standard because the statements and images on the packaging were not false or misleading because the products contained the fruits and vegetables depicted on the labels.  *Id.* at *4.  In *Moore v. Trader Joe's Company*, 4 F.4th 874 (9th Cir. 2021), the court noted the "impossibility" of producing honey derived from a single floral source and that "[a] reasonable consumer would not understand [defendant's] label . . . as promising something that is impossible to find." *Id*. at 883.

As discussed in the standing section, the DSHEA disclaimer must "be placed adjacent to the [health-related] statement with no intervening material or linked to the statement with a symbol (e.g., an asterisk) at the end of each such statement that refers to the same symbol placed adjacent to the disclaimer[.]" 21 C.F.R. § 101.93(d).  Here, Plaintiffs allege that the dietary

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 21

supplements lack disclaimers on the display panels that carry the health-related claims.  *See* Dkt. # 1 at 8–11, ¶¶ 38 –53.  None of the materials referenced by Amazon refute this.  Amazon does include some photographs of the front labels of some of the dietary supplements Plaintiffs purchased; these labels include asterisks next to the health claims that "direct[] consumers to a DSHEA disclaimer."[6]  *See* Dkt. # 31 at 8–9.  For example, Amazon contends the front-label claim that Nature's Nutrition Turmeric Curcumin supports "joint and heart health" includes an asterisk that directs the consumer to a DSHEA disclaimer on another panel.  *Id*. at 8.  But Amazon also provided the Court with images of the "product detail pages" on its site of the dietary supplements Plaintiffs purchased.  *See* Dkt. ## 19-1 –19-3.  The product details page for Nature's Nutrition Turmeric Curcumin on Amazon's website states in bold, black font that the product provides "Natural Joint Support" and "Support[s] Joint and Heart Health[,]" Dkt. #19-3, Ex. P1 at 2, 6,[7] but there is no asterisk next to either of these assertions nor is there an adjacent DSHEA disclaimer.  *See* Dkt. # 19-3, Ex. P1 at 1–14.  Below are images of the product pages on Amazon that contain the structure function claims for Nature's Nutrition Turmeric Curcumin:

---

[6] Amazon's Reply includes photographs of the front labels of some of the dietary supplements Plaintiffs purchased in a chart with a column titled "Structure/Function Claim[s]" and another column titled "Label Image[s]."  The chart includes images of product labels for: (1) Nature's Nutrition Turmeric Curcumin, (2) Doctor's Best Vitamin D-3, (3) Puritan's Pride Co-Q10, (4) Safrel Vitamin B-12, and (5) NOW Supplements.  *See* Dkt. # 31 at 8–9.

[7] The product page also states that Nature's Nutrition Turmeric Curcumin "Helps with Temporary Soreness" and "Supports Immune System" without asterisks next to either health-related phrase or adjacent DSHEA disclaimers.  *See* Dkt. # 19-3 at 6.

1



2

3

4

5

6

7

8

9

Dkt. # 19-3, Ex. P1 at 2.

10

11

12



13

14

15

16

17

18

19

20

Dkt. # 19-3, Ex. P1 at 6.

21            One of Plaintiffs' primary contentions is that the "proximity and prominence" of the

22    DSHEA disclaimers provides consumers with the opportunity to "see and read them in order to

23    be alerted that the products are not therapeutic and thereby avoid deception."  Dkt. # 25 at 18.  In

24

*Arora v. GNC Holdings*, the court concluded that the plaintiffs adequately pleaded that a reasonable consumer could be misled by the product's therapeutic claims because plaintiffs alleged "that they read the therapeutic claims, accepted them as true. . . and would have evaluated the products and claims differently had the label contained a disclaimer."  2019 WL 6050750, at *11.

