UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANITA MEDAL, ESTHER YOO, GAYLE HAYES, ANTOINETTE STANIEWICZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | CASE NO. 2:23-cv-01975-JHC<br><br>ORDER DENYING RULE 12(b)(1) MOTION TO DISMISS |

# I

## INTRODUCTION

This matter comes before the Court on Amazon.com Services LLC's Rule 12(b)(1) Motion to Dismiss for Lack of Article III standing. Dkt. # 84. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court DENIES the motion.

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 1

## II

## BACKGROUND[1]

Amazon operates an e-commerce marketplace and lists various products online for consumers to purchase, including dietary supplements. Dkt. # 77 at 2 ¶ 2. Between 2019 and 2022, Medal purchased these dietary supplements on Amazon: Nature's Nutrition Turmeric Curcumin, Doctor's Best Vitamin D-3, Puritan's Pride Co-Q10, Safrel Vitamin B-12, and NOW Supplements. *Id.* at 2–3 ¶ 5. Between 2021 and 2024, Yoo purchased these dietary supplements on Amazon: Nature's Bounty Fish Oil, Mega Red Omega-3 Krill Oil, Centrum Men's Multivitamin, Nutrafol Women's Hair Growth Supplement, Centrum Women's Multivitamin, Nature's Bounty Ultra Strength Probiotic, Orthomol Vital M, Orthomol Vital Immun, and Orthomol Natal. *Id.* at 3–4 ¶ 12. Between 2019 and 2023, Hayes purchased these dietary supplements on Amazon: Airborne Immune Support, Hair Thickness Maximizer Saw Palmetto, Skinny Fit Super Youth Collagen Peptides, Sports Research Collagen Peptides, NeuroIGNITE Brain Supplement for Cognition, and Viva Natural Vitamin C. *Id.* at 5 ¶ 19. In 2022, Staniewicz purchased these dietary supplements on Amazon: Mary Ruth's Iodine Organic Liquid Drops, Glutathione Super Antioxidant Supplement, and Vitablosom Liposomal Vitamin C. *Id.* at 6 ¶ 26. Plaintiffs contend that they viewed the structure function claims on the product labels on Amazon's site and believed that the supplements "harbored therapeutic value, and/or they and the marketing claims were reviewed and approved by the FDA." *Id.* at 3–7 ¶¶ 6, 13, 20, 27.

Amazon and its partner merchants enter into a "Business Solutions Agreement," which gives Amazon control over the formatting of product listings in its online marketplace, all communications with consumers about the product, and processing of payments and fees for

---

[1] The information in this section derives from Plaintiffs' Amended Complaint. Dkt. # 77.

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 2

1  product sales, including Amazon's service fee. *Id.* at 7 ¶ 40. Plaintiffs say that Amazon
2  "systematically omit[s] and/or promote[s] and sell[s]" dietary supplements in its online
3  marketplace with structure function claims that "lack[] . . .mandatory disclaimers from [p]roduct
4  labels." *Id.* at 16 ¶ 78. They allege that the dietary supplements sold on Amazon "follow the
5  identical labeling and advertising protocol – that is they systematically lack label and package
6  requisite disclaimers despite lack of government review and approval with respect to their
7  efficacy and safety." *Id.* at 20 ¶ 84. Below is an image of the product page on the Amazon site
8  that includes structure function claims for Nature's Nutrition Turmeric Curcumin:



17  Dkt. # 19-3, Ex. P1 at 2.[2] And below is an image of the product page on the Amazon site for
18  Safrel Vitamin B-12:

---

[2] Previously, the Court granted Amazon's request for judicial notice of images of the product pages for the dietary supplements Plaintiffs purchased. Dkt. # 58 at 2 n.1.

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 3

Dkt. # 19-3, Ex. S at 51.

Plaintiffs, individually, and on behalf of a putative class of similarly situated individuals, bring the following causes of action: (1) breach of implied warranty under California Commercial Code § 2314; (2) unlawful conduct in violation of California's Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq*; (3) unfair and fraudulent conduct in violation of the UCL, California Business and Professions Code § 17200, *et seq*.; (4) violation of California's Consumer Legal Remedies Act, California Civil Code § 1750 *et seq*.; and (5) violation of California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.  Dkt. # 77.  Amazon now moves to dismiss the Amended Complaint, contending that Plaintiffs lack Article III standing to bring claims for dietary supplements they did not purchase.  Dkt. # 84.  The company describes Plaintiffs' approach to this litigation as a "litigation tactic designed to impose an improperly coercive and unjustified discovery burden on Amazon."  *Id.* at 7.

