The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ANITA MEDAL, ESTHER YOO, GAYLE HAYES, ANTOINETTE STANIEWICZ, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br>v.<br><br>AMAZON SERVICES, LLC,<br><br>                           Defendant. | Case No. 2:23-cv-01975-JHC<br><br>**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**<br><br>NOTE ON MOTION CALENDAR: OCTOBER 28, 2025<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

LEGAL STANDARD................................................................................................................2

ARGUMENT .............................................................................................................................3

    I.    AMAZON HAD A DUTY TO PRESERVE PRODUCT DETAIL PAGES BUT PRESERVED ONLY A HANDFUL OF SELECT DOCUMENTS AND FAILED TO PRESERVE THE REST. ............................................................3

    II.    THE PRODUCT DETAIL PAGES CANNOT BE REPLACED THROUGH ADDITIONAL DISCOVERY. ..............................................................6

    III.    AMAZON'S FAILURE TO PRESERVE THE PRODUCT DETAIL PAGES CAUSES EXTREME PREJUDICE TO PLAINTIFFS BECAUSE THE EVIDENCE IS CENTRAL TO THEIR CASE. .............................................8

    IV.    AMAZON'S ACTIONS ESTABLISH CULPABILITY FOR SEVERE SANCTIONS. .......................................................................................................9

CONCLUSION.........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ................................................................................................8

*Apple Inc. v. Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...............................................................................5

*Bungie, Inc. v. AimJunkies.com*,
   No. C21-0811-TSZ, 2023 WL 7184427 (W.D. Wash. Nov. 1, 2023) ...........................3, 10

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   No. 5:18-CV-00420-JGBSHK, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ...................2

*Corker v. Costco Wholesale*,
   No. 19-cv-0290-RSL, 2020 WL 1987060 (W.D. Wash. Apr. 27, 2020) .............................8

*CTC Glob. Corp. v. Huang*,
   No. SACV1702202AGKESX, 2019 WL 6357271 (C.D. Cal. July 3, 2019) .....................3

*Greenberg v. Amazon.com, Inc.*,
   No. 2:21-CV-00898-RSL, 2025 WL 2639221 (W.D. Wash. Sept. 12, 2025) .....................1

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................................3, 6, 10

*In re Vaxart Inc. Securities Litig.*,
   No. 20-CV-05949-VC, 2025 WL 1865848 (N.D. Cal. July 7, 2025) ...........................2, 10

*Knickerbocker v. Corinthian Colleges*,
   298 F.R.D. 670 (W.D. Wash. 2014) ....................................................................................5

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ........................................................................................8, 10

*Li v. Amazon.com Servs., LLC*,
   751 F. Supp. 3d 1138 (W.D. Wash. 2024) .......................................................................5, 9

*Medal v. Amazon.com Servs., LLC*,
   No. 2:23-CV-01975-JHC, 2025 WL 1635233 (W.D. Wash. June 9, 2025) .......................5

*Medal v. Amazon.com Servs., LLC*,
   No. 2:23-CV-01975-JHC, 2025 WL 1656117 (W.D. Wash. June 11, 2025) .....................5

*Rehn v. City of Seattle*,
   No. 3:23-CV-01609-RAJ, 2025 WL 1207668 (W.D. Wash. Apr. 25, 2025) ............2, 8, 10

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ..........................................................................10

*Swensen* v. *Nationstar Mortgage LLC*,
    No. 2:24-CV-00553-GJL, 2025 WL 1635246 (W.D. Wash. June 9, 2025) ........................6

*World Courier v. Barone*,
    No. C 06-3072 TEH, 2007 WL 1119196 (N.D. Cal. Apr. 16, 2007) ................................3

*Youngevity Int'l v. Smith*,
    No. 16-cv-704, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ...........................................8

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................3

**Statutes**

21 U.S.C. § 343(r)(6) ...........................................................................................9

Cal. Health & Safety Code § 110100 ..........................................................................9

**Rules**

Fed. R. Civ. P. 37(e) ................................................................................. passim

