UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANITA MEDAL, ESTHER YOO, GAYLE HAYES, and ANTOINETEE STANIEWICZ, individually, and on behalf of all others similarly situated, | CASE NO. 2:23-cv-01975-JHC |
| Plaintiffs, | ORDER |
| v. | |
| AMAZON.COM SERVICES, LLC, | |
| Defendant. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiffs' Motion for Spoliation Sanctions.  Dkt. # 106.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  Being fully advised, for the reasons below, the Court DENIES the motion.

**II**

**BACKGROUND**

Plaintiffs, on behalf of a putative class, bring against Defendant Amazon a breach of implied warranty claim and claims under three California consumer protection statutes based on

ORDER - 1

the company's alleged failure to include mandatory disclaimers on dietary supplements sold on its ecommerce platform. *See generally* Dkt. # 77 (First Amended Complaint (FAC)). The statutes are the Unfair Competition Law (UCL), Cal. Bus. & Profs. Code § 17200 *et seq.*, under its unlawful (*id.* ¶¶ 117–28) and fraudulent conduct prongs (*id.* ¶¶ 129–38); the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*, *id.* ¶¶ 139–45; and the False Advertising Law (FAL), Cal. Bus. & Profs. Code § 17500 *et seq.*, *id.* ¶¶ 146–52.

Plaintiffs allege that Amazon engaged in the foregoing violations by selling dietary supplements that lack "structure/function" disclaimers. As Plaintiffs allege, products marketed as "'intend[ing] to affect the structure or function' of the body" need not be approved by the Food and Drug Administration (FDA) before sale "*if and only if* the supplement carries prominent disclaimers in order to notify consumers that such products are not intended or established to have therapeutic efficacy and have not been subjected to government review and approval for efficacy, safety, or truthfulness of marketing claims." *Id.* ¶ 55 (citing 21 U.S.C. § 343(r)(6)(A), (C)). To qualify as a dietary supplement instead of a drug, such a product must bear a disclaimer stating, "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." *Id.* ¶ 56 (citing 21 U.S.C. § 343(r)(6)). Under applicable federal regulations, each such disclaimer "shall appear on each panel or page where there such is" a structure/function claim. 21 C.F.R. § 101.93(d). Plaintiffs allege that "Amazon and its partners systematically omit and/or promote and sell Products lacking the mandatory disclaimers from Product labels." Dkt. # 77 ¶ 78.

The crux of Plaintiffs' food labeling case concerns the presence or absence of mandatory disclaimers on the web pages (known as product detail pages or PDPs) for the dietary supplements sold by Defendants. *See, e.g., id.* ¶¶ 80–86 (reproducing images of dietary supplements on Amazon's website that Plaintiffs allege lack the requisite disclaimers); *id.* ¶¶ 7,

14, 21, 28 (named Plaintiffs alleging they each "relied on Amazon's stature, representations, and reputation, as well as the marketing and Product labels and its omissions from the same, and was misled thereby."). Accordingly, the visual appearance of the labels of the dietary supplements, as they appeared to Plaintiffs and potential class members on the PDPs on Defendant's website, is of central importance. As Plaintiffs say in the motion, "[h]olistic and contextualized review of product labels and advertisements invariably form the crux of judicial analysis for consumer claims brought under the deceptive and unlawful prongs of the UCL, and the CLRA and FAL." Dkt. # 106 at 6. This discovery dispute concerns production related to Amazon's webpages and the dietary supplement product labels at issue.

The following technical background on PDPs derives from a declaration by Adam Duncan, an Amazon employee. Dkt. # 110-3 ¶ 1. According to Duncan, a PDP "is not equivalent to a page inside a traditional shopping catalog" and is "not a static representation." *Id.* ¶ 9. Rather, each PDP is "dynamic" and "comprised of hundreds of individual features organized within the PDP layout." *Id.* The layout, features, and content of the PDP "are generated for that particular PDP for each customer at the moment the customer visits the webpage." *Id.* ¶ 10. Thus, each PDP "exists only transiently for the specific moment in time the customer views the PDP," such that when a customer closes that PDP and visits it later, they may see a "slightly different PDP." *Id.* Thus, "[d]ue to the number of variable and non-variable features that appear on a PDP and the manner in which a PDP is rendered for each customer, Amazon does not maintain a copy of each individual PDP rendering for every product as viewed by every customer that visits in the ordinary course of business, nor does Amazon create or retain customer-specific "snapshots" or PDFs of PDPs in the ordinary course of business." *Id.* At a practical level then, the PDPs—the webpages that Plaintiffs and putative class members saw

ORDER - 3

when making their purchases—consist of the "surface" viewable web page and the underlying, structured data supplying the information viewable on that web page.