Plaintiffs have adequately pleaded that a reasonable consumer viewing the health claims, without proper DSHEA disclaimers, could believe that the claims had therapeutic value or received FDA approval.  As mentioned above, given the claims at issue, dismissal at the pleading stage is appropriate only when it is impossible for Plaintiffs to show that a reasonable consumer would be misled by the product labels or other advertising.  *See Williams*, 552 F.3d at 939.  The Court cannot say that it is impossible here.

   b.   Vicarious Liability

Amazon says that Plaintiffs' claims improperly seek vicarious liability.  *See* Dkt. # 18 at 18–20.  California courts have held that "[t]he concept of vicarious liability has no application to actions. . . [for] unfair business practices[.]"  *Emery v. Visa Internat. Serv. Ass'n*, 116 Cal. Rptr. 2d 25, 33 (Cal. Ct. App. 2002).  "A defendant's liability must be based on [their] personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate [California Business and Professions Code] sections 17200 or 17500."  *Id*. (quoting *People v. Toomey*, 203 Cal. Rptr. 642, 651 (Cal. Ct. App 1984).  Under the CLRA, "absent allegations of participation or control[,]" the defendant cannot be held liable for the acts of third parties.  *In re Jamster Mktg. Litig.*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009); *see also Dorfman v. Nutramax Lab'ys, Inc.*, No. 13CV0873 WQH RBB, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013).

Amazon asserts that Plaintiffs' claims are based "on nothing but vicarious liability for alleged misrepresentations made and controlled by the [p]roduct manufacturers." Dkt. # 18 at 19. It contends that Plaintiffs cannot state a claim under the UCL, FAL, or CLRA without "specific allegations that Amazon made or controlled the relevant labeling misrepresentations or omissions[.]" *Id.* at 20.

Plaintiffs counter that they are not pursuing a theory of vicarious liability. Dkt. # 25 at 23. They argue that Amazon was "integral[ly] involv[ed] in the unlawful and deceptive marketing, promotion, sales, delivery into interstate commerce, and delivery to Plaintiffs of illegal products." *Id.*

In *Dorfman v. Nutramax Laboratories, Inc.*, No. 13CV0873 WQH RBB, 2013 WL 5353043, *14 (S.D. Cal. Sept. 23, 2013), the court denied Walmart and Rite-Aid's motion to dismiss the plaintiff's CLRA and UCL claims because the plaintiff "sufficiently demonstrated" that retailers, Walmart and Rite-Aid, exercised "unbridled control over the practices" of a dietary supplement manufacturer. *Id.* at *14 (internal citations omitted). The complaint alleged that Walmart and Rite-Aid: (1) "participated in the dissemination of the representations concerning the efficacy" of the dietary supplements "and adopted the representations as their own"; (2) "entered into marketing and sales agreements" with the manufacturer to "promote and repeat the false and deceptive statements at issue"; (3) provided "pictures of the false and deceptive packaging and labeling" of the dietary supplements; and (4) made statements on their websites "that repeat and reinforce the false and misleading joint health statements made on the packaging and labeling." *Id.* (internal quotation marks and citations omitted). The court found these allegations could subject Walmart and Rite-Aid "to liability under the UCL and CLRA." *Id.*

The cases cited by Amazon on this issue are distinguishable. In *In re Hydroxycut Marketing and Sales Practices Litigation*, 801 F. Supp. 2d 993 (S.D. Cal. 2011), the court

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 25

1    reasoned that the complaint was "devoid of facts showing that [the defendants] did anything

2    other than sell the Hydroxycut products." *Id.* at 1012.  Likewise, In *In re Jamster Marketing*

3    *Litigation*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *8–9 (S.D. Cal. May 22, 2009), the

4    court observed that the plaintiff alleged "in conclusory fashion without adequate particularity"

5    that the defendant wireless service provider "controlled, participated, approved, marketed or

6    otherwise adopted" the content providers' "advertising practices."  *Id*. at *8–9.

7        Here, Plaintiffs allege that "Amazon and its partners systematically . . . promote and sell

8    [p]roducts lacking the mandatory disclaimers from [p]roduct labels."  Dkt. # 1 at 14 ¶ 66.  They

9    also allege, under its FBA program, Amazon stocks, maintains and stores FBA products at its

10   fulfilment center, retaining data of products sold and stored by Amazon, using Amazon

11   personnel to label, pack and deliver the FBA products to consumers via Amazon delivery

12   vehicles, and provide consumer with 24/7 support about the product.  Dkt. # 1 at 5–6 ¶ 26.  If a

13   consumer returns a product, Amazon handles the return and determines whether the product can

14   be resold in the marketplace.  *Id*.  Through its Business Solutions Agreement with merchants,

15   Amazon controls: (1) "the formatting of product listings" in its online marketplace and in

16   "banner ads" published online; (2) "communications about the product and product sales" with

17   consumers, which occurs only through Amazon's "online platform"; and (3) "processing of all

18   payments for all purchases of FBA products[,]" including consumer payment methods and the

19   provision of payments to the merchants less Amazon's "service fee."  *Id*. at 6 ¶ 27.