# III

# DISCUSSION

A.     Article III Standing

Standing under Article III of the United States Constitution is a component of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010). It is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III standing requires that a plaintiff (1) "suffered an injury in fact[,]" (2) that there was a "causal connection between the injury and the conduct complained of[,]" and (3) the injury is likely "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). A plaintiff must have standing for each claim and form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

B.     Standing for Unpurchased Products

Previously, the Court determined that Medal pleaded Article III standing as to the dietary supplements she purchased.[3] Dkt. # 58 at 6, 9–16. In the Complaint, she alleged that she spent more money on the dietary supplements than she would have in reliance on Amazon's representations, marketing, and the product labels. *Id.*; *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (stating that a "quintessential injury-in-fact" occurs when "plaintiffs spen[d] money that, absent defendants' actions, they would not have spent"); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) (reasoning that "[p]laintiffs . . . can show Article III standing by alleging that they purchased a product they otherwise would not

---

[3] The Court also determined that Eric Li had standing as to the dietary supplements he purchased. Dkt. # 58 at 6, 9–16. Li is no longer a named plaintiff in this lawsuit. *See generally* Dkt.

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 5

have purchased, or that they spent too much on such a product, in reliance on a defendant's representations in ads or on labels") (citations omitted). Hayes, Yoo, Staniewicz, were added as named plaintiffs in the Amended Complaint after the Court resolved Amazon's previous motion to dismiss. Dkt. # 77. These Plaintiffs' allegations are identical to Medal's; they say that they spent more money on the dietary supplements than they would have in reliance on Amazon's marketing and the product labels. *Id.* at 4, 6–7 ¶ 15, 22, 29. Amazon does not challenge the standing of these Plaintiffs to bring claims for the dietary supplements they purchased. *See generally* Dkt. # 84

In the Ninth Circuit, courts have allowed plaintiffs to bring class-action claims for products they have not purchased when the products are part of a "common scheme" that the plaintiffs are challenging on behalf of the class. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020); *see also Swartz v. Dave's Killed Bread, Inc.*,[4] No. 4:21-CV-10053-YGR, 2023 WL 11965055, at *4 (N.D. Cal. Jan. 9, 2023) (citing *Moore* for this proposition); *Carroll v. Myriad Genetics, Inc.*, No. 4:22-CV-00739-YGR, 2022 WL 16860013, at *7 (N.D. Cal. Nov. 9, 2022) (same). In *Moore*, the plaintiffs brought consumer protection claims under California law and federal antitrust claims against pet food manufacturers, veterinary clinics, and a pet goods retailer for pet food labeled for use in the diagnosis, cure, mitigation, treatment, or prevention of disease. 966 F.3d at 1012. The plaintiffs alleged that the defendants led reasonable consumers to falsely believe that the pet food had been subject to government inspection and had medicinal and drug properties, leading consumers to pay more or purchase the product when they otherwise would not have. *Id.* The defendants argued, among other things, that "the [p]laintiffs did not have standing to enjoin all of [d]efendant [m]anufacturers'

---

[4] The caption to this case calls this defendant "Dave's Killed Bread"; but the opinion refers to it as "Dave's Killer Bread."

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 6

prescription pet food products because [the] [p]laintiffs h[ad] not purchased every single type of prescription pet food available from Hill's or Mars." *Id.* at 1021 n.13. The Ninth Circuit rejected this argument, saying that this "does not constitute a basis for dismissal because [the] [p]laintiffs' challenge to prescription pet foods is to the common scheme of the prescription requirement and prescription-based advertising." *Id.*

District courts in this Circuit have diverged on whether class action plaintiffs have standing to assert claims for products they have not purchased. The "'prevailing view in the Ninth Circuit is that class action plaintiffs can bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Clevenger v. Welch Foods Inc.*, No. SACV2001859CJCJDEX, 2022 WL 16964009, at *4 (C.D. Cal. Feb. 25, 2022) (quoting *Clevenger v. Welch Foods, Inc.*, 501 F. Supp. 3d 875, 881 (C.D. Cal. 2020)); *see also Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *5 (N.D. Cal. May 6, 2015) ("Courts in this District have written volumes on the standing analysis for unpurchased products in consumer class actions."). When applying the "substantial similarity" test, courts "look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy*, 67 F. Supp. 3d at 1083 (citing *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11–cv–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)). And some courts have determined that when the complaint's allegations indicate sufficient similarity between the products, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 650–51 (C.D. Cal. 2021) ("To the extent that Defendant seeks to limit the scope of the products based on material differences, Defendant may raise this issue at the