**Regulations**

21 C.F.R. § 101.93(d) ...........................................................................................9

**PRELIMINARY STATEMENT**

On August 24, 2022, Plaintiffs' counsel provided Amazon with pre-suit notice of their claims along with their full complaint, which Plaintiffs filed five months later on January 31, 2023, in the Northern District of California. This notice made clear that Plaintiffs' claims are based on the Amazon.com product detail pages of the purported dietary supplements at issue.[1] Yet on August 12, 2025—*three years after Amazon received notice of Plaintiffs' claims*—Amazon finally disclosed to Plaintiffs that it has not preserved and will not produce product detail pages. This admission came only after numerous attempts by Plaintiffs' counsel to discern whether Amazon had failed to preserve the product detail pages, efforts Amazon met only with evasive answers and obfuscation—including through Amazon's characterization to the Court of Plaintiffs' requests for discovery on Amazon's litigation hold and preservation efforts as unwarranted when Amazon clearly knew otherwise, *see* Dkt. #78 at 15–16—for *over a year*, beginning when the Court denied Amazon's first motion to dismiss.[2]

Amazon's revelation that it failed to preserve key evidence was made only after Amazon switched litigation tactics and swapped counsel three years into this case and demonstrates a pattern of gamesmanship, spoliation, and waste. More specifically, Amazon's lack of preservation efforts demonstrates either culpable negligence or intentional misconduct. Despite having clear notice of litigation and the broad class-action nature of the claims for over three years, Amazon engaged in highly selective preservation that was patently inadequate. Amazon preserved and produced only the product detail pages for some of the products purchased by a single named Plaintiff, willfully ignoring the obvious relevance of over a million other dietary supplements sold on its platform and

---

[1] Plaintiffs previously referred to these webpages as "Landing Pages" and identified them as such in their discovery requests.

[2] Counsel for Plaintiffs have met and conferred in good faith with counsel for Amazon no fewer than seven times about these issues, between March 18, 2025, and August 20, 2025. The meet-and-confer process need not continue unreasonably where the parties have engaged in "months of unsuccessful negotiations, . . . disclosures were not timely made, and [there is] lack of agreement regarding various aspects of . . . requested relief." *See Greenberg v. Amazon.com, Inc.*, No. 2:21-CV-00898-RSL, 2025 WL 2639221, at *3 (W.D. Wash. Sept. 12, 2025).

purchased by the putative class. Moreover, Amazon continued on its willful course of non-preservation even after this Court ruled expressly—*three times*—that Plaintiffs were entitled to pursue claims on behalf of the putative class, *i.e.*, claims entailing purchases by putative class members.

Holistic and contextualized review of product labels and advertisements invariably form the crux of judicial analysis for consumer claims brought under the deceptive and unlawful prongs of the UCL, and the CLRA and FAL. Given this long-established framework, for Amazon and its equally sophisticated counsel to claim ignorance of their obligations to preserve would be specious. The extreme prejudice to Plaintiffs caused by Amazon's failure to preserve this centrally relevant evidence was readily avoidable for Amazon given its indisputable big-data capabilities—preservation of the product detail pages was well within Amazon's capacities. Accordingly, Amazon's conduct warrants spoliation sanctions.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 37(e) governs the imposition of sanctions for the failure to preserve electronically stored information ("ESI"). Under Rule 37(e), sanctions may be imposed if: (1) the ESI should have been preserved in anticipation or conduct of litigation; (2) the ESI was lost because the party failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or replaced through additional discovery; and (4) the loss of the ESI prejudices the opposing party. *See Rehn v. City of Seattle*, No. 3:23-CV-01609-RAJ, 2025 WL 1207668, at *2 (W.D. Wash. Apr. 25, 2025) (granting adverse inference instruction). Severe sanctions, including an adverse inference or termination, may be imposed where the party acted with the intent to deprive another party of the information's use in litigation. *See* Fed. R. Civ. P. 37(e)(2); *In re Vaxart Inc. Securities Litig.*, No. 20-CV-05949-VC, 2025 WL 1865848, at *5, *8 (N.D. Cal. July 7, 2025) (granting adverse inference instruction and awarding attorneys' fees). "Ignorance of th[e] obligation of preservation, especially from sophisticated parties who have the assistance of experienced counsel, is not persuasive . . . ." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-CV-00420-JGBSHK, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020), *report-recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

# ARGUMENT

## I. AMAZON HAD A DUTY TO PRESERVE PRODUCT DETAIL PAGES BUT PRESERVED ONLY A HANDFUL OF SELECT DOCUMENTS AND FAILED TO PRESERVE THE REST.