Plaintiffs served two sets of document requests in February and March 2025 asking for PDPs for "all relevant products." Dkt. # 106-1 ¶ 5–7. Plaintiffs say that, in response, Amazon produced documents including 12 "PDF-like representations" of PDPs, including two PDPs each for six products purchased by named Plaintiff Anita Medal. *Id.* ¶ 8. Amazon says that this production consisted of "static screenshots of" the PDP "for each product identified" in the request. Dkt. # 110-1 ¶ 4. From March to August 2025, the parties conducted several meet-and-confers to discuss Amazon's production of the PDPs. Dkt. # 106-1 ¶ 12; Dkt. # 110-1 ¶¶ 5–6. Plaintiffs say that at these meet-and-confers, they asked Amazon whether it possessed the PDPs that Plaintiffs requested (i.e., for the rest of the products) and whether it would produce them. *Id.* ¶ 13. According to Amazon's counsel, during these meet-and-confers, Amazon explained that they do not maintain PDPs as PDFs "in the ordinary course of business, but that "the underlying data used to render a PDP is maintained and preserved in the ordinary course of business." Dkt. # 110-1 ¶ 5. Amazon says that Plaintiffs "insisted that Amazon produce PDPs in PDF format," while the company objected on the ground that they do not maintain PDPs in PDF format but rather stores the information as code. *Id.* ¶ 5; Dkt. # 106-1 ¶ 18–19. Plaintiffs claim that Amazon only raised this objection in August 2025, after two rounds of meet-and-confers. *Id.* Plaintiffs also claim that this underlying data consists of "certain information provided to Amazon by third-party sellers," *id.* ¶ 19, and that Amazon "could not confirm that all information on the [PDPs] was represented in this data or that this data contained all information that was published on the [PDPs]." *Id.* ¶ 20. Plaintiffs say that the underlying data—what Amazon says it maintains in the ordinary course—amounts to "one large spreadsheet that is difficult (if not impossible) to comprehend with tens-of-thousands of rows of data" that

ORDER - 4

"provides no information whatsoever on how the data was visually presented and instead simply lists discrete datapoints that Amazon used to populate the [PDPs] in some manner unknown—and, based on the exemplar alone, unknowable—to Plaintiffs." *Id.* ¶ 26.  Despite these reservations, the parties apparently agreed that Amazon would produce an exemplar of this underlying PDP data, including images, for a single product.  Dkt. # 110-4 ¶ 6

Unable to resolve their dispute, Plaintiffs now move for sanctions and an adverse inference instruction, contending that Amazon spoliated evidence when it failed to preserve the PDPs, as consumers would have seen them, for the products at issue.  *See* Dkt. # 106 at 5.

### III
#### DISCUSSION

A.    Legal Standards

Spoliation of evidence is the "failure to preserve property for another's use as evidence, in pending or future litigation." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677 (W.D. Wash. 2014) (citing *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009). This duty of preservation "is triggered when a party knows or reasonably should know that the evidence may be relevant to pending or future litigation." *E.E.O.C. v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1044 (W.D. Wash. 2012).

Federal Rule of Civil Procedure 37(e) governs motions for spoliation sanctions concerning electronically stored information (ESI).  Under this rule, a party must show, by a preponderance of the evidence, that: (1) the nonmoving party failed to preserve ESI that "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost" because the nonmoving party "failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e); *see also Zunum Aero, Inc. v. Boeing Co.*, 2024 WL 664540, at *2 (W.D. Wash. Feb. 7, 2024).  If this showing is made,

ORDER - 5

and the moving party was prejudiced, the court may order sanctions. *See* Fed. R. Civ. P. 37(e)(1). But under Rule 37(e)(1), such measures may be "no greater than necessary to cure the prejudice[,]" and district courts have broad discretion to fashion appropriately curative sanctions.[1] If, however, the court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation[,]" it may impose more serious sanctions, such as an adverse inference instruction or dismissal of the entire action. *See* Fed. R. Civ. P. 37(e)(2).