20       Plaintiffs' allegations reflect that Amazon participated in and exercised "unbridled

21   control" over the "unlawful practices" such that Amazon could be subject to liability under the

22   California consumer protection statutes.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 26

c.      Exemption Under California's Sherman Law

Amazon claims that it is exempt from the Sherman Law, which expressly adopts federal labeling requirements. *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, […] shall be the food labeling regulations of this state"); Dkt. # 31 at 15–16.  The Sherman Law also makes it "unlawful for any person to distribute in commerce any food, drug, device, or cosmetic, if its packaging or labeling does not conform to the provisions of this article or to regulations adopted pursuant to this article."  Cal. Health & Safety Code § 110385.  But it exempts "persons engaged in business as wholesale or retail distributors of foods, drugs, devices, or cosmetics, except to the extent that they are engaged in the packaging or labeling of the commodities or they prescribe or specify the manner in which the commodities are packaged or labeled."  *Id.*  But this exemption must "not be construed to repeal, invalidate, or supersede any other section of this part."  *Id.*

Amazon contends that Plaintiffs' claim for "unlawful" conduct under the UCL, based on Amazon's violation of the Sherman Law, Dkt. # 1 at 36–38, ¶¶ 136–147, fails because the Sherman Law exempts sellers and distributors from liability when they are not engaged in the packaging or labeling of the products.  Dkt. # 31 at 15.  Amazon asserts that Plaintiffs make conclusory allegations that Amazon "participated in" or "exercised 'unbridled control' over the labeling, branding, advertising, or packaging" of the dietary supplements.  *Id.* at 16.  Amazon thus says that it is "exactly the type of entity that is exempt from liability" under the exception to Section 110385.  *Id.*

Plaintiffs counter that they are not claiming that Amazon is liable because a third party mislabeled a product; they say that Amazon "engages in *labeling*" the dietary supplements.  Dkt. # 57 at 4 (emphasis in original).  Plaintiffs contend that Amazon's role is beyond that of a distributor because, among other things, "Amazon enabled, adopted, promoted, and

exponentially amplified deceptive and unlawful labeling and advertising, including external

banner ads on other (non-Amazon) internet cites [*sic*]." *Id.*  Plaintiffs also highlight that the

Complaint references other alleged violations of the Sherman Law, which are not subject to the

Section 110385 exemption for wholesale or retail distributors. *Id.* at 6–7.

        As discussed above, Plaintiffs have sufficiently pleaded facts to show that Amazon

participated in and exercised "unbridled control" over the allegedly "unlawful practices." *See*

*e.g.*, Dkt. # 1 at 5–6, 14 ¶¶ 26–27, 66.  Amazon's alleged actions in labeling and promoting the

dietary supplements exceed the role of a wholesale or retail distributor.  The Amazon product

pages for the dietary supplements state structure function claims about the products. *See e.g.*,

Dkt. # 19-3, Ex. P1 at 2 (saying Nature's Turmeric Curcumin provides "Natural Joint Support");

Dkt # 19-3, Ex. Q at 28 (saying Doctor's Best Vitamin D3 is "for Healthy Bones, Teeth, Heart

and Immune Support"); Dkt # 19-3. Ex. R at 39 (saying Puritan's Pride CoQ10 "Supports Heart

Health").  Also, the exemption codified in Section 110385 does not apply to other sections of the

Sherman Law.  *See* Cal. Health & Safety Code § 110385 (the statute does not "supersede any

other section of this part").  Thus, the exemption to Section 110385 does not apply to Amazon's

alleged conduct.

        4.      Product Liability & Economic Loss Rule

        Amazon says that the economic loss rule bars Plaintiffs' product liability claims.  The

Court agrees.