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 7

class certification stage."). As one court described, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. Compucredit Corp.*, No. CIV. 08-04878 CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010) (quoting 7AA Wright et al., *Federal Practice and Procedure* (3d. 2005) § 1758.1 pp. 388–89).

Other district courts in this Circuit have dismissed class action claims for unpurchased products on standing grounds. *Oh v. Fresh Bellies, Inc.*, No. CV 24-5417 PSG (JPRX), 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024); *see also Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (determining that "plaintiffs do not have standing to bring this claim because they did not purchase the Crescent Rolls and therefore, as a matter of law, could not have suffered a particularized injury as required by Article III"). Ultimately, "a number of courts, regardless of which analysis they have undertaken first, have couched their decision as one of discretion." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015); *see also Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 896 (S.D. Cal. 2016) (stating that "a court has discretion to adopt any of the three approaches, as no clear body of precedent governs").[5]

---

[5] Amazon cites *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312 (W.D. Wash. 2014), to support its contention that this District endorses the view that Plaintiffs lack standing to bring claims for dietary supplements they did not purchase. In *Walsh*, subscribers of Microsoft's X–Box LIVE streaming service alleged that Microsoft deceptively made unauthorized charges to their credit cards in connection with their streaming subscriptions. *Id.* at 1316. In that case, the court determined that three of the named plaintiffs did not have standing to bring claims because they did not have X-Box Live Accounts. *Id.* at 1317. As the court reasoned, these three plaintiffs "lack[ed] standing to pursue claims based on products they did not purchase because they have not suffered an injury." *Id.* at 1317–18. *Walsh* is distinguishable because that case involved named plaintiffs who lacked standing to bring claims because they did not suffer any injuries. As this Court previously determined, Medal has standing to bring claims for the dietary supplements she purchased. *See* Dkt. # 58 at 6, 9–16. And Amazon does not challenge the standing of the other named plaintiffs to bring claims for the dietary supplements they purchased. The

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 8

Amazon argues that the named plaintiffs lack standing to bring claims on behalf of individuals who purchased different dietary supplements on Amazon. Dkt. # 84 at 14. Alternatively, the company contends that the unpurchased products are not similar enough to the purchased products for plaintiffs to bring class action claims. *Id.* at 16.

Plaintiffs respond that they alleged sufficient similarity between the purchased and unpurchased dietary supplements because they assert "a uniformly and systematically illegal practice with respect to Amazon's sales and marketing of all purported dietary supplements making health-related claims without required disclaimers." Dkt. # 85 at 12. They also contend that without any discovery or class-certification certification briefing, the Court is not positioned to make factual determinations with respect to putative class members. *Id.* at 11.[6]

Plaintiffs assert that the dietary supplements sold on Amazon follow an "identical labeling an advertising protocol—that is they systematically lack label and package requisite disclaimers despite lack of government review and approval with respect to their efficacy and safety." Dkt. # 77 at 20 ¶ 84. They allege a uniform practice of marketing and selling dietary supplements by making health-related claims about these products without required disclaimers. *Id.* Thus, the unpurchased dietary supplements do "not implicate a significantly different set of concerns than" the purchased supplements. *See e.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (reasoning that the named plaintiff, a student who applied to a university as a freshman, had Article III standing to represent a class of individuals that included freshman and transfer

---

*Walsh* opinion does not examine the issue of the plaintiffs' standing as to purchased versus unpurchased products.

[6] Plaintiffs also contend that Amazon's motion is not proper under Rule 12(b)(1) and should be stricken as a successive motion to dismiss. Dkt. # 85 at 10. But a "Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, including for failure to allege injury sufficient for Article III standing, *may be made at any time*." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019) (emphasis added). Amazon's motion to dismiss centers on Plaintiffs' Article III standing to bring claims for unpurchased dietary supplements. *See* Dkt. 84. Thus, the Court declines to strike the motion.