The duty to preserve evidence arises when litigation is reasonably foreseeable. *See Bungie, Inc. v. AimJunkies.com*, No. C21-0811-TSZ, 2023 WL 7184427, at *4 (W.D. Wash. Nov. 1, 2023). Put differently, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *CTC Glob. Corp. v. Huang*, No. SACV1702202AGKESX, 2019 WL 6357271, at *2 (C.D. Cal. July 3, 2019) (quoting *World Courier v. Barone*, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007)). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Id.* (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

Amazon's duty to preserve evidence arose no later than August 24, 2022, when it received pre-suit notice of Plaintiffs' claims. Dkt. #77 ¶ 144.[3] The class-action nature of the complaint supplied to Amazon at that time made clear that the claims extended beyond the named Plaintiffs' individual purchases, encompassing Amazon's systematic and pervasive practices across its entire marketplace of purported dietary supplements. Moreover, the nature of Plaintiffs' claims placed beyond doubt that the product detail pages for all products would be relevant—indeed, critical—to the Court's analysis, because the claims specifically targeted the statements and omissions, and their contextual prominence, contained in those product detail pages.

Despite its clear duty, and the requirement under Rule 37(e) to take reasonable steps to preserve ESI, including the suspension of ordinary-course document destruction policies and implementation

---

[3] Plaintiffs subsequently filed a complaint, which was substantively identical to the one provided to Amazon, in the U.S. District Court for the Northern District of California on January 31, 2023. Dkt. #1.

of litigation holds, Amazon—while selectively preserving a few—willfully failed to preserve over a million product detail pages essential to Plaintiffs' presentation of their case. Amazon's former counsel alluded to this conduct at the parties' June 17, 2025 meet and confer, during which they stated that Amazon does not have a "Wayback Machine" and had merely been retaining documents and data "in the ordinary course of business." Over two months later and after swapping counsel, Amazon finally and unequivocally admitted to their failure to preserve the product detail pages on August 12 and August 28, 2025, when Amazon's newly substituted counsel explained that Amazon "does not maintain product detail pages as PDFs in the ordinary course," *see* Declaration of George G. Carpinello, Ex. B, and beyond failing to preserve the pages as PDFs, Amazon does not preserve the product detail pages whatsoever "in the manner in which this content is rendered to each customer viewing these products on the Amazon website," *see* Carpinello Decl., Ex. C. Amazon's counsel stated, therefore, that Amazon had not preserved, and would not now preserve or produce, the product detail pages. In other words, Amazon admits to not having preserved the product detail pages— product labels—*at all*.[4]

Amazon took no steps to preserve the product detail pages even though it clearly had the ability to do so given its vast big-data capabilities[5]—and despite the fact that it had preserved and produced *some* of the product detail pages. Specifically, Amazon preserved two product detail page images each for six of Ms. Medal's product purchases, *see* Carpinello Decl., Ex. A, a clear admission by Amazon that the product detail pages in their entirety are material and relevant to the Court's liability analysis. By preserving some of the product detail pages for products that one named Plaintiff purchased while failing to preserve evidence relating to the remaining approximately 1.6 million products in dispute,

---

[4] Amazon's counsel bizarrely asserted that it was somehow Plaintiffs' burden to preserve Amazon's product detail pages for the subject products that Amazon sold throughout the class period. *See* Carpinello Decl., Ex. C. This is plainly incorrect.

[5] *See* "Why AWS?," https://aws.amazon.com/what-is-aws/ (touting Amazon Web Services products, including cloud storage, as "the world's most comprehensive and broadly adopted cloud . . . We offer the greatest choice of innovative cloud capacities, on the most extensive global infrastructure with industry-leading security, reliability, and performance.").