B.       Parties' Positions

Plaintiffs contend that Amazon had a duty to preserve the PDPs as they appeared to potential class members, and that this duty arose on August 24, 2022, when it received pre-complaint notice of Plaintiffs' claims. Dkt. # 106 at 7 (citing Dkt. # 77 ¶ 144). They argue that "Amazon took no steps to preserve the product detail pages even though it clearly had the ability to do so given its vast big-data capabilities" and "despite the fact that it had preserved and produced *some* of the product detail pages." *Id.* at 8. They characterize Amazon's failure to preserve the PDPs as "ordinary-course destruction practices" that it was obligated to suspend once it received notice of the litigation. *Id.* at 9. They say that the PDPs cannot be obtained through additional discovery, and that the underlying data Amazon offers is an ersatz "replacement for the documents [it] failed to preserve," *id.* at 10, and is "simply insufficient as a replacement for the product detail pages themselves." *Id.* at 11. Plaintiffs argue that this failure

---

[1] *See, e.g.*, *Bass Underwriters, Inc. v. Kono*, 2024 WL 4441834, at *1 (D. Nev. May 15, 2024) ("Federal Rule of Civil Procedure 37 is 'flexible' with respect to sanctions, and district courts have broad discretion to fashion sanctions under Rule 37, when they are appropriate."); *Burton v. Walgreen Co.*, 2015 WL 4228854, at *2 (D. Nev. July 10, 2015) ("The decision to impose spoliation sanctions is discretionary.").

ORDER - 6

to preserve is extremely prejudicial to them because the PDPs are central to their case, given their claim that the PDPs "systematically lack mandatory disclaimers." *Id.* at 13.

Plaintiffs seek a hefty sanction. They argue that, because the failure to preserve "an entire source of relevant evidence" lacked justification in the face of a litigation hold, Amazon acted in bad faith. *Id.* at 14–15. The irrebuttable adverse inference Plaintiffs ask for is that "Amazon is liable for unlawful, unfair, fraudulent, deceptive, and materially misleading labeling, as those terms are used in" the UCL, CLRA, and FAL, "for all purported dietary supplements sold on Amazon.com during the liability period." *Id.* at 15.

Amazon responds that it repeatedly explained to Plaintiffs that PDPs are only maintained in the underlying code or data format and, as described above, assembled into viewable web pages upon each individual click. Dkt. # 110 at 8–9. Amazon has offered to produce this underlying data in response to Plaintiffs' requests. *Id.* at 11 (citing Dkt. # 110-4 ¶ 6). According to Amazon, through a vendor, this underlying data can be used to render a PDP "nearly identical to how it appears" in the screenshots that Amazon produced at earlier stages in the litigation. *Id.* Amazon says that the key information relevant to Plaintiffs' claims, like product descriptions, images, safety warnings, and disclaimers, do not change per click, and thus are "Non-Variable PDP Content." *Id.* at 8 (citing Dkt. # 110-2 ¶¶ 5–6, 8). This Non-Variable PDP Content is viewable via the code that Amazon has offered to produce once it is assembled into a PDP through the services of a vendor. Addressing the main part of Plaintiffs' argument, Amazon says that just because it does not maintain PDPs in Plaintiffs' "preferred format" of a PDF or other snapshot does not make them liable for sanctions. *Id.* at 15–17. Amazon argues that it has destroyed no evidence, but preserved the information as it does in the usual course of business— as code. *Id.* It says that Plaintiffs' case is not prejudiced because the Non-Variable PDP Content is preserved and contains the information needed for Plaintiffs to prove their case. *Id.* at 18–20.

ORDER - 7

Because it has not destroyed or failed to preserve evidence, Amazon argues, it is not liable for sanctions. *Id.* at 17.

C.       Analysis

The central question is whether Amazon failed to preserve evidence.  This question requires understanding what was covered by the scope of the preservation duty triggered when Plaintiffs notified Amazon of their claims.  Plaintiffs argue that Amazon had a duty to preserve the PDPs as they were viewable to Plaintiffs and putative class-members in the form of a static snapshot.  Amazon responds that they had a duty to preserve the PDPs in the form of the data.

In response to a request for production of ESI,

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).

In the ESI context, Rule 34 requires parties to produce such information "'in native format[,] to be produced as it is kept in the ordinary course of business.'"  *Money Mailer, LLC v. Brewer*, 2020 WL 1515647, at *1 (W.D. Wash. Mar. 30, 2020) (quoting *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249–50 (N.D. Tex. 2016)).  The "'[n]ative format'" consists of the "form or forms in which the ESI is ordinarily maintained." *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 2017 WL 445722, at *1 (E.D. Cal. Feb. 2, 2017).