        California courts have consistently held that recovery under strict liability is limited to

"'physical harm to person or property.'" *Jimenez v. Super. Ct.*, 58 P.3d 450, 456 (Cal. 2002)

(quoting *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965)).  Damages available to

plaintiffs under a strict product liability theory do not include economic loss. *Id.* at 456.  The

term "economic loss" describes "'damages that are solely monetary, as opposed to damages

involving physical harm to person or property.'"  *Tristan v. Bank of Am.*, No. SA CV 22-01183-DOC-ADS, 2023 WL 4417271, at *14 (C.D. Cal. June 28, 2023) (quoting *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007)).  The economic loss rule also applies to "bar tort recovery for negligently inflicted economic losses unaccompanied by physical or property damage[.]"  *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1236 (Cal. 2024).

Amazon asserts that Plaintiffs have identified only "purely economic losses" associated with purchasing dietary supplements that purportedly lack DSHEA disclaimers.  Dkt. # 18 at 22.  Amazon contends that the public policy considerations that underlie strict product liability, such as blocking the distribution of defective products that cause bodily harm, are inapplicable to a product mislabeling case in which the harm is "economic" and "speculative."  Dkt. # 31 at 17.  Plaintiffs do not dispute that they allege only economic loss regarding their product liability claims.  *See* Dkt. # 25 at 28.  Rather, they assert exceptions to the economic loss rule.  *Id.* at 28–30.

*Fraud Exception*.  Plaintiffs say that the fraud exception to the economic loss rule applies because Plaintiffs have asserted that Amazon committed fraudulent acts, and public policy favors holding tortfeasors accountable for fraudulent and deceptive acts.  Dkt. # 25 at 28–29.  California courts hold that the economic loss rule does not apply to claims of fraud and affirmative misrepresentation.  *See Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 270 (Cal. 2004) (holding that the economic loss rule does not bar tort recovery for claims of intentional misrepresentation or fraud in the performance of a contract).  But Amazon points out that it is arguing that the economic loss doctrine bars recovery for Plaintiffs' product liability claims and not their claims of fraudulent conduct.  *See* Dkt. # 31 at 17 n.7.  The Court agrees that the exception for fraud and affirmative misrepresentation claims does not apply to Plaintiffs' product liability claims.

*Special Relationship Exception.*  Plaintiffs also say that, because there is a "special relationship" between Amazon and Plaintiffs, the economic loss rule does not apply.  Dkt. # 25 at 29–30.  Under California law, the rule also does not apply when a "special relationship" exists between the parties in a way that "'it would be equitable to impose a duty of care to avoid purely economic loss."  *Tristan*, 2023 WL 4417271, at *14 (quoting *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 903 (E.D. Cal. 2018)).  To determine whether a special relationship exists between the parties, courts look at (1) "the extent to which the transaction was intended to affect the plaintiff," (2) the foreseeability of the harm the plaintiff suffered, (3) "the degree of certainty that the plaintiff suffered injury," (4) the proximity between the defendant's conduct and the injury plaintiff suffered, (5) "the moral blame attached to the defendant's conduct," and (6) the public "policy of preventing future harm."  *Electrolux*, 304 F. Supp. 3d at 903 (quoting *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979).

Plaintiffs contend that they had a "special relationship" with Amazon because the transactions at issue were (1) "intended to affect the Plaintiffs" by inducing their reliance, (2) Plaintiffs' harm was foreseeable and certain, and (3) there is a direct connection between Amazon's actions and Plaintiffs' harm because Amazon "directly and materially participated in the marketing, sales, and delivery" of the dietary supplements.  Dkt. # 25 at 29–30.  Plaintiffs also say that Amazon has the "power and easy means" to fix the alleged deception by omitting "non-disclaimed health claims from its product pages" and requiring disclaimers on its products.  *Id.* at 30.

But "[i]n a typical retail transaction, the product is intended to affect a particular purchaser in the same manner as all other retail buyers, not in a manner particular to any individual buyer."  *Electrolux*, 304 F. Supp. 3d at 903.  Plaintiffs have alleged no facts that would show that the transactions they entered into with Amazon were intended to affect them in

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 30

particular.  For example, there is no claim that Amazon was aware of Plaintiffs buying the
dietary supplements, or that Amazon intended to affect Plaintiffs in a way that is distinguishable
from any other Amazon customer.

For these reasons, the economic loss rule bars Plaintiffs' product liability claims.