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 9

applicants because the university's "use of race in undergraduate transfer admissions [did] not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions").

The named plaintiffs do not contend that they have *individual* standing to bring claims based on dietary supplements they never purchased. *See* Dkt. # 77. Instead, Plaintiffs seek to represent a class—individuals who have also purchased dietary supplements from Amazon based on structure-function claims that lack mandatory disclaimers. "In a properly certified class action, the named plaintiffs regularly litigate not only their own claims but also claims of other class members based on transactions in which the named plaintiffs played no part." *See Garrison*, No. 2014 WL 2451290, at *4 (quoting *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 768 (1st Cir.2011)). As another court explained,

> Every time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based on injuries she did not personally suffer—in other words, claims she could not have advanced individually. For example, the cancer-stricken lead plaintiff in an asbestos case brings claims based on other peoples' cancers; a lead plaintiff, paralyzed from the waist down due to a car brake malfunction, can bring product liability claims on behalf of other people who were paralyzed from the neck down due to the same faulty brake design.

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012); *Garrison*, No. 2014 WL 2451290, at *4 (same).

In *Arora v. GNC Holdings*, No. 19-cv-02414-LB, 2019 WL 6050750, at *1 (N.D. Cal. Nov. 15, 2019), the plaintiffs brought class action consumer protection claims against GNC alleging that the labels for GNC brand dietary supplements included structure function claims lacked mandatory disclaimers. *Id.* In that case, GNC argued that the plaintiffs lacked standing to bring claims for supplements that they did not purchase. *Id.* at *15. The court rejected GNC's argument because "the product composition [was] not relevant . . . because the claim [was] that the labels are misleading as a matter of law based on the lack of the required FDA disclaimer."

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 10

*Id.* As the court observed, the plaintiffs "alleged uniform misrepresentations across product lines." *Id.*[7]

Plaintiffs allege that Amazon engages in a uniform, systematic practice of marketing and selling dietary supplements and failing to provide the required disclaimers for structure-function claims. The alleged conduct is sufficiently similar as to the purchased and unpurchased dietary supplements—e.g., they allege, "Amazon's systemic[ally] fail[s] to provide the mandated disclaimers on products with *any* health-related claims." Dkt. # 85 at 14 (emphasis in original). Thus, any further concerns about the differences among the products at issue would be more appropriately resolved at the class certification stage. *See Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013); *Hunter v. Nature's Way Prods., LLC*, No. 16CV532-WQH-BLM, 2016 WL 4262188, at *15 (S.D. Cal. Aug. 12, 2016), *on reconsideration*, No. 16-CV-0532-WQH-AGS, 2018 WL 340233 (S.D. Cal. Jan. 9, 2018) ("Whether the coconut oil products are substantially similar is an issue that will be addressed at the class certification stage of the proceedings."); *Garrison*, 2014 WL 2451290, at *5 ("Any further questions of the adequacy of the named plaintiffs or the typicality of their claims are more properly considered at the class certification stage."); *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 897 (S.D. Cal. 2016) ("Challenges to the adequacy of named Plaintiffs' representation of other class members' interests may be appropriately addressed at the class certification stage.") (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) ("Article III allows the

---

[7] Amazon contends that *Arora* is an outlier, conflicting with the majority view in the Ninth Circuit. Dkt. # 84 at 19. It says that the *Arora* court suggested that the "product composition is not relevant," which is contrary to case law on the substantial similarity inquiry. *Id.* The Court disagrees. The *Arora* court focused on the characteristics of the purchased and unpurchased products germane to that case—the dietary supplements labels contained structure function claims and lacked mandatory disclaimers. 2019 WL 6050750, at *15. The identity of the manufacturer, the specific ingredients of the dietary supplements, or the supplements' purported health benefits were not at issue in that case; at issue was whether the product labels were misleading because they lacked mandatory disclaimers. *Id.*

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 11

district court to exercise discretion in ordering the determinations of class certification and standing."); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("Th[e] conclusion [that a named plaintiff has standing] does not automatically establish that [the plaintiff] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interests of the class.").

### IV
### CONCLUSION

Based on the above, the Court DENIES the motion to dismiss.

Dated this 9th day of June, 2025.

John H. Chun
United States District Judge

ORDER DENYING RULE 12(B)(1) MOTION TO DISMISS - 12