1  Amazon acknowledged that it knew of and understood the evidentiary relevance of the product detail
2  pages in their entirety.

3        Nor can such conduct plausibly be justified by Amazon's defunct strategy of attempting to
4  limit Plaintiffs' class-action claims to products purchased by named Plaintiffs only. From the outset,
5  Plaintiffs' claims, as described to Amazon as early as August 2022, were unequivocally *class-action*
6  claims that encompassed Amazon's systematic practice across its *entire marketplace of purported*
7  *dietary supplements*, rendering baseless any claim that Amazon was not aware of the potential
8  relevance of—and therefore Amazon's duty to preserve—product detail pages for products beyond
9  those purchased by named Plaintiffs. Indeed, Amazon's attempt to restrict this case to a small handful
10 of products—preserving only a few selective records accordingly—was both predictably flawed and
11 wholly unjustified, as the Court made clear. *See Li v. Amazon.com Servs., LLC*, 751 F. Supp. 3d 1138,
12 1164 (W.D. Wash. 2024) (denying Amazon's Rule 12(b)(6) motion and holding that Plaintiffs had
13 standing to bring class claims and had adequately pleaded class claims under the UCL, CLRA, and
14 FAL and for breach of implied warranty); *Medal v. Amazon.com Servs., LLC*, No. 2:23-CV-01975-
15 JHC, 2025 WL 1635233 (W.D. Wash. June 9, 2025) (denying Amazon's Rule 12(b)(1) motion and
16 holding that Plaintiffs have standing to bring class claims arising from products other than those named
17 Plaintiffs purchased); *Medal*, 2025 WL 1656117 (W.D. Wash. June 11, 2025) (rejecting Amazon's
18 argument that discovery should be limited to products purchased by named Plaintiffs). Even so,
19 Amazon still refuses to preserve this essential ESI.

20       Moreover, Amazon's appeal to its "ordinary course" destruction practices as some sort of
21 shield against the consequences of its wrongful actions is entirely misplaced because of the clear notice
22 Amazon had as of August 2022 of Plaintiffs' claims. This notice triggered Amazon's obligation to
23 suspend ordinary-course destruction practices and institute litigation holds to ensure the preservation
24 of documents potentially relevant to Plaintiffs' claims. *See Knickerbocker v. Corinthian Colleges*, 298
25 F.R.D. 670, 678, 682 (W.D. Wash. 2014) (imposing fines on a party and its counsel and awarding
26 attorneys' fees for spoliation because a party "is obligated to suspend [its ordinary-course retention
27 and storage] policy and implement a litigation hold to ensure the preservation of relevant documents");
28 *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137, 1150–51 (N.D. Cal. 2012) (imposing

an adverse-inference sanction for spoliation because a party is "'is obligated to suspend' [its ordinary-course retention and storage policy] and 'implement a "litigation hold" to ensure the preservation of relevant documents' after the preservation duty has been triggered" (citation omitted)); *Napster*, 462 F. Supp. 2d at 1078 (imposing an adverse-inference sanction and a preclusion order and awarding attorneys' fees for spoliation where a party failed to suspend its "long standing policies" for document retention once its duty to preserve attached).[6]

Simply put, Amazon clearly had a duty to preserve the product detail pages but preserved only a small amount and failed to preserve the rest, rendering spoliation sanctions appropriate.

## II. THE PRODUCT DETAIL PAGES CANNOT BE REPLACED THROUGH ADDITIONAL DISCOVERY.

Amazon's counsel has now explicitly stated on multiple occasions that it has not preserved the product detail pages. But apparently realizing the danger of sanctions that could result from such misconduct, Amazon's counsel has for months been obliquely referencing data it *would* produce in response to Plaintiffs' requests for the product detail pages, which Amazon seemingly hopes will serve as a replacement for the documents Amazon failed to preserve.

At the June 17, 2025 meet and confer, Amazon's former counsel referenced "trillions of lines of data" in spreadsheets that represented some portion of what may have appeared on the product detail pages. Plaintiffs, befuddled at Amazon's lack of clarity as to what this data represented, have—since June—been attempting to gain clarity. At the August 20, 2025 meet and confer, Amazon's new counsel, after stating clearly for the first time that Amazon does not maintain the product detail pages in the ordinary course, stated that Amazon would produce certain information provided to Amazon by third-party sellers that Amazon uses to create and publish the product detail pages, though Amazon could not confirm that all information on the product detail pages was represented in this data or that

---

[6] The case Amazon cited in its August 12 email, *Swensen* v. *Nationstar Mortgage LLC*, is plainly inapposite. There, the defendant produced precisely what the plaintiff requested, albeit in a disorganized and haphazard manner. *See* No. 2:24-CV-00553-GJL, 2025 WL 1635246, at *4 (W.D. Wash. June 9, 2025). Here, however, Amazon has not preserved the documents Plaintiffs requested—they apparently no longer exist—and has instead proposed producing a categorically distinct and incomplete listing of data.

1  this data contained all information that was published on the product detail pages. Amazon's counsel
2  further stated that they would promptly provide Plaintiffs with an exemplar of the type and format of
3  third-party information Amazon would eventually produce in response to Plaintiffs' requests.
4  Amazon's counsel reiterated these positions in an email to Plaintiffs' counsel on August 28, 2025. *See*
5  Carpinello Decl., Ex. C.

6        Counsel for Amazon produced the "exemplar," while noting that it was incomplete, on
7  September 12, 2025. *See* Carpinello Decl., Ex. D. As Amazon's prior counsel intimated it would be,
8  the exemplar, which applies to only a single product for a period of less than one year, is one large
9  spreadsheet that is difficult (if not impossible) to comprehend with tens-of-thousands of rows of data—
10 including *non sequitur* and acontextual phrases in at least nine different languages—and a separate
11 spreadsheet with URLs for images relating to the product. In their cover letter, Amazon's counsel
12 expressly reiterated that they cannot confirm that everything within the exemplar appeared on the
13 associated product detail page or that everything that appeared on the product detail page is included
14 in the exemplar. *See id.* And despite the spreadsheets supposedly representing an "exemplar" of the
15 data Amazon will produce, Amazon's counsel expressly stated that "future productions of content for
16 a larger sample of ASINs will likely involve a different format." *Id.* Most importantly, the exemplar
17 provides *no information whatsoever* on how the data was visually presented. It instead simply lists
18 discrete datapoints that Amazon used to populate the product detail pages in some manner unknown—
19 and, based on the exemplar alone, unknowable—to Plaintiffs. Quite frankly, this data is of no use.

20       For these reasons, the data Amazon proposes to produce in response Plaintiffs' requests for the
21 product detail pages is simply insufficient as a replacement for the product detail pages themselves.
22 The data the exemplar represents is not what Plaintiffs have requested or what this case demands. Only
23 a production of product detail pages that is in the form in which they appear on Amazon.com, which
24 is the manner in which a consumer would perceive them, is consistent with Federal Rule of Civil
25 Procedure 34, which requires that "a party must produce [ESI] in a form or forms in which it is
26 ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Failure
27 to produce the product detail pages as they appeared to consumers on Amazon.com while substituting
28 production—as the exemplar suggests—of distinct and admittedly incomplete information limited to

a smattering of the information third-party sellers provided to Amazon, violates Rule 34's requirement that discoverable information be presented in a reasonably usable form. The Advisory Committee's comments to the 2006 Amendment of Rule 34 make clear that "the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information . . . to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Indeed, a party's production of information that negates the "functionality" or "valu[e]" of the native format and prevents the receiver from "us[ing] the information efficiently" is "insufficient under [Rule 34]." *See Corker v. Costco Wholesale*, No. 19-cv-0290-RSL, 2020 WL 1987060, at *1 (W.D. Wash. Apr. 27, 2020).

Here, the functionality and value of the product detail pages derive from their complete visual layout. By instead limiting its production to massive yet incomplete databases of jumbled information provided by third-parties that Amazon then selectively uses—apparently at Amazon's own discretion—to produce its product detail pages, Amazon is not only introducing improper inefficiencies under Rule 34, but more to the point, is actually depriving Plaintiffs of core evidence necessary to prosecute their claims. The fact is that the product detail pages have not been preserved and cannot be replaced through the alternative proposed by Amazon.

### III. AMAZON'S FAILURE TO PRESERVE THE PRODUCT DETAIL PAGES CAUSES EXTREME PREJUDICE TO PLAINTIFFS BECAUSE THE EVIDENCE IS CENTRAL TO THEIR CASE.

"A party is prejudiced when the spoliating party's actions impair the 'non-spoliating party's ability to go to trial' or threaten to 'interfere with the rightful decision of the case,'" *Rehn*, 2025 WL 1207668, at *3 (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)), such as by "forc[ing] a [non-spoliating] party 'to rely on incomplete and spotty evidence' at trial." *Id.* (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995)). "Although [Rule] 37(e) does not place the burden of proving or disproving prejudice on either party, if spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial." *Youngevity Int'l v. Smith*, No. 16-cv-704, 2020 WL 7048687, at *3 (S.D. Cal. July 28, 2020).

Here, Plaintiffs are obviously prejudiced by Amazon's failure to preserve the product detail pages. Without them, Plaintiffs are not able to prove their case. Plaintiffs claim that the product detail pages systematically lack mandatory disclaimers given the presence of health-related therapeutic claims. The product detail pages themselves are integral, because Plaintiffs need to determine for which products the product detail pages do not comply with the law, *i.e.*, which products lack a "prominent" disclaimer "on each panel or page" of a label or package. *See* 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(d); *see also* Cal. Health & Safety Code § 110100 (adopting federal food labeling regulations). In other words, to evaluate whether disclaimers comply with the statutory requirement of "prominence" under DSHEA, as incorporated into California's Sherman Law, as well as other statutory demands, the labels must be evaluated holistically—that is, in context—in order to evaluate prominence (or lack thereof). This analysis cannot be conducted using Amazon's exemplar production of incomplete and spotty evidence, which does not preserve or demonstrate critically important visual and contextual elements of the product detail pages. The analysis demands examination of the entire visual layout of the product detail pages themselves.

The Court has already agreed with this very proposition. Plaintiffs incorporated images of product detail pages in the First Amended Complaint. *See* Dkt. #77 ¶¶ 81, 85, 86. In its Rule 12(b)(6) motion, *based on text alone*, Amazon contended that a disputed product label contained the required disclaimer. But with images of the product detail pages, Plaintiffs demonstrated that the disclaimer was buried on page seven of twelve and was in no manner prominent or compliant with legal requirements. *See* Dkt. #25, at 17–20. The Court agreed, and, importantly, *included images of product detail pages*—not merely the textual elements—in its decision. *See Li*, 751 F. Supp. 3d at 1150–51, 1156–58. Just as the Court did, Plaintiffs must analyze the visual layout of the product detail pages to prosecute its claims—incomplete acontextual spreadsheets of information that may or may not have appeared on the product detail pages viewed by purchasers simply do not capture sufficient data to prove the placement and prominence of disclaimers relative to other marketing claims and images. Thus, as the Court has shown, Amazon's failure to preserve the product detail pages causes extreme prejudice to Plaintiffs that is irreparable absent spoliation sanctions.

### IV.   AMAZON'S ACTIONS ESTABLISH CULPABILITY FOR SEVERE SANCTIONS.

1          The "abject failure to preserve an *entire source of relevant evidence* is sanctionable conduct." *Napster*, 462 F. Supp. 2d at 1074 (emphasis added). Severe sanctions, including an adverse inference or termination, may be imposed where a party acted with the intent to deprive another party of the destroyed information. *See* Fed. R. Civ. P. 37(e)(2); *Vaxart*, 2025 WL 1865848, at *5, *8. "[I]ntent can be proven through direct or circumstantial evidence," and "failing to take reasonable steps after a duty to preserve evidence arose is enough to infer an intent to deprive." *Rehn*, 2025 WL 1207668, at *4 (quoting *Bungie*, 2023 WL 7184427, at *8). Where spoliation would leave the non-spoliating party helpless to rebut an argument that might overcome an adverse presumption, an irrebuttable adverse inference is appropriate. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 520 (C.D. Cal. 2022) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d at 960), *report-recommendation adopted.*

       Here, Amazon's decision to preserve a mere twelve product detail pages—for some of the products purchased by one named Plaintiff—while abjectly failing to preserve approximately 1.6 million others (according to its own estimate) demonstrates bad-faith intent to deprive Plaintiffs of necessary evidence. Amazon's justifications for this conduct—that Plaintiffs' suit could only encompass products purchased by named Plaintiffs, and that Amazon was not obligated to deviate from its ordinary-course document retention—were contrary to the express allegations in the Complaint and antithetical to decades of relevant caselaw. Amazon was clearly on notice that the product detail pages *might* be relevant, and almost certainly knew they were. They therefore should have been preserved. Instead, Amazon knowingly and intentionally failed to suspend its ordinary-course destruction policies and implement preservation measures adequate for the scope of this case.

       What is more, Amazon failed to take any action even after this Court's rulings made clear *three times*—by denying Amazon's Rule 12(b)(6) and Rule 12(b)(1) motions and by denying in material part Amazon's request for a protective order—that its efforts to block class claims encompassing products purchased by class members would not be permitted. There can be no doubt that such failure was willful, and a continuation of Amazon's determined intent to stymie the prosecution of Plaintiffs' claims. The failure to issue a litigation hold under these circumstances is beyond legitimate explanation and warrants a finding of bad-faith intent.

In short, the combination of Amazon's awareness of the central relevance of the product detail pages to the pending litigation and its utter failure to take any measures to preserve them shows bad-faith intent to deprive Plaintiffs of their use. Amazon's conduct coupled with the inability to cure the prejudice to Plaintiffs caused by the unavailability of evidence on which Plaintiffs must rely warrant severe sanctions under Rule 37(e)(2).

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court:

1. find that Amazon engaged in intentional spoliation of evidence by failing to preserve the product detail pages;

2. impose sanctions under Rule 37(e)(2), including an irrebuttable adverse inference that Amazon is liable for unlawful, unfair, fraudulent, deceptive, and materially misleading labeling, as those terms are used in California's Unfair Competition Law, Consumers Legal Remedies Act, and False Advertising Law, of all purported dietary supplements sold on Amazon.com during the liability period, in violation of California's Sherman Law;

3. award monetary sanctions to compensate Plaintiffs for additional costs incurred due to Amazon's spoliation; and

4. grant such other relief as the Court deems just and proper.

Dated: October 7, 2025

**JUST FOOD LAW PLLC**

*/s/ Maia Kats*
Maia Kats (*pro hac vice*)
5335 Wisconsin Avenue, NW, Ste. 440
Washington, DC 20015
Telephone: (202) 243-7910
Email: maiakats@justfoodlaw.com

*I certify that this memorandum contains 4,102 words, in compliance with the Local Civil Rules.*

*[signature block continues on next page]*

|   |   |
|---|---|
| 1 | /s/ George F. Carpinello |
|   | George Carpinello (*pro hac vice*) |
| 2 | Adam Shaw (*pro hac vice*) |
|   | Patrick Marris (*pro hac vice*) |
| 3 | **BOIES SCHILLER FLEXNER LLP** |
| 4 | 30 South Pearl Street |
|   | Albany, NY 12207 |
| 5 | Telephone: (518) 434-0600 |
|   | Email: gcarpinello@bsfllp.com |
| 6 | Email: ashaw@bsfllp.com |
|   | Email: pmarris@bsfllp.com |

/s/ Todd Maybrown
Todd Maybrown, Bar No. 18557
**ALLEN, HANSEN, MAYBROWN & OFFENBECHER**
600 University St, Suite 3020
Seattle, Washington 98101
Telephone: (206) 447-9681
Email: todd@ahmlaywers.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on October 7, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED: October 7, 2025

                                               */s/ George F. Carpinello*
                                               George F. Carpinello