ORDER - 8

The native format of the PDPs, and thus the way they are kept in the ordinary course, is not in static, snapshot form akin to a PDF but as underlying, structured data.[2] The Court credits Amazon's factual declarations, which Plaintiffs do not challenge. As a practical matter, if the PDPs' native format were the viewable, PDF-like snapshots, as Plaintiffs contend, Amazon would have to produce upwards of hundreds of millions of PDFs or snapshots, one for each instance when a consumer or potential class member viewed the PDP. *See* Dkt. # 110-3 ¶ 11. Plaintiffs identify no case in which a Court ordered a litigant to produce documents in a format other than the native format. As the Court noted in its recent order (Dkt. # 135), Rule 34's "disjunctive 'or' does not obligate [Amazon] to produce ESI in the requesting party's preferred form, as Plaintiffs suggest." *Medal v. Amazon*, 2026 WL 1179763, at *4 (W.D. Wash. Apr. 30, 2026).

Plaintiffs argue that the underlying structured data making up the PDPs is supposedly unusable to them. *See* Dkt. # 106 at 11 (saying that the structured data underlying the PDPs is "of no use"). They say that the data and code that Amazon provided for the purpose of generating an exemplar PDP "provides *no information whatsoever* on how the data was visually presented." *Id.* But Plaintiffs' reply brief contains approximations of how the information generated by the code would visually appear as an exemplar PDP. *See* Dkt. # 115 at 9–10. Further, Plaintiffs' concern regarding how images of the dietary supplements themselves (such as images of the bottles) are rendered on the PDP appears unfounded. The Court finds it implausible that consumers purchasing dietary supplements from Amazon would look solely, or even predominantly, at images of the bottle or package itself on the web page rather than the

---

[2] Further, "[e]lectronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the native format of the document." The Sedona Conference, The Sedona Conference Glossary: E-Discovery & Digital Information Management,15 Sedona Conf. J. 305, 341 (4th Ed. 2014).

ORDER - 9

information provided on the product web page.  Shopping on a website is different than shopping in a physical store, where a product can be handled and examined.[3]

That said, the Court is sensitive to Plaintiffs' contention that the data or code provided by Amazon to generate a PDP exemplar does not generate all the images of a PDP.  *See id.* (showing grey boxes where there should be images).  The Court thus directs the parties to continue their conferences to resolve the technical challenge of how to accurately render PDP exemplars using the source code or data such that all images are rendered.

Because the Court determines that Amazon's preservation duty encompassed the underlying data and code and not the ephemeral, visual representation of the PDP, Amazon did not fail to preserve ESI.  Amazon neither spoliated nor destroyed evidence.[4]  Thus, sanctions are unwarranted here.

## IV

### CONCLUSION

For these reasons, the Court DENIES Plaintiffs' motion.  Dkt. # 106.  The parties are DIECTED to continue to meet-and-confer regarding accurate technical reproductions of the PDPs.

---

[3] Plaintiffs characterize this Court's decision on Amazon's motion to dismiss (Dkt. # 90) as agreeing with Plaintiffs that the images of the PDP are essential to their claims.  *See* Dkt. # 106 at 13 (citing *Li v. Amazon.com Servs., LLC*, 751 F. Supp. 3d 1138, 1150–51, 1156–58 (W.D. Wash. 2024)).  Plaintiffs mischaracterize the order.  While the Court did consider the images in the PDPs, it based its conclusion that the structure/function claim lacked a disclaimer *on the text* of the PDP.  The image of the product's bottle in the PDP contains an asterisk linking to the disclaimer, complying with the law; the text of the PDP does not, meaning that Plaintiffs' claims were colorable at the pleadings stage.  The upshot is that Plaintiffs' claims can be proven by the text of the PDPs and not necessarily with the images of the products contained in the PDPs.

[4] Since Amazon did not destroy or spoliate evidence, the Court does not consider Amazon's request to strike the allegedly improperly filed expert declaration at Dkt. # 115-6 or its other arguments submitted on sur-reply.  *See generally* Dkt. # 117.  The Court has read but does not rely on the declaration at issue at Dkt. # 115-6, further mooting Amazon's request.

ORDER - 10

Dated this 11th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 11