5.      Implied Warranty of Merchantability

Amazon says that Plaintiffs fail to state a claim for a violation of the implied warranty of
merchantability.  Under California Commercial Code § 2314, "a warranty that the goods shall be
merchantable is implied in a contract for their sale if the seller is a merchant with respect to
goods of that kind."  *Id.* § 2314 (1).  For goods to be merchantable, they must (1) "[p]ass without
objection in the trade under the contract description;" (2) be "fit for the ordinary purposes for
which such goods are used;" (3) be "adequately contained, packaged, and labeled[;]" and (4)
"[c]onform to the promises or affirmations of fact made on the container or label[.]"  *Id.* § 2314
(2)(a), (c), (e)–(f); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th Cir. 2009).  A
product can be unmerchantable "'when the goods do not conform to the promises or affirmations
contained on the container or label or are not fit for the ordinary purposes for which the goods
are used.'"  *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. 2015)
(quoting *Martinez v. Metabolife Int'l., Inc.*, 6 Cal. Rptr. 3d 494, 500 (Cal. Ct. App. 2003)); *see
also Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1194 (N.D. Cal. 2018) (a product can be
unmerchantable "based on a showing that the facts about the product did not match the
representations on the container or label"); *Hauter v. Zogarts*, 534 P.2d 377, 385–86 (Cal. 1975)
(reasoning that the product violated the implied warranty of merchantability for failing to "live
up to the statement on the carton").

Amazon contends that Plaintiffs' implied warranty of merchantability claim "recycles
their mislabeling allegations" without alleging that the dietary supplements "failed to meet a

minimum level of quality." Dkt. # 18 at 23.  Amazon also argues that Plaintiffs' claim that the dietary supplements are "inherently illegal" does not make the dietary supplements unmerchantable because DSHEA disclaimers are "present and compliant."  Dkt. # 31 at 18.

The Complaint alleges that the dietary supplements were unmerchantable because "they did not conform to promises and affirmations made on the container or label of the goods."  Dkt. # 1 at 36 ¶ 133.  Plaintiffs also claim that the dietary supplements failed to include required disclaimers.  *Id*. at 11 ¶ 53.  Plaintiffs contend that they are not only alleging that the sales of the dietary supplements were unlawful because of deceptive marketing but also that the "products are inherently illegal and are barred from interstate commerce."  Dkt. # 25 at 30.  They say that an illegal product is "inherently not merchantable."  *Id.*

Amazon cites *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) and *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025 (N.D. Cal. 2016), for the proposition that Plaintiffs' implied warranty claim must be dismissed for failure to allege that the dietary supplements were not fit for human consumption.  *See* Dkt. # 18 at 23.  But California law recognizes two types of implied warranty of merchantability claims: (1) that goods are not fit for their ordinary purpose, and (2) that the goods do not conform to promises or affirmations on their labels.  *See Martinez*, 6 Cal. Rptr. 3d at 500; *see also Sims v. Campbell Soup Co.*, No. EDCV 18-668 PSG (SPx), 2018 WL 7568640, at *9 (C.D. Cal. Sept. 24, 2018) (finding that plaintiffs brought an implied warranty of merchantability claim under California law because plaintiffs alleged that the beverage label implied that the product contained only natural flavors); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *6 (S.D. Cal. Mar. 7, 2018) (reasoning that there are two "two separate definitions of merchantability" under California law) (citations omitted).  Plaintiffs bring the second type of claim, alleging that the dietary supplements "did not conform to promises and affirmations made on the container or

label" because the representations suggested that the products were "lawful and therapeutic dietary supplements as opposed to illegal and defective drugs" Dkt. # 1 at 35–36 ¶¶ 130–33. Thus, Plaintiffs have adequately pleaded their breach of implied warranty claim.

C.     Leave to Amend

Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It should be given absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (internal citation omitted).  The Court grants Plaintiffs leave to file an amended complaint as to the product liability claims.

## IV

### CONCLUSION

For all these reasons, the Court GRANTS in part and DENIES in part the motion to dismiss:

- The Court DENIES Amazon's request for dismissal on standing grounds.

- The Court GRANTS Amazon's request under Rule 12(b)(6) as to the product liability claims.  The Court DISMISSES the claims without prejudice.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 33

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- The Court DENIES Amazon's Rule 12(b)(6) request as to the remaining claims.  The Court GRANTS Plaintiff leave until October 31, 2024, to file an amended complaint; such leave is limited to the product liability claims.

Dated this 27th day of September, 2024.


John H. Chun
United States District Judge

